UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, et al.,<br><br>                  Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., et al.,<br><br>                  Defendants. | Case No.: 17-cv-02580-JLS-JLB<br><br>**ORDER GRANTING IN PART AND DENYING PART DEFENDANT'S AND PLAINTIFFS' MOTIONS TO COMPEL**<br><br>**[ECF Nos. 42, 43]** |

Presently before the Court are the parties' motions to compel. (ECF Nos. 42, 43.) Plaintiffs seek to compel the names and contact information for distributors they argue are both potential witnesses and members of Plaintiffs' California Private Attorneys General Act ("PAGA") action. (ECF No. 43-1 at 2.)[1] Defendant Flowers Baking Co. of Henderson ("Flowers/Henderson") seeks to compel production of tax and employment documents relating to Plaintiffs' business expenses and their treatment of individuals enlisted to work for them. (ECF No. 42 at 2.) For the reasons stated below, both Defendant's and Plaintiffs' motions to compel are **GRANTED in part and DENIED in part**.

///

///

---

[1] All page number citations in this order refer to the page numbers generated by the Court's CM/ECF system.

I. BACKGROUND

Plaintiffs Simon Goro, Guiseppe Zizzo, Jeff Belander, Jose Pena, Rey Pena, and Tony Russell worked as distributors for Defendants Flowers Foods, Inc., Flowers Baking Company of Henderson, LLC ("Flowers/Henderson"), and Flowers Baking Company of California, LLC ("Flowers/California"). (ECF No. 17 at 2.) Plaintiffs originally filed this action in state court against Defendants on November 27, 2017. (ECF No. 1-2.) Underpinning Plaintiffs' claims is the allegation that Defendants misclassified them as independent contractors instead of employees. (ECF No. 17.) Defendants develop, produce, and deliver baked goods. (ECF No. 44 at 2.) Plaintiffs perform delivery and merchandising services for customers that purchase Defendants' baked goods. (ECF No. 17 at 2.) Distribution agreements executed between each Plaintiff and Defendants govern Plaintiff's compensation and the terms of the parties' relationship. (*Id*. at 5.) These agreements designate Plaintiffs as independent contractors. (*Id*.) Plaintiffs allege that they are compensated based on the number and type of baked goods sold, but Defendants require them to deliver baked goods to customers six days a week, regardless of the profit Plaintiffs will receive. (*Id*.) Plaintiffs further allege that Defendants exclusively negotiate with customers that purchase the baked goods, setting all material terms of the relationship such as prices for baked goods, service and delivery agreements, shelf and display space, baked good selection, and print advertisements for baked goods. (*Id*. at 6-7.) Plaintiffs allege that they regularly work seven days per week delivering the baked goods, amounting to 55 to 75 hours worked per week. (*Id*. at 2.) Plaintiffs allege that this arrangement results in nonproductive time that Plaintiffs are not compensated for. (*Id*.) Plaintiffs allege Defendants violated numerous sections of the California Labor Code, California's Industrial Wage Commission ("IWC") Wage Orders, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., by misclassifying Plaintiffs as independent contractors instead of employees. (*Id*. at 2-3.) Plaintiffs also seek civil penalties for the alleged Labor Code violations as aggrieved employees under the California Private Attorneys General Act ("PAGA"). (*Id*. at 16.)

2

17-cv-02580-JLS-JLB

Defendants removed this action from state court on December 18, 2017.  (ECF No. 1.)  On March 22, 2018, Plaintiff filed the operative First Amended Complaint.[2]  (ECF No. 17.)  On April 12, 2018, Defendants filed a motion to dismiss Plaintiffs' PAGA claim on multiple grounds.  (ECF No. 22.)  The parties filed the instant motions to compel on July 5, 2018.  (ECF Nos. 42, 43.)

## II.  DEFENDANTS' MOTION TO COMPEL TAX AND EMPLOYMENT INFORMATION

Defendant Flowers/Henderson moves to compel production of (1) IRS Form 1120s filed by Plaintiffs' corporations; and (2) any IRS Form W-2 or 1099 issued to individuals Plaintiffs employed or enlisted to work for their corporations.   (ECF No. 42 at 2.)  Flowers/Henderson argues that this information is relevant to Plaintiffs' claimed damages and whether Plaintiffs ran their corporations in a manner inconsistent with their claim that Defendants' misclassified them as independent contractors.  (*Id*.)  Plaintiffs argue that the tax privilege prevents production of Plaintiffs' Form 1120s.  (ECF No. 47.)

### a.  Legal Standards

Nonprivileged information is discoverable under Federal Rule of Civil Procedure 26 if it is (1) relevant, and (2) proportional to the needs of the case.  Rule 26(b)(1) provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed

---

[2] Hereafter, all references to the "complaint" refer to the First Amended Complaint unless otherwise specified.

discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

"A party seeking discovery may move for an order compelling an answer, . . . production, or inspection." Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

In diversity actions, questions of privilege are controlled by state law. *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 791 (9th Cir. 1989); Fed. R. Evid. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Thus, California law governs application of the tax return privilege in this diversity case. California courts have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns. *Schnabel v. Super. Ct.*, 5 Cal. 4th 704, 718-21 (1993); *Weingarten v. Super. Ct.*, 102 Cal. App. 4th 268, 274 (2002). The California tax privilege applies to tax returns and records that are an "integral part" of the tax returns, such as W-2 and 1099 forms. *Brown v. Super. Ct. of the City & Cnty. of San Francisco*, 71 Cal. App. 3d 141, 143-44 (1977) (extending tax privilege to W-2 forms because the forms "[we]re required to be attached to a taxpayer's state and federal income tax returns [and] constitute[d] an integral part of the return."); *Bowerman v. Field Asset Services, Inc.*, 2013 WL 6057043, at *1, 3 (N.D. Cal. Nov. 14, 2013) (applying California law and finding that "tax related documents," such as schedule Cs, payroll tax records and 1099s, were privileged and protected from compelled production).

"The purpose of the privilege is to encourage the voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection." *Li v. Yan*, 247 Cal. App. 4th 56, 66 (2016) (citing *Webb v. Standard Oil Co.*, 49 Cal. 2d 509, 513 (1957)). This privilege is not absolute. *Schnabel*, 5 Cal. 4th at 721. The privilege will not be upheld when: (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved. *Id.*; *accord Weingarten*, 102 Cal. App. 4th at 274. "A trial court has broad discretion in determining the applicability of a

statutory privilege." *Weingarten*, 102 Cal. App. 4th at 274. The requesting party bears the burden of demonstrating that an exception to the tax privilege applies. *See Schnabel*, 5 Cal. 4th at 721; *Lawson v. GrubHub, Inc.*, No. 15-CV-05128-JSC, 2017 WL 1684964, at *2 (N.D. Cal. May 3, 2017).

### b. Request for Production No. 15: Form 1120 Records

Flowers/Henderson asserts that Plaintiffs own corporations, which are the entities that contracted with Defendants to distribute baked goods. (ECF No. 42 at 3.) Defendant argues that the Form 1120s, which itemize all deductions for business-related expenses, are relevant because they will enable Flowers/Henderson to evaluate Plaintiffs' claimed damages for unreimbursed business expenses and, as the party bearing the burden of establishing an independent contractor relationship, whether Plaintiffs administered their corporations in a manner inconsistent with their misclassification claims. (*Id*. at 4.) Plaintiffs object to production of their Form 1120 records on the basis that these documents are protected by the tax privilege. (ECF No. 47 at 3.) Defendant recognizes that Plaintiffs agree to produce alternative documentary evidence of their business expenses and, further, will produce the Form 1120 records if no other documentary evidence exists. (ECF No. 42 at 4.) Defendant nonetheless insists on production of the 1120 tax forms. (*Id*.) Defendant argues that it is entitled to determine what expenses Plaintiffs' corporations reported, under penalty of perjury, and whether Plaintiffs mitigated their damages through tax deductions. (*Id*.) Defendants also argue that the tax privilege applies with less force to corporate tax returns and that in this case Plaintiffs placed their corporate tax returns directly at issue by claiming they incurred business-related expenses as employees. (*Id*. at 4-9.)

As the party seeking production of tax documents, Defendant bears the burden of demonstrating that an exception to the tax privilege applies. *See Schnabel*, 5 Cal. 4th at 721. Defendant fails to meet its burden. First, there is no evidence Plaintiffs intentionally waived the privilege. Second, Defendant argues that Plaintiffs' assertion of misclassification claims and alleged unreimbursed business expenses is inconsistent with

17-cv-02580-JLS-JLB

the tax privilege is unpersuasive. Defendant argues that in *other* contexts, California law recognizes a waiver of privacy protections and privileges where the plaintiff initiates a lawsuit that puts those areas at issue. (ECF No. 42 at 8-9) (citing to authority relating to waiver of attorney-client privilege and patient-physician privilege.) The assertion of misclassification and failure to reimburse business expenses claims is not, without more, inconsistent with the tax privilege. *See Lawson*, 2017 WL 1684964, at *2 (holding that gravamen of independent contractor misclassification lawsuit with failure to reimburse business expenses claims was not so inconsistent with plaintiff's assertion of the privilege as to compel production of tax documents); *Taylor v. Shippers Transport Express, Inc.*, No. CV 13–2092–BRO (PLAx), 2014 WL 12560878, at *2 (C.D. Cal. May 27, 2014) (same); *Bowerman*, 2013 WL 6057043, at *2 ("The [plaintiffs'] allegation that [defendant] willfully misclassified them as independent contractors does not place the contents of their tax returns and tax documents squarely into question."). Plaintiffs' Form 1120s may provide information that is *relevant* to their misclassification claims, but the gravamen of the assertion of these claims is not so inconsistent with the tax privilege as to compel disclosure. *See id*. These claims are not defined by what business expenses, if any, Plaintiffs claimed on their taxes.[3] The business expenses Plaintiffs incurred can be

---

[3] The parties dispute whether *G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 350 (1989) or *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 956-57 (2018), *reh'g denied* (June 20, 2018) governs Plaintiffs' misclassification claims. (ECF No. 42 at 6; ECF No. 47 at 4.) *Borello* provides that "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." 48 Cal.3d at 350 (citations omitted). Under *Borello*, the court considers a variety of factors in making this determination. *Id*. at 351. In *Dynamex*, the California Supreme Court embraced the "ABC test" for determining whether workers should be classified as employees or as independent contractors for purposes of California wage orders—"(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." *Dynamex Operations W.*, 4 Cal. 5th at 956-57. Under either test, Plaintiffs' tax returns may be *relevant*, but are not necessary to determine whether they were properly classified as independent contractors. *See id*.; *G. Borello & Sons, Inc.*, 48

discovered through sources other than their tax returns, such as requests for nonprivileged records of business expenses and interrogatories. *See James Stewart Entm't, LLC v. L&M Racing, LLC*, No. EDCV1249JGBSPX, 2013 WL 12248148, at *4 (C.D. Cal. Apr. 18, 2013) (the fact that a party's tax "returns will be a more effective mode of presenting the information to the jury . . . . is not a sufficient reason to order production of the returns when the information is available elsewhere"); *Weingarten*, 102 Cal. App. 4th at 276 ("The fact that financial records are difficult to obtain or that a tax return would be helpful, enlightening or the most efficient way to establish financial worth is not enough.").

Lastly, there is no public policy at issue that warrants waiver of the tax privilege in this case. The third exception to the tax privilege—when a public policy greater than that of the confidentiality of tax returns is involved—"is narrow and applies only 'when warranted by a legislatively declared public policy.'" *Weingarten*, 102 Cal. App. 4th at 274 (quoting *Schnabel*, 5 Cal. 4th at 721). Defendant does not argue that a public policy warrants waiver, and the assertion of damages claims that makes the financial information underlying tax returns relevant does not, without more, represent a greater public policy meriting waiver of the tax privilege. *See id*. at 274-75.

Defendant raises a number of other arguments, none of which establish an exception to the tax privilege applies. Defendant cites to *Bowerman* for the proposition that the tax return privilege applies with less force to corporate tax returns and narrowly-tailored information, noting that the court stated that the "privacy rights of businesses are accorded less weight than that of individuals." (ECF No. 42 at 9.) But the *Bowerman* court made this statement when analyzing whether the plaintiffs' bank account statements were protected by the California right of privacy in financial information (not the statutory tax privilege) and declined to order production of the statements. *Bowerman*, 2013 WL

---

Cal.3d at 350-51. *See also Bowerman*, 2013 WL 6057043, at *2 (finding the gravamen of plaintiffs' assertion of misclassification claims not inconsistent with the tax privilege under *Borello*).

6057043, at *3.[4]  Similarly, Defendant cites to *Saca v. J.P. Molyneux Studio Ltd.*, No. CIV S-06-2818 MCE EFB, 2008 U.S. Dist. LEXIS 3857, at *7 (E.D. Cal. Jan. 3, 2008) and *Valdez v. Travelers Indem. Co. of Connecticut*, No. 12-04307-SBA (KAW), 2013 WL 3989583, at *6 (N.D. Cal. Aug. 2, 2013), for the proposition that corporations do not have a right to privacy under the California Constitution.  But Plaintiffs object to producing the Form 1120s on the basis that they are protected by a statutory tax privilege, not because they are shielded by the California right to privacy.[5]  Defendant cites no authority for its argument that the tax privilege applies with less force when only a portion of the tax returns are at issue.

Next, Defendant argues that the Form 1120s are needed for impeachment purposes. (ECF No. 42 at 7-8.)  But "the fact that a tax return can be used for impeachment is also insufficient to overcome the [tax] privilege."  *Lindsey v. Elsevier Inc.*, No. 16CV00959GPCDHB, 2017 WL 4518483, at *7 (S.D. Cal. Oct. 10, 2017) (citing *Sav-On Drugs, Inc. v. Super. Ct.*, 15 Cal. 3d 1, 6 (1975)).

Lastly, without providing authority to support the proposition, Defendant argues that because the purpose of the tax privilege is to avoid indiscriminate public disclosures of tax information, Plaintiffs' objection "is rendered moot given the effective Stipulated Protective Order in this matter." (ECF No. 42 at 9.)  The Stipulated Protective Order does not moot Plaintiffs' objection.  *Cf. Taylor*, 2014 WL 12560878, at *2 (denying motion to compel production of tax records where defendants argued that disclosure of tax records could be addressed by protective order).  To the contrary, the language of the stipulation specifically provides that by "stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any

---

[4] Moreover, *Bowerman* specifically held that the tax privilege protected the plaintiffs' tax records in that case.  *Id.* at *2-3.
[5] Like *Bowerman*, the court in *Saca* also held that an exception to the tax privilege did *not* apply because the gravamen of the lawsuit was not inconsistent with assertion of the privilege.  *Id.* at *7-8.

17-cv-02580-JLS-JLB

information or item on any ground not addressed in this Stipulated Protective Order." (ECF No. 19 at 14.)

Defendant fails to establish that an exception to the tax privilege applies, and thus, its motion to compel Plaintiffs to produce their Form 1120s is **DENIED**.

### c. Request for Production No. 8: Form W-2 and 1099 Records

Defendant's motion to compel production of W-2 and 1099 forms is **GRANTED** as Plaintiffs represent that they do not object to this request for production. (ECF No. 47 at 6.) Plaintiffs shall produce documents responsive to this request for production on or before **August 30, 2018**.

### d. Payment of Expenses

Rule 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses of the motion." Here, Defendant's motion was only granted in part because Defendant failed to satisfy its meet and confer obligation relating to Plaintiffs' responses to Interrogatory No. 8, and thus, did not know that Plaintiffs had no objection to producing these documents. (ECF No. 47 at 6.) Accordingly, the parties are ordered to meet and confer on or before **September 24, 2018**, on the amount of reasonable expenses, including attorney's fees, that Plaintiffs are entitled to as a result of opposing Defendant's motion to compel. If the parties are unable to resolve this issue through the meet and confer process and need the Court's involvement, the parties shall place a joint call to Judge Burkhardt's chambers on or before **September 25, 2018**, and leave a message verifying that the meet and confer process has been exhausted, describing in detail the specific nature of and parties' respective positions concerning the remaining disputes, and providing three mutually agreeable dates of availability within a seven day window for an in-person or telephonic hearing with the Court.

///

///

### III. PLAINTIFFS' MOTION TO COMPEL NAMES AND CONTACT INFORMATION

Plaintiffs move to compel production of the names and contact information for individuals who performed direct store delivery services and entered into a form distributor agreement with Defendants in California. (ECF No. 43-1 at 2.) Plaintiffs argue that this information is relevant and proportional to their individual and PAGA claims as these individuals are both witnesses and members of Plaintiffs' PAGA action. (*Id.*) Defendants oppose Plaintiffs' motion. (ECF No. 45.)

Nonprivileged information is discoverable under Rule 26 if it is (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b). Information need not be admissible to be discoverable. *Id.* The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted).

Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry a heavy burden of showing why discovery was denied"). *See also Bryant v. Ochoa*, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."). Information must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the

proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

### a. Relevance

Plaintiffs argue that they are entitled to the name and contact information for individuals that performed direct store delivery services and entered into a distribution agreement with Defendants in California because these individuals are witnesses and members of the group Plaintiffs represent in their PAGA action. (ECF No. 43-1 at 5.) Plaintiffs further argue that Defendants have admitted that the names and contact information of other distributors are relevant because (1) in their initial disclosures Defendants listed a number of distributors as persons likely to have discoverable information, and (2) in other misclassification lawsuits with similar allegations, Defendants have attempted to introduce testimony and declarations from distributors. (ECF No. 43-1 at 4.)

The Court agrees that Defendants have conceded the group of distributors identified in their initial disclosures are persons likely to have discoverable information. Defendants argue that their disclosure of fifteen distributors does not mean that Defendants should be required to disclose every other such distributor. (ECF No. 45 at 4.) But Defendants do not merely identify fifteen distributors in their initial disclosures. In their initial disclosures, Defendants identify as persons likely to have discoverable information: "Current and former Distributors who contracted with Flowers/California and Flowers/Henderson." (ECF No. 43-6 at 9.) Defendants state that these individuals may have "[i]nformation regarding the operation of their territories, product ordering procedures, products ordered, accounts serviced and any specific customer-service requirements promulgated by each, sales activities with customers, and other day-to-day interaction with management or local management practices to which they were subject at

their applicable warehouse." (*Id*.) Defendants provide that "[t]hese individuals include, *but are not limited to . . .*" the fifteen identified distributors. (*Id*.) (emphasis added.) The breadth of this language, without limitation as to time or location, merits the conclusion that Defendants have admitted that current and former individuals that contracted with Flowers/California and Flowers/Henderson may have relevant information. Defendants may not now argue that Plaintiffs seek irrelevant information to prevent disclosure of the identities of these individuals.[6]

Defendants argue that Plaintiffs' requests are overbroad to the extent they seek disclosure of individuals and entities that did not contract with Flowers/California and Flowers/Henderson. (ECF No. 45 at 4.)[7] This objection is sustained as Plaintiffs fail to identify why these individuals are likely to possess information relevant to Plaintiffs' individual and PAGA claims. Plaintiffs cite to *Williams v. Superior Court*, 3 Cal. 5th 531 (2017), to argue that the names and contact information of potentially aggrieved employees is "unquestionably relevant." (ECF No. 43-1 at 5.) *Williams* did not hold that the contact information for fellow employees in a PAGA action is per se relevant, without regard for the rules governing the scope of discovery. To the contrary, the California Supreme Court held that the same rules of civil procedure that govern discovery in any civil action also govern PAGA actions. *Id*. at 546. As a result, the Court held that PAGA claims are not subject to "a PAGA-specific heightened proof standard at the threshold, before discovery."

---

[6] The Court is less persuaded by Plaintiff's argument that Defendants conceded the relevancy of the identity of all California distributors because they submitted "happy camper" declarations and testimony of certain distributors in other cases. (ECF No. 43-1 at 4.) The fact that Defendants submitted declarations and testimony from other distributors in other lawsuits does not amount to a concession that the identity of California distributors in general is relevant to the claims and defenses in *this* case.

[7] Plaintiffs' interrogatories, served on each named Defendant, define "YOU" and "YOUR" as the "Responding Party and its attorneys, predecessors, subsidiaries, divisions, affiliates, controlled companies and joint ventures, acquired entities, related entities, and its present and former officers, owners, directors, members, partners, managers, trustees, representatives, agents, employees and all persons presently or formerly acting, or purporting to act, on its behalf, or on behalf of its predecessors, subsidiaries, divisions, affiliates, controlled companies and joint ventures, acquired entities and related entities, for any purpose whatsoever." (ECF Nos. 43-3, 43-4, and 43-5 at 5-6.)

17-cv-02580-JLS-JLB

*Id.*[8]  In federal court, the Federal Rules of Civil Procedure govern the scope of discovery. *See* Fed. R. Civ. P. 26(b).  Here, Plaintiffs fail to satisfy the relevancy requirement of Rule 26(b) as to individuals and entities that did not contract with Flowers/California or Flowers/Henderson as they do not tie the identities of other such distributors to their individual or PAGA claims.  Instead, Plaintiffs argue that plaintiffs in PAGA and class actions are generally allowed to discover contact information for putative class members. (ECF No. 43-1 at 5.)  But "the determination whether . . . information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action."  *Jones v. Hernandez*, No. 16-CV-1986-W (WVG), 2017 WL 3020930, at \*2 (S.D. Cal. July 14, 2017) (quoting Fed. R. Civ. P. 26 Advisory Committee's Note (2000 Amendment) (Gap Report) (Subdivision (b)(1))).

First, as to Plaintiffs' request for the identities of other individuals that signed distributor agreements with Flowers Foods, Inc. subsidiaries (Interrogatory No. 2), Plaintiffs' counsel declares that "[o]n information and belief based on a review of lawsuits filed against Flowers, there are over 200 distributors that signed Distributor Agreements with a Flowers Foods, Inc. subsidiary in California."  (ECF No. 43-2 at 2.)  Counsel further declares that he has "reviewed each Plaintiffs' Distributor Agreement with Defendants and several additional Distributor Agreements for distributors who have filed suit in other cases pending California.  Each Distributor Agreement is substantially the same."  (*Id.*)  While a declaration could be used to establish relevancy, here counsel's declaration fails to reasonably connect all California distributors that signed distribution agreements with Flowers Foods, Inc. subsidiaries to Plaintiffs' claims.  Plaintiffs' counsel fails to identify the number of distributor agreements he reviewed (stating only that he reviewed "several"), the identities and locations of these distributors (including whether the distributors are

---

[8] After an analysis of the operative complaint and the facts of the case, the *Williams* court held that the contact information of other nonexempt hourly employees in California was relevant.  *Id.*  That court's analysis of the relevancy of other employees' contact information is persuasive, but not binding, authority as it analyzed the relevancy of this information under the California Code of Civil Procedure.  *See id.*

located in California or only filed suit in this state), which Flowers Foods, Inc. subsidiary signed the agreements, and how the distributor agreements were "substantially similar" to the agreements signed by Plaintiffs (including whether the terms relevant to this litigation were identical or materially the same). Plaintiffs request that the Court simply accept counsel's estimation that *all* other distributors in California that contracted with Flowers Inc. subsidiaries signed distributor agreements that are so materially similar to those signed by Plaintiffs that they are likely to have information relevant to Plaintiffs' claims. This opinion is based on the review of an unspecified number of distributor agreements that were signed by unidentified distributors and unidentified Flowers Inc. subsidiaries. The Court declines to blindly accept counsel's opinion.

Second, to the extent that Plaintiffs' request for the identity of all individuals that performed direct delivery services for Defendants in California (Interrogatory No. 1) seeks the identity of individuals who did not sign distributor agreements with Defendants,[9] Plaintiffs do not even attempt to establish a connection between these individuals and the claims and defenses in this case. Plaintiffs fail to indicate what relevant information, if any, these individuals possess. Plaintiffs simply assert that these individuals would be "witnesses to the employment practices and policies that are central to Plaintiffs' claims" without explaining what testimony relevant to the claims and defenses in this case these individuals may offer. (ECF No. 43-1 at 2.)

Thus, Plaintiffs have met their burden to establish that individuals and entities that contracted with Flowers/Henderson and Flowers/California may possess information relevant to the claims or defenses in this case. The Court has not been provided with sufficient information, however, to find that any other class of individuals and entities may possess relevant information. As a result, Defendants' objections to Interrogatories Nos. 1

---

[9] It is not clear whether Plaintiffs intend for this request to reach individuals who performed delivery services for Defendants but who did not sign distributor agreements, as Plaintiffs' motion merely references the individuals it seeks the identity of as "distributors." Out of an abundance of caution, the Court addresses this issue.

and 2 are sustained to the extent that Plaintiffs seek the contact information for individuals other than those who entered into distributor contracts with Flowers/Henderson or Flowers/California.[10]

### b. Defendants' Additional Objections

Because Plaintiffs have established that the individuals and entities that contracted with Flowers/Henderson or Flowers/California may possess relevant information, as the party resisting discovery, Defendants have "the burden of clarifying, explaining, and supporting [their] objections." *Superior Commc'ns*, 257 F.R.D. at 217.

First, Defendants claim that Plaintiffs' requests are overbroad as Plaintiffs concede that they failed to adequately plead a PAGA claim. (ECF No. 45 at 5.) On April 12, 2018, Defendants moved to dismiss Plaintiffs' PAGA claim on the bases that Plaintiffs failed to plead compliance with PAGA's pre-filing administrative exhaustion requirements and failed to identify the group of "aggrieved employees" they seek to represent. (ECF No. 22-1.) Defendants argue that because Plaintiffs did not argue that they pled a valid PAGA claim in response to the motion to dismiss, and instead sought leave to amend, Plaintiffs concede that there is no valid PAGA claim. (ECF No. 45 at 5.) Plaintiffs argue that they have not conceded that there is no valid PAGA claim. (ECF No. 43-1.)

In effect, Defendants seek of a stay of discovery while their motion to dismiss is pending. The Federal Rules of Civil Procedure do not provide for an automatic stay of discovery when a motion to dismiss is pending. *See* Fed. R. Civ. P. 12; *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect."). Nor have Defendants moved for a stay of discovery or for a protective order pursuant to Rule 26(c) to limit discovery. *See Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002), *as amended on denial of reh'g and reh'g*

---

[10] Plaintiffs attach Interrogatories Nos. 1, 2, and 3 to their motion to compel but only seek to compel responses to Interrogatories Nos. 1 and 2. (ECF No. 43-1 at 7; ECF Nos. 43-3, 43-4, and 43-5.)

*en banc* (Apr. 17, 2002) (holding that a district court may grant a motion for a protective order while a motion to dismiss is pending if convinced the plaintiff will be unable to state a claim for relief). The Court declines to *sua sponte* issue a stay of discovery or a protective order without a formal request or the benefit of briefing from both parties.

Second, Defendants argue that Plaintiffs' request is "entirely disproportionate to the needs of the case" as it seeks discovery on approximately 200 individuals for Plaintiffs' individual claims. (ECF No. 45 at 3.) But nothing in Plaintiffs' interrogatories or motion indicates that Plaintiffs seek this information only for their individual claims. To the contrary, Plaintiffs argue that this information is relevant to their PAGA claims and, as addressed above, the pending motion to dismiss does not automatically curtail discovery on these claims.[11] Moreover, Defendants fail to identify what burden, if any, this request places on Defendants.

Next, Defendants argue that Plaintiffs have produced documents "appearing to contain the names and contact information of those who signed distributor agreements with Flowers/Henderson as of December 31, 2015," and that Plaintiffs "fail to explain why this list is deficient." (*Id.* at 5.) As the party objecting to discovery Defendants, not Plaintiffs, are to "to carry [the] heavy burden of showing why discovery was denied." *Blankenship*, 519 F.2d at 429. Defendants fail to attach the referenced document or explain why this document would provide Plaintiffs with the information they seek. Accordingly, this objection is overruled.

### c. Third Party Privacy Rights

Lastly, Defendants object to production of this information on third party privacy grounds. (ECF No. 45 at 6.) In California, the right to privacy is set forth in Article I,

---

[11] Even assuming that the time ranges in each interrogatory indicate that Interrogatory No. 1 is primarily intended for Plaintiffs' PAGA claim and Interrogatory No. 2 is primarily intended for Plaintiffs' individual claims, Interrogatories Nos. 1 and 2 both seek information that is relevant to both Plaintiffs' PAGA and individual claims, and Plaintiffs do not draw the distinction Defendants make.

Section I of the California Constitution.[12]  It is not an absolute right, but a right subject to invasion depending upon the circumstances.  *Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994).  In *Pioneer Electronics, Inc. v. Superior Court*, 40 Cal. 4th 360 (2007), the California Supreme Court set forth the framework for assessing privacy claims under the California Constitution: First, the claimant must have a "legally protected privacy interest," such as an interest in precluding dissemination of sensitive information or in making intimate personal decisions without outside intrusion; second, the claimant must have a "reasonable expectation of privacy" founded on broadly based community norms; third, the invasion of privacy must be "serious"; and fourth, the privacy interest must outweigh the countervailing interests, such as discovery rights. *Id*. at 370-73 (citing *Hill*, 7 Cal. 4th at 35-40).

In *Belaire West Landscape Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007), a California appeals court held, in a putative wage and hour class action, that a notice requiring putative class members and former employees of defendant to opt out if they did not want their contact information disclosed to plaintiff's attorneys sufficiently protected the privacy interests of putative class members.  The court held that the former employees had a legally protected privacy interest, but could "reasonably be expected to want their information disclosed to a class action plaintiff who may ultimately recover for them unpaid wages that they are owed."  *Id*. at 561.  The court also found that there was no "serious" invasion of privacy if disclosure was limited to the named plaintiffs and they were given an opportunity to object to the disclosure.  *Id*. at 562.  The California Supreme Court affirmed *Belaire-West* in *Williams v. Superior Court*, 3 Cal. 5th 531 (2017), holding that a notice providing employees and potentially aggrieved employees under PAGA with the option to opt out of disclosure of their contact information sufficiently protected their

---

[12] As noted above, California law applies to question of privilege in this case.  *See also Townsend v. Monster Beverage Corp.*, No. EDCV122188VAPKKX, 2017 WL 4063536, at *4 (C.D. Cal. Sept. 13, 2017).

privacy interests. The Court held that although employees have a protected privacy interest in the confidentiality of their contact information, they do not have a reasonable expectation that their information would be withheld from a plaintiff seeking to prove labor law violations committed against them. *Id.* at 554-55.[13] The Court also found that disclosure of employees' contact information was not a serious invasion of privacy because disclosure was conditioned on a *Belaire-West* notice sent to employees that both parties had agreed upon. *Id.* at 555.

Generally, federal courts in this circuit have held that a protective order, in lieu of a *Belaire-West* notice, sufficiently protects putative class members and aggrieved employees' privacy interests in the confidentiality of their contact information. *See, e.g.*, *Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG (DMR), 2018 WL 1168694, at *2 (N.D. Cal. Mar. 6, 2018) (holding *Belaire-West* notice was not required when plaintiffs requested putative class members and PAGA aggrieved employees' telephone numbers because a protective order would sufficiently protect the privacy interests at stake); *Minns v. Advanced Clinical Employment Staffing LLC*, No. C 13-03249 SI, 2014 WL 4352343, at *2 (N.D. Cal. May 9, 2014) ("Courts have held that producing discovery pursuant to a protective order is one way to protect the privacy interests of putative class members."). The reason for this is twofold. First, disclosure of "contact information alone 'involves no revelation of personal or business secrets, intimate activities . . . and threatens no undue intrusion to one's personal life.'" *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008) (quoting *Pioneer*, 40 Cal. 4th at 373). Second, the terms of a protective order may limit the use and distribution of the information of putative class members. *See Austin*, 2018 WL 1168694, at *3. *See also Artis v. Deere*

---

[13] The Court stated, "In wage and hour collective actions, fellow employees would not be expected to want to conceal their contact information from plaintiffs asserting employment law violations, the state policies in favor of effective enforcement of these laws weigh on the side of disclosure, and any residual privacy concerns can be protected by issuing so-called *Belaire-West* notices affording notice and an opportunity to opt out from disclosure." *Id.* at 553.

& Co., 276 F.R.D. 348, 353 (N.D. Cal. 2011) (finding the potential privacy interests of putative class members in their contact information adequately balanced when the parties could craft a protective order limiting disclosure and the information was only to be produced to plaintiff's counsel and used in that litigation).[14]

Although most courts do not require parties to notify putative class members or potentially aggrieved employees of the disclosure of their contact information when a protective order is in place, some courts have ordered other safeguards. *See, e.g.*, *Benedict v. Hewlett-Packard Co.*, No. 13-CV-0119-LHK, 2013 WL 3215186, at *3 (N.D. Cal. June 25, 2013) (ordering plaintiff's counsel to "inform each potential putative class member contacted by Plaintiff that he or she has a right not to talk to counsel and that, if he or she elects not to talk to counsel, Plaintiff's counsel will terminate the contact and not contact them again."); *Austin*, 2018 WL 1168694, at *3 ("[M]indful of the putative class members' privacy rights, the court orders Plaintiffs' counsel to inform each contacted putative class member that he or she has the right not to talk to counsel and, upon a declination, counsel shall immediately terminate the conversation and will not contact that individual again. Plaintiffs' counsel must also inform each contactee that the court compelled [defendant] to disclose employee contact information, and that the contact information was provided solely for this lawsuit and cannot be distributed for other uses.").

Here, the individuals and entities that contracted with Flowers/Henderson and Flowers/California have a legally protected privacy interest in their contact information. *Williams*, 3 Cal. 5th at 554. They do not, however, have a reasonable expectation that their

---

[14] In circumstances involving information more sensitive than putative class members and aggrieved employees' contact information, however, a *Belaire-West* notice or other protections beyond a protective order may be necessary. *See id.* ("Courts in [the Northern] [D]istrict generally have required *Belaire-West* notices only when there are special privacy concerns, such as the disclosure of medical or financial information, and/or when the parties have agreed to such notice."); *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2012 WL 8304347, at *3 (N.D. Cal. June 1, 2012) ("The court's general view is that ordinarily, protective orders are enough, but this case involves special privacy concerns because the class members defaulted on their loans.").

information would be withheld from a plaintiff seeking to prove labor law violations committed against them. *See id*. at 554-55. Moreover, the release of their contact information is not a "serious" invasion because this information is not particularly sensitive and outside disclosure is restricted by the protective order limiting disclosure to the parties in this case and for the purpose of litigating this case. *See Artis*, 276 F.R.D. at 353; *Austin*, 2018 WL 1168694, at *2.[15] Mindful of the privacy rights at issue, the Court orders Plaintiffs' counsel to inform each contacted individual or entity that he or she has the right not to talk to counsel and, upon a declination, counsel shall immediately terminate the conversation and will not contact that individual or entity again. Plaintiffs' counsel must also inform each contactee that the Court compelled Defendants to disclose employee contact information, and that the contact information was provided solely for this lawsuit and cannot be distributed for other uses.

### d. Payment of Expenses

As noted above, Rule 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses of the motion." The Court finds that no party is entitled to the costs incurred in making or opposing Plaintiffs' motion to compel as neither party clearly prevailed on the issues presented.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to compel (ECF No. 42) and Plaintiff's motion to compel (ECF No. 43) are both **GRANTED in part and DENIED in part**. Plaintiffs are ordered to respond to Defendant's Interrogatory No. 8 on or before **August 30, 2018**. Defendants are ordered to respond to Plaintiffs' Interrogatories Nos. 1

---

[15] Because the individuals and entities do not have a reasonable expectation that their contact information will not be disclosed and there is no serious invasion of privacy, the Court need not balance the opposing interests weighing in favor of and against disclosure. *See Pioneer*, 40 Cal. 4th at 373; *Williams*, 3 Cal. 5th at 555.

and 2, limited to those individuals that entered into distributor contracts with Flowers/Henderson or Flowers/California, on or before **August 30, 2018**.

The parties are further ordered to conclude their meet and confer efforts on the amount Defendant shall pay Plaintiffs for the reasonable costs they incurred in opposing Defendants' motion to compel on or before **September 24, 2018**.

**IT IS SO ORDERED.**

Dated:  August 17, 2018

_Jill Burkhardt_
Hon. Jill L. Burkhardt
United States Magistrate Judge

17-cv-02580-JLS-JLB