Frank L. Tobin CA Bar No. 166344
frank.tobin@ogletree.com
Clint S. Engleson CA Bar No. 282153
clint.engleson@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA  92122
Telephone:  858.652.3100
Facsimile:   858.652.3101

Kevin Hishta (*Pro Hac Vice*)
kevin.hishta@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, GA  30303
Telephone:  404.881.1300
Facsimile:   404.870.1732

Attorneys for Defendants FLOWERS FOODS, INC.,
FLOWERS BAKING CO. OF CALIFORNIA, LLC, and
FLOWERS BAKING CO. OF HENDERSON, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, an individual; TONY RUSSELL, an individual; REY PENA, an individual; JOSE PENA, an individual; JEFF BELANDER, an individual; GUISEPPE ZIZZO, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKING CO. OF CALIFORNIA, LLC, a California limited liability company; FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 17-CV-02580-JLS-JLB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Complaint Filed:   December 13, 2017 <br> Trial Date:            Not Set |

36398172_1.docx

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................I

I.     INTRODUCTION ................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ..................................... 1

III.   STATEMENT OF FACTS ................................................ 2

    A.   The Direct Store Delivery System ................................. 2

    B.   Plaintiffs Order Out-of-State Products for Delivery to California Customers ........................................... 3

    C.   The Distributor Model .......................................... 5

    D.   Plaintiffs Were Independent Contractors Pursuant to the Distributor Agreement and Defendants' Reasonable Expectations ................................................. 7

IV.   LEGAL STANDARD ................................................... 8

V.   SUMMARY JUDGMENT SHOULD BE GRANTED ........................... 8

    A.   Summary Judgment Should Be Granted as to Plaintiffs' Overtime Claims ............................................... 8

         i.   California Law Recognizes that Drivers Engaged in Interstate Commerce Are Exempt from Overtime Requirements ........................................... 8

         ii.  Flowers/California and Flowers/Henderson Qualify as a Motor Private Carrier .............................. 9

         iii. Plaintiffs Regularly Distribute Goods in the Stream of Interstate Commerce ................................ 10

             a.   *Plaintiffs Distribute Products that Were in a Practical Continuity of Movement Across State Lines* ................................... 11

             b.   *Other Cases Involving Food Distributors/Drivers Demonstrate the Practical Continuity of Movement* .................... 12

Case No.

36398172_1.docx

c.   *Plaintiffs' Use of Personal Vehicles for Tasks that Do Not Involve Interstate Commerce Is Immaterial* ............................................................... 14

A.   Plaintiffs Cannot Recover Purported Expenses Associated with Vehicle Purchases or Leases ................................................. 15

B.   Plaintiffs' Claims that Require a Willful Violation Fail as a Matter of Law. ........................................................................ 16

C.   Summary Judgment Should Be Granted as to Plaintiffs' PAGA Claims ..................................................................... 18

VI.   CONCLUSION ...................................................................... 22

36398172_1.docx

Case No.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir.2015) ................................................................. 19

*Allen v. Coil Tubing Servs., L.L.C.*,
  846 F. Supp. 2d 678 (E.D. Tex. 2012) ..................................................... 14

*Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No.
  175 v. N.L.R.B.*,
  946 F.2d 1563 (D.C. Cir. 1991). (*Id.* at ¶ 7.)...................................... 6, 7

*Dalton v. Lee Publ'ns, Inc.*,
  No. 08cv1072 BTM (NLS), 2011 WL 1045107 (S.D. Cal. Mar. 22,
  2011) ........................................................................................................ 17

*Estrada v. FedEx Ground Package System, Inc.*,
  154 Cal. App. 4th 1 (2007) ..................................................................... 16

*Field v. Am. Mortgage Exp. Corp.*,
  No. C-09-5972 EMC, 2011 WL 3354344 (N.D. Cal. Aug. 2, 2011)....................... 8

*Foxworthy v. Hiland Dairy Co.*,
  997 F.2d 670 (10th Cir. 1993) ................................................. 10, 12, 13

*Garcia v. W. Waste Servs., Inc.*,
  969 F. Supp. 2d 1252 (D. Idaho 2013) .................................................... 15

*Gunn v. Family Dollar Stores, Inc.*,
  2016 WL 7030363 (S.D. Cal. Dec. 2, 2016) ..................................... 19, 21

*Hamilton v. Genesis Logistics*,
  No. 13-CV–01848-DDP-VBKx, 2013 WL 3168373 (C.D. Cal. June
  20, 2013) .................................................................................................. 19

*Harris v. Vector Mktg. Corp.*,
  656 F. Supp. 2d 1128 (N.D. Cal. 2009)................................................... 17

*Hurst v. Buczek Enters., Inc.*,
  870 F. Supp 2d 810 (N.D. Cal. 2012) ...................................................... 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

*Khan v. Dunn-Edwards Corp.*,
  19 Cal. App. 5th 804, 810 (2018), *review denied* (Apr. 18, 2018) ...................... 19

*LVRC Holdings, LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ................................................................................. 8

*Marlo v. United Parcel Serv., Inc.*,
  No. CV 03-04336 DDP, 2009 WL 10669255 (C.D. Cal. Mar. 19,
  2009) ....................................................................................................................... 9

*McGuiggan v. CPC Int'l, Inc.*,
  84 F. Supp. 2d 470 (S.D.N.Y. 2000) ..................................................................... 13

*Merchants Home Delivery Serv., Inc. v. N.L.R.B.*,
  580 F.2d 966 (9th Cir. 1978) ................................................................................ 18

*N.L.R.B. v. A. Duie Pyle, Inc.*,
  606 F.2d 379 (3d Cir. 1979) ................................................................................. 18

*Ruiz v. Affinity Logistics Corp.*,
  No. 05-cv-2125, 2006 WL 3712942 (S.D. Cal. Nov. 9, 2006) ............................ 13

*S. Pac. Transp. Co. v. I.C.C.*,
  565 F.2d 615 (9th Cir. 1977) ................................................................................ 10

*Schilling v. Schmidt Baking Co., Inc.*,
  876 F.3d 596 (4th Cir. 2017) ................................................................................ 14

*Shann v. Durham Sch. Servs., L.P.*,
  182 F. Supp. 3d 1044 (C.D. Cal. 2016) ................................................................ 21

*Shew v Southland Corp.*,
  370 F.2d 376 (5th Cir. 1996) ................................................................................ 13

*United States v. Silk*,
  331 U.S. 704 (1947) .............................................................................................. 18

*Villalpando v. Exel Direct Inc.*,
  No. 12-cv-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) ........... 17, 18

*Walling v. Jacksonville Paper Co.*,
  317 U.S. 564 (1943) ......................................................................................... 10, 11

*Watkins v. Ameripride Servs.*,
  375 F.3d 821 (9th Cir. 2004) .................................................................................. 9

Case No.
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

36398172_1.docx

*Webb v. Athens Newspapers, Inc.*,
 999 F. Supp. 1464 (M.D. Ga. 1998) ...................................................... 12

*Williams v. Superior Court*,
 3 Cal.5th 531, 545 (2017) .................................................................... 21

**Statutes**

29 C.F.R. § 782.7(b)(1) ............................................................................ 10

29 U.S.C. § 213(b)(1) ................................................................................. 9

49 U.S.C. § 13102(14) ................................................................................ 9

49 U.S.C. §13102(15) ............................................................................... 10

49 U.S.C. § 31502 and (2) .......................................................................... 9

Cal. Code Regs. tit. 8, § 11040(3)(K) ......................................................... 9

Cal. Code Regs. tit. 8, § 13520 ................................................................. 17

Cal. Lab. Code § 2699.3(a)(1)(A) ........................................... 18, 19, 21, 22

Cal. Lab. Code § 2699.5 ........................................................................... 21

Cal. Labor Code § 203 .............................................................................. 17

Cal. Labor Code § 204 ................................................................... 19, 21, 22

Cal. Labor Code § 226 ..................................................................... 1, 16, 17, 18

Cal. Labor Code § 226(e)(1) ..................................................................... 17

Cal. Labor Code §§ 226.8 and 256 ............................................................ 22

Cal. Labor Code § 2802 ..................................................................... 15, 16

Fed. R. Civ. Proc. 56(a) .............................................................................. 8

Fed. R. Civ. Proc. 12(b)(6) ....................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.     <u>INTRODUCTION</u>

At trial, Defendants will prove that plaintiffs Simon Goro, Tony Russell, Rey Pena, Jose Pena, Jeff Belander, and Guiseppe Zizzo (together, "Plaintiffs") were properly classified as independent contractors, a finding that dooms all of their claims. Through this partial motion for summary judgment, however, Defendants only seek the dismissal of certain claims.

Plaintiffs pursue claims for allegedly unpaid overtime under California law. Even if Plaintiffs could prove they were misclassified as independent contractors (and they cannot), Plaintiffs are not eligible for overtime because their hours of service were regulated by the Department of Transportation, a finding that bars state overtime claims.

Plaintiffs also seek reimbursement for purported expenses related to purchasing or leasing the vehicles they used for their businesses. Again, even if Plaintiffs could prove they were misclassified, they cannot recover these amounts because employees cannot recover for such expenditures as a matter of law.

Plaintiffs pursue penalty claims and liquidated damages that require a showing that Defendants willfully violated the law. While Defendants are not moving for summary judgment as to Plaintiffs' misclassification claim, there is ample evidence that Defendants had a legitimate basis for classifying Plaintiffs as independent contractors. Because a good-faith dispute exists as to whether Plaintiffs were misclassified, Plaintiffs cannot recover penalties under Labor Code § 226. Finally, Plaintiffs' Private Attorneys General Act of 2004 claims fail as a matter of law.

# II.    <u>STATEMENT OF ISSUES TO BE DECIDED</u>

The following issues are raised by this Motion:

A.     Whether the Court should dismiss Plaintiffs' claims for unpaid overtime compensation, because Plaintiffs were subject to regulation by the Secretary of Transportation and are therefore exempt from state overtime law.

B.     Whether the Court should dismiss Plaintiffs' claims for failure to

provide accurate wage statements, because Plaintiffs cannot show that any failure to provide wage statements was "knowing and intentional."

C.     Whether the Court should dismiss Plaintiffs' claims for failure to indemnify for vehicle purchases or leases, because employees cannot seek reimbursement for these amounts.

D.     Whether the Court should dismiss Plaintiffs' ninth cause of action, because Plaintiffs failed to exhaust mandatory pre-filing exhaustion requirements.

## III.     STATEMENT OF FACTS

Plaintiff Simon Goro was previously an independent contractor franchisee with defendant Flowers Baking Co. of California ("Flowers/California") and then defendant Flowers Baking Co. of Henderson ("Flowers/Henderson"). The remaining Plaintiffs are currently independent contractor franchisees with defendant Flowers/Henderson and previously with Flowers/California.

### A.     The Direct Store Delivery System

Defendant Flowers Foods, Inc., is the parent holding company of numerous operating subsidiaries like Flowers/California and Flowers/Henderson, each of which is its own separate legal entity.[1] (Declaration of Chuck Rich ("Rich Decl."), ¶ 2.) Flowers Foods, Inc., which is headquartered in Thomasville, Georgia, provides overall strategic direction to, and oversees the financial performance of, its subsidiaries. (*Id*.) The subsidiaries, however, manage their own respective operations and are their own separate profit and loss centers. (*Id*.)

Flowers/California operated in California from 2013 until early 2014. In early 2014, Flowers/California ceased operations and a new entity – Flowers/Henderson – was created to operate in Southern California.

Entities, like Flowers/California and Flowers/Henderson, operate under a

---

[1] Flowers/California, Flowers/Henderson and Flowers Foods, Inc. are referred to collectively herein as "Defendants" or "Flowers."

36398172_1.docx

"direct store delivery" ("DSD") system. (Rich Decl., ¶ 15.) Under a DSD system, independent business owners like Plaintiffs (who are known as "Distributors") purchase fresh products from the subsidiaries and deliver those products directly to customers immediately after production, as opposed to going through a customer's warehouse or broker. (*Id*.) The fresh products available to Distributors to purchase and sell include baked breads, buns, rolls, and snack cakes. (*Id*.) A critical component of this distribution network is a sophisticated system of reciprocal baking whereby each subsidiary has an assigned production mission to produce certain items for its own market, as well as for other subsidiaries' markets. (*Id*.)

Plaintiffs ordered and sold products that are produced by out-of-state bakeries to their customers. (*Id*. at ¶ 16.) These include, for example, various Nature's Own and Cobblestone Mill products, including Nature's Own 100% Wheat Sandwich Rounds and Cobblestone Mill Whole Wheat Bagels, Sara Lee Delightful Wheat Bread, EarthGrains 12 Grain Bread, various types of Dave's Killer Bread, and various types of Tastykake products. (*Id*.)

Most of the products are manufactured outside the State of California and are transported across state lines and delivered directly by interstate truckers to the depots operated by Flowers/Henderson, and, previously, Flowers/California. (*Id*. at ¶ 18.) Flowers/California was, and Flowers/Henderson is, a registered motor carrier with the U.S. Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"). (*Id*.) The FMCSA, after conducting a safety audit of Flowers/Henderson, confirmed it could "continue to operate in interstate commerce within the United States." (*Id*.)

### B. Plaintiffs Order Out-of-State Products for Delivery to California Customers

As discussed at greater length below, Flowers/California and Flowers/Henderson contracted with Plaintiffs, who purchased distribution rights to market and sell bakery products in a defined geographic territory. (Rich Decl., ¶ 22,

36398172_1.docx

Ex. I.) Plaintiffs' customers include chain grocery stores, independent grocery stores, restaurants, and cash customers. Some example of customers are Safeway, Whole Foods, Smart & Final, Wal-Mart, Wendy's, and Denny's. (Tobin Decl. ¶¶ 2-7, Exs. A at 135:2-16 and 136:10-20, B at 96:2-5 and 98:1-8, C at 105:4-11, 105:24-106:2, 106:3-4, and 106:25-107:2, D at 86:7-15 and 85:2-3, E, at 91:1-15 and 92:10-12, and F at 82:22-83:7 and 88:17-19.)

As independent Distributors, Plaintiffs determine the necessary number of products for each of their customers on a regular basis. (Rich Decl., ¶ 17.) Specifically, Plaintiffs place orders for products using a handheld computer, at which point the orders are transmitted to the producing bakeries, many of which are located out of state. (*Id.*) Those bakeries then produce the products in response to the specific orders that are placed using the handheld computers, *i.e.*, the out-of-state bakeries produce and transport the number of products needed to fulfill the specific orders placed by Plaintiffs, as well as other Distributors who operate out of the same distribution depot. (*Id.*) The out-of-state bakeries are aware that the products they produce in response to such orders are for end customers, and not simply a warehouse, given the structure of the DSD system, the perishable nature of the goods, and the specific quantity ordered by each Distributor. (*Id.*)

The out-of-state products are transported across state lines and delivered directly to Flowers/Henderson's depots by truck. (*Id.* at ¶ 18.) After arriving at the distribution depots, the trucks are quickly unloaded and the fresh baked products are set aside for the Distributors who placed an order. (*Id.* at ¶ 19.) Because the products have a very limited shelf life, and because customers expect and want fresh bread, these products and others are not held in any sort of inventory except in exceptional circumstances. (*Id.*) These out-of-state goods are not altered or processed during the temporary pause at the distribution depots. (*Id.*) As such, these products are in nearly continuous movement from the point of origin to the point of destination. (*Id.*)

Plaintiffs (or someone working on their behalf) typically deliver products five

36398172_1.docx

days a week – Monday, Tuesday, Thursday, Friday, and Saturday. (Tobin Decl. ¶¶ 6, 7, and 11, Exs. A at 217:21-25, B at 191:13-20, C at 200:12-205:21, D at 153:6-22 and 154:13-17, E at 239:16-240:5, and F at 130:1-5) On delivery days, Plaintiffs start by going to the distribution depot to pick up the products for delivery to their customers, typically within six-to-twelve hours of when the products were delivered to the distribution depots. (Rich Decl. ¶ 19; Tobin Decl. ¶¶ 6, 7, 8, 9, and 11, Exs. A at 262:18-264:3 and 273:13-23, B at 238:9-239:10, C at 201:1-6, D at 237:7-9, E at 160:15-20, and F at 188:11-189:6, 189:17-191:8) Plaintiffs admit they typically use vehicles with a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds to deliver products. (Tobin Decl., ¶¶ 6 - 23, Exs. A at 172:13-16, B at 140:1-2, C at 122:14-20, D at 108:13-14, E at 110:12-15, F at 101:20-102:3, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, and V) To the extent Plaintiffs claim to have operated their personal vehicles, it was in connection with a "pull-up" on a non-delivery day, which entails arranging product that is already on the shelf, or pulling existing product from the back room onto the shelves, but not delivering product. (Tobin Decl., ¶¶ 6, 8, 9, 10, and 11, Exs. A at 172:17-23, B at 140:10-20 and 144:10-15, C at 122:21-24, D at 108:24-109:4, E at 110:20-24, and F at 103:14-17)

Between 2013 and the present, the majority of products that were delivered to territories owned by Plaintiffs were baked in factories outside the State of California and transported across state lines to depots in San Diego County. (Rich Decl., ¶ 21.)

## C.   **The Distributor Model**

Flowers/California and now Flowers/Henderson implemented the independent contractor franchise model because the program had been successful in building sales at other subsidiaries. (Rich Decl., ¶ 5.) Management at these subsidiaries believe that individuals and businesses who own distribution rights have more financial incentive to develop business and generate additional sales based on their own entrepreneurial efforts and individualized sales strategies. (*Id.*)

This distributor model is not novel or unique to Flowers Foods, Inc. and its

36398172_1.docx

5                                               Case No. 17-CV-02580-JLS-JLB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

subsidiaries, but has a long history and is common throughout the food-distribution industry. (Rich Decl., ¶ 5.) The model itself was developed in the 1950s by Robert Fanelli with Arnold's Bread Company. (*Id.*) Thereafter, it was adopted by other baking companies, including Tasty Baking Company and Holsum Bakery. Others in the baking industry, such as George Weston and Bimbo Bakeries, also use this independent distributor model. (*Id.*)

Throughout the years, there have been various legal challenges to the distributorship model at Flowers Foods, Inc.'s subsidiaries. (*Id.* at ¶ 6.) In 1988, the Teamsters union filed an unfair labor practice charge at West Virginia Baking Company. (*Id.*) This legal challenge resulted in a decision favorable to West Virginia Baking Company by the National Labor Relations Board upholding the distributor model as one of independent contractor, and citing similar decisions in the baking industry. (*Id.* at ¶¶ 6, 8, Exs. A-C.)[2] The D.C. Circuit affirmed this decision. *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 175 v. N.L.R.B.*, 946 F.2d 1563 (D.C. Cir. 1991). (*Id.* at ¶ 7.) Regional Directors of the National Labor Relations Board have reached the same conclusion regarding other baking companies' use of independent contractors in the last several years. (*Id.* at ¶ 11, Exs. G-H.) After the distributor model was challenged in New Hampshire several years ago, another Flowers subsidiary received an Administrative Hearing Decision confirming that Distributors were properly classified. (*Id.* at ¶ 10, Ex. F.) The Internal Revenue Service ("IRS") has also historically treated the distributorship business model as one involving independent contractors. (*Id.* at ¶ 12.)

Flowers Foods, Inc. and its subsidiaries also took numerous steps to maintain the integrity of the independent distributor model. (*Id.* at ¶ 13.) For example, Chuck Rich, who is responsible for providing advice and recommendations to subsidiaries

---

[2] Regional Directors of the National Labor Relations Board have also concluded that distributors of certain Flowers subsidiaries were independent contractors.  (Rich Decl., ¶ 9, Exs. D-F.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

36398172_1.docx

of Flowers on distributor-related issues, and his staff, conduct ongoing training with sales management at the subsidiaries, including Flowers/California and Flowers/Henderson, on how to treat distributors as independent contractors. (*Id*.)

### D. Plaintiffs Were Independent Contractors Pursuant to the Distributor Agreement and Defendants' Reasonable Expectations

Another step taken to ensure the integrity of the independent distributor model was the implementation of a Distributor Agreement ("DA") between Plaintiffs and Flowers/California and then Flowers/Henderson. The DA, which Plaintiffs initially entered into on their own behalf and later through their corporations, establishes the "DISTRIBUTOR is an independent contractor" and that "DISTRIBUTOR shall not be controlled by COMPANY as to the specific details or manner of DISTRIBUTOR's business…" (Rich Decl., ¶ 22, Ex. I (DA, ¶ 4; ¶ 16.1.)

The DA does not require Plaintiffs to personally perform the services, and permits them to hire helpers, advertise, own outside businesses, perform work elsewhere, and buy and sell their distribution rights to others, all hallmarks of an independent contractor relationship. DA ¶¶ 13.1, 15.1, 16.2, 19.2. The DA does not require distributors to wear a uniform or put logos on their vehicles, and it permits Plaintiffs to sell Defendants' products *and* outside merchandise. *Id.* at ¶¶ 5.1, 19.2.

Other than expressly *prohibiting* Defendants from controlling Plaintiffs' businesses, the DA is silent regarding the "specific details or manner" of how they may distribute products in their territories. While the DA contains the general expectation that Plaintiffs will follow "Good Industry Practice," that phrase is defined broadly as "the standards that have developed and are generally accepted and followed in the baking industry," and includes several broad, non-exhaustive examples, including "maintaining proper service and delivery . . . in accordance with [the customer's] requirements." DA ¶ 2.6.

As will be discussed at greater length in Defendants' opposition to Plaintiffs' anticipated motion for summary judgment, Defendants expected Plaintiffs to operate

36398172_1.docx

their distributorships in a manner that was consistent with the DA and an independent-contractor relationship. (Rich Decl., ¶ 23.)

## IV.   LEGAL STANDARD

Summary judgment should be granted in whole or in part where "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure to make a showing sufficient to establish the existence of an element essential to the plaintiff's case." *Field v. Am. Mortgage Exp. Corp.*, No. C-09-5972 EMC, 2011 WL 3354344, at *3 (N.D. Cal. Aug. 2, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotations omitted). To avoid summary judgment, the non-moving party must produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009).

## V.   SUMMARY JUDGMENT SHOULD BE GRANTED

### A.   Summary Judgment Should Be Granted as to Plaintiffs' Overtime Claims

All of Plaintiffs' claims fail because Plaintiffs were independent contractors and not employees. However, even if Plaintiffs could show they should have been classified as employees, which is denied, their overtime claims fail as a matter of law because they were overtime exempt.

#### i.   California Law Recognizes that Drivers Engaged in Interstate Commerce Are Exempt from Overtime Requirements.

Plaintiffs are pursuing their overtime claims under California law. Following federal law, California recognizes that drivers who are engaged in interstate commerce are not entitled to overtime. The FLSA specifically exempts from overtime any persons "with respect to whom the Secretary of Transportation has

36398172_1.docx

power to establish qualifications and maximum hours of service" under the Motor Carrier Act of 1935, 49 U.S.C. § 31502 (referred to herein as the "MCA" or "motor carrier exemption"). 29 U.S.C. § 213(b)(1).

Drivers who are exempt from federal overtime requirements under the MCA are also exempt from California's overtime requirements. *See* IWC Wage Order No. 4-2001, § 3(K) (Jan. 1, 2005) (Wage Order"); Cal. Code Regs. tit. 8, § 11040(3)(K). In particular, California exempts drivers "whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers . . . ." *Id*. Consequently, "the issue before us is whether [the plaintiff] was engaged in transporting property in interstate commerce so as to be subject to the federal regulations referenced in the IWC order. If so, [a plaintiff] is not entitled to overtime pay in California." *Watkins v. Ameripride Servs.*, 375 F.3d 821, 825 (9th Cir. 2004).

"To establish that the [DOT] has jurisdiction over an employee and the overtime provisions therefore do not apply to that employee, an employer must show that (1) the employer is a motor carrier pursuant to 49 U.S.C. § 31502 and (2) the employee was engaged in safety-affecting activities in interstate commerce." *Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP (RZx), 2009 WL 10669255, at *4 (C.D. Cal. Mar. 19, 2009).

### ii. Flowers/California and Flowers/Henderson Qualify as a Motor Private Carrier

Under the MCA, the Secretary has authority over drivers who are employed by either a "motor carrier" or "motor private carrier." A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "motor private carrier" is defined as:

> [A] person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in 13501 . . . [interstate commerce]; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

36398172_1.docx

49 U.S.C. §13102(15).

Here, Flowers/Henderson (and, previously, Flowers/California) is a registered DOT motor carrier. (Rich Decl., ¶ 18.) Flowers/Henderson regularly transports baked goods across state lines in the stream of interstate commerce. (*Id*.) Flowers is the owner or bailee of the property being transported, depending upon the circumstances and such distribution is conducted to further Flowers/Henderson's business. (Declaration of Tyler Schoenewald, ¶¶ 2-7.) As such, this element of the motor carrier exemption is satisfied.

### iii.   Plaintiffs Regularly Distribute Goods in the Stream of Interstate Commerce

Interstate commerce, for purposes of the MCA, occurs not only when the driver actually transports goods across state lines, but also when there is a "practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders or contracts are being filled." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 567, 569 (1943); *see also* 29 C.F.R. § 782.7(b)(1) (interstate commerce element satisfied where the "vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce."). Thus, out-of-state goods shipped to a warehouse, where they are transferred to a local driver for delivery to the end customer for whom the goods were originally intended, are in a "practical continuity of movement" if the pause at the warehouse is merely an "efficient opportunity to convert the means of delivery from one form of transportation to the other." *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 673 (10th Cir. 1993). Whether the transportation is interstate or intrastate depends on the "essential character of the shipment," which is dependent on the shipper's "fixed and persisting intent." *S. Pac. Transp. Co. v. I.C.C.*, 565 F.2d 615, 617 (9th Cir. 1977).

36398172_1.docx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

a.   *Plaintiffs Distribute Products that Were in a Practical Continuity of Movement Across State Lines*

The uncontradicted evidence establishes Plaintiffs distribute products that are in a practical continuity of movement from out-of-state manufacturers to in-state recipients. Here, Plaintiffs order products, including such brands as Nature's Own, Cobblestone Mill, Tastykake, and Dave's Killer Bread, that are produced by out-of-state bakeries, for specific customers on an ongoing basis. (Rich Decl., ¶¶ 16-19.) When Plaintiffs order such products through their handheld computers, these orders are subsequently placed with the out-of-state producing bakeries. (*Id.*) The out-of-state producing bakeries bake the products in response to these specific orders and then ship such products to Flowers/Henderson for distribution to the end customers of Plaintiffs through the DSD system. (*Id.*) These out-of-state bakeries are aware that the products they produce in response to such orders are for end customers, and not simply a warehouse, given the structure of the DSD system, the perishable nature of the goods, and the specific quantity ordered by each Distributor. (*Id.*) Once the products arrive at the distribution depot, the out-of-state products are quickly unloaded and made available to each Distributor. (*Id.*) The products are not altered or processed during the temporary pause at the distribution depots, nor do the products become general inventory from which they are subsequently sold or allocated.[3] (*Id.*) Plaintiffs, as part of the intended DSD system of delivery, pick up and deliver the products to those customers.[4] (*Id.*)

---

[3] As the Supreme Court observed in *Walling*, 317 U.S. at 568: "The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey.  A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act . . . . [I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points . . . . Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce."

[4] The fact that Plaintiffs may also distribute products that are produced in California does not change the result.  For example, in *Morris v. McComb*, the Supreme Court held that drivers who only spent 4% of their trips involved in interstate commerce were still exempt from the FLSA's overtime requirements.  332 U.S. 422, 431-36

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

36398172_1.docx

The perishable nature of the goods Plaintiffs deliver, and their limited shelf life, confirm the goods remain in interstate commerce until reaching the end customer. This non-fungible nature of these goods make it clear the producing bakeries *do not* intend for the goods to remain in inventory, but continue in interstate commerce and reach the end customers as soon as possible. *See, e.g.*, *Webb v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1471-1472 (M.D. Ga. 1998) (the "strongest evidence" that the out-of-state newspaper supplements were intended to (and did) remain in interstate commerce until delivery to the end customers was that they were non-fungible in nature and lost their value if not delivered immediately).

b.   *Other Cases Involving Food Distributors/Drivers Demonstrate the Practical Continuity of Movement*

Other cases involving food distributors or delivery drivers demonstrate that Plaintiffs deliver out-of-state products in the practical continuity of movement. In *Foxworthy v. Hiland Dairy Co.*, the Tenth Circuit held that a driver who delivered milk and cheese products was exempt from overtime under the FLSA. *Foxworthy*, *supra*, 997 F.2d at 670. The plaintiff ordered products from Hiland Dairy Company for delivery to his customers in Ponca City, Oklahoma. *Id*. at 671. Upon receiving plaintiff's orders, Hiland Dairy Company shipped products from Arkansas to a distribution center in Oklahoma City, Oklahoma. *Id*. The products were then refrigerated overnight before being transported to Ponca City, where the plaintiff would load his delivery truck and make intrastate deliveries. *Id*. at 671-72. Even though the plaintiff's transportation efforts were purely within Oklahoma, the Tenth Circuit concluded the plaintiff was engaged in interstate commerce. *Id*. at 673-74. In support of this conclusion, the court agreed the defendant had a fixed and persisting intent at the time of shipment based on specific customer orders and because "the products were not processed in any way and were not held in storage or inventory

---

(1947).  Here, many of the products distributed in Plaintiffs territories were produced out of state.  (Rich Decl., ¶ 17.)

Case No. 17-CV-02580-JLS-JLB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

36398172_1.docx

pending the receipt of actual orders." *Id.*; *see also Shew v Southland Corp.,* 370 F.2d 376, 380 (5th Cir. 1996).

The *McGuiggan* case, which also involved bakery distributors, is likewise illustrative. *McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470 (S.D.N.Y. 2000). The plaintiffs in *McGuiggan* distributed and sold bakery products to retail accounts located in New York. However, the products plaintiffs ordered for their accounts were produced at a baking plant in New Jersey, and then subsequently shipped to distribution depots in New York, where plaintiffs picked them up for delivery to their retail accounts. *Id.* at 472. Dismissing the plaintiffs' overtime claims, the district court observed that the defendant "baked the English muffins in New Jersey, and New York customers served by the plaintiffs (and the plaintiffs themselves) called their orders in to New Jersey. **If this does not qualify as interstate commerce, I am hard pressed to understand what is**." *Id.* at 483 (emphasis added).[5] This conclusion was not changed by "the 'ritual' of placing goods in a warehouse before subsequent delivery to customers within the same state," nor was it affected "[e]ven where the driver performs duties other than, or in addition to, driving . . . ." *Id.*[6]

Here, the record evidence establishes Plaintiffs transport out-of-state products that are intended to, and do, remain in interstate commerce. Plaintiffs are engaged in interstate commerce and exempt from overtime.

---

[5] *See also Ruiz v. Affinity Logistics Corp.*, No. 05-cv-2125, 2006 WL 3712942, at *2, *8 (S.D. Cal. Nov. 9, 2006) (granting summary judgment based on motor carrier exemption where plaintiff did not drive across state lines but where shipper had an intent to ship Sears appliances to a specific destination).

[6] It also is not necessary that the shipper know specifically which goods are earmarked for a particular customer, only that the goods will ultimately continue from the warehouse to a customer in a state different from that of the shipper. *See Shew,* 370 F.2d at 378, 380 (shipper had fixed and persisting intent beyond terminal storage point at time of shipment even though orders were consolidated); Dep't of Labor Opinion Letter FLSA 2005-2NA, 2005 WL 5419038 (Apr. 27, 2005); Dep't of Labor Opinion Letter, 1999 WL 1002364 (Feb. 10, 1999) (same).

36398172_1.docx

     c. *Plaintiffs' Use of Personal Vehicles for Tasks that Do Not Involve Interstate Commerce Is Immaterial*

  Plaintiffs may argue they are nevertheless entitled to overtime because they used personal vehicles that weighed less than 10,001 pounds in connection with their distributorships.  Defendants anticipate that such an argument would be based on the limited overtime exception contained in SAFETEA-LU Technical Corrections Act of 2008, Pub. L. 110-224, 122 Stat. 1572 ("TCA") for drivers who drive non – commercial vehicles (which is defined to include vehicles under 10,001 pounds).

     (i) <u>The Technical Corrections Act of 2008 Is Inapplicable</u>

  Importantly, as noted above, Plaintiffs are pursuing their overtime claims under California law. Thus, the TCA is inapplicable, as that exception is an amendment to the FLSA <u>only</u> and does not affect claims under California law.  The Wage Order establishes that Plaintiffs cannot recover overtime under California law *if they are subject to regulation by the Secretary of Transportation*.  Any finding that Plaintiffs were "covered employees" under the TCA (and, therefore, *subject to the Secretary's jurisdiction*) would compel the dismissal of the Plaintiffs' state law overtime claim, since the Wage Order does *not* contain an exception to the exemption similar to that created by the TCA.  *See Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596, 603 (4th Cir. 2017) (dismissing state law overtime claims).

  Significantly, the TCA grants the Secretary of Transportation's authority to cover motor vehicles *of any weight*.  *Allen v. Coil Tubing Servs., L.L.C.,* 846 F. Supp. 2d 678, 692 (E.D. Tex. 2012). Thus, the TCA actually further strengthens the Defendants' motor carrier defense. That defense, as noted above, is applicable to *all* employees *subject to federal DOT jurisdiction*, and is not qualified by the personal vehicle amendment. To put it another way, the "personal vehicle" use issue, which has divided courts under the FLSA is *inapplicable* to the overtime claims asserted here.

36398172_1.docx

(ii)   Plaintiffs Did Not Typically Drive Non-Commercial Vehicles in Interstate Commerce So the TCA Would Not Apply in Any Event

Even assuming, arguendo, the limited overtime amendment of the TCA applied to California claims, the Plaintiffs here have testified that they only used their personal vehicle conducting pull-ups (when Plaintiffs go to existing accounts and pull product that has already been dropped off in the back room to put on the shelves).  (Tobin Decl., ¶¶ 6, 8, 9, 10, and 11, Exs. A at 172:17-23, B at 140:10-20 and 144:10-15, C at 122:21-24, D at 108:24-109:4, E at 110:20-24, and F at 103:14-17)  This does not count as non-exempt time. With a pull-up, the product has already come to rest when it was placed in the back room of the account; *it no longer remains in interstate commerce*. Thus, use of the personal vehicle for pull-ups is purely *intra*state.  *See, e.g., Garcia v. W. Waste Servs., Inc.,* 969 F. Supp. 2d 1252, 1261 (D. Idaho 2013) (because the plaintiff did not transport product in interstate commerce when using a personal vehicle, the MCA exemption still applied). In short, in order to be a "covered employee" under the TCA and trigger potential overtime, the employee must use his *personal vehicle* in *inter*state commerce. That did not happen here. Instead, while Plaintiffs are engaged in interstate commerce the vast majority of the time, that time is spent using their *commercial*, as opposed to personal, vehicles.

For the foregoing reasons, Plaintiffs are engaged in interstate commerce and exempt from overtime under state law. Accordingly, even if Plaintiffs are subsequently found to be employees (which Defendants deny), they cannot recover overtime through their second cause of action.

## A.   Plaintiffs Cannot Recover Purported Expenses Associated with Vehicle Purchases or Leases

Through their sixth and seventh causes of action, Plaintiffs seek reimbursement under Labor Code § 2802 for several categories of alleged business expenses, including the "purchase or lease of [their] vehicle[s]." ECF No. 17 (First

36398172_1.docx

Amended Compl.), ¶ 54). Even if Plaintiffs succeed on their misclassification claim (which is denied), as a matter of law they cannot recover the money they paid for the vehicles used in connection with their distributorships.

The California Division of Labor Standards and Enforcement ("DLSE") has consistently held that, although the costs of *operating* a motor vehicle in the course of employment may be covered by Section 2802, the costs of *furnishing* the vehicle itself are not. *See DLSE Interpretive Bulletin* No. 84-7 (Jan. 8, 1985) ("[A]n applicant for employment may be required, as a condition of employment, to furnish his[ ] own automobile or truck to be used in the course of employment, regardless of the amount of wages paid. In *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1 (2007), the California Court of Appeal adopted the DLSE's reasoning when it affirmed a trial court's finding that the plaintiffs "were not entitled to reimbursement for expenses related 'to purchasing or leasing a vehicle for the purpose of performing pick up and delivery services' because 'employers in the pick-up and delivery industry in California can require as a condition of employment that their drivers, at their own expense, purchase or lease a truck to the employer's specifications.'" *Id.* at 21-22. Thus, Plaintiffs cannot recover the costs they allegedly incurred in purchasing, leasing, renting, or otherwise obtaining the vehicles they used to operate their distributorships.

## B.    Plaintiffs' Claims that Require a Willful Violation Fail as a Matter of Law.

Through their fourth cause of action, Plaintiffs seek penalties for Defendants' alleged failure to provide accurate itemized wage statements under Section 226 of the California Labor Code. ECF No 17, ¶ 75. Even if Plaintiffs could ultimately establish they were misclassified, these penalty claims fail as a matter of law because Plaintiffs cannot make the requisite showing that Defendants willfully violated the pertinent statutes.

Although Plaintiffs seek statutory penalties for allegedly inaccurate wage

statements, a predicate to recovery is a "knowing and intentional" violation of the statute. Labor Code § 226(e)(1).

The existence of a "'good faith dispute' as to whether Plaintiff is subject to these provisions precludes a finding that Defendant[s] acted with requisite scienter." *Dalton v. Lee Publ'ns, Inc.*, No. 08cv1072 BTM (NLS), 2011 WL 1045107, at *5-6 (S.D. Cal. Mar. 22, 2011) (granting summary judgment to Section 226 claim in case involving alleged misclassification of independent contractors). A good-faith dispute exists:

> [W]hen an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith will preclude a finding of a "good faith dispute."

Cal. Code Regs. tit. 8, § 13520 (defining "good-faith dispute" for purposes of Labor Code § 203); *Dalton*, 2011 WL 1045107, at *5-6 (applying same "good-faith dispute" definition to analysis of Section 226 claim); *Hurst v. Buczek Enters., Inc*., 870 F. Supp 2d 810, 829 (N.D. Cal. 2012); *Harris v. Vector Mktg. Corp.,* 656 F. Supp. 2d 1128, 1146 (N.D. Cal. 2009).

Defendants will prove at trial that Plaintiffs were properly classified as independent contractors. Even at this stage of the proceedings, however, it is clear Defendants did not willfully misclassify Plaintiffs as independent contractors, as shown by judicial and administrative decisions concluding that Distributors are independent contractors under Flowers' distributorship model (and under similar models in the baking industry), IRS treatment of Distributors as independent contractors, previous litigation, and the ongoing efforts made by Flowers to maintain the independent-contractor business model. (Rich Decl., ¶¶ 5-12, Exs. A-H.)

The existence of a good-faith dispute between Plaintiffs and Flowers is amply demonstrated by the summary judgment decision in *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015). In *Villalpando*,

36398172_1.docx

Judge Spero granted the plaintiffs' motion for class certification and further found the drivers were misclassified as independent contractors as a matter of law. *Id*. at *1, *51. *Villalpando* is distinguishable from this case in many respects.

Despite the distinguishable facts which led to a finding of misclassifications which is not the case here, the district court in *Villalpando* still granted the defendants' summary judgment motion as to the Section 226 claim. 2015 WL 5179486 at *37. In doing so, Judge Spero observed that even though the drivers were misclassified, the "Plaintiff have not demonstrated that there is a fact question as to Exel's intent" and "[t]ruck drivers who owned their own trucks have been found to be independent contractors in a variety of contexts." *Id*.[7] If there was no showing of willfulness in *Villalpando – despite a class being certified and the court finding the class members were misclassified as a matter of law*, then Plaintiffs plainly cannot show Flowers committed a "knowing and intentional" violation of Section 226 here.

## C.   <u>Summary Judgment Should Be Granted as to Plaintiffs' PAGA Claims</u>

Plaintiffs' ninth cause of action is for alleged violations of the Private Attorneys General Act of 2004 ("PAGA"). But Plaintiffs failed to exhaust PAGA's mandatory administrative exhaustion requirements prior to bringing suit. They failed to give notice to Defendants and the State of California of the group of allegedly "aggrieved employees" they seek to represent. Lab. Code § 2699.3(a)(1)(A). Their ninth cause of action must be dismissed in its entirety.[8]

---

[7] The *Villalpando* court cited several authorities. *United States v. Silk,* 331 U.S. 704, 719 (1947) (holding that truck drivers who owned their own trucks and hired their own helpers were "small businessmen" who were properly classified as independent contractors); *Merchants Home Delivery Serv., Inc. v. N.L.R.B.*, 580 F.2d 966, 968 (9th Cir. 1978) (delivery truck drivers were properly classified as independent contractors); *N.L.R.B. v. A. Duie Pyle, Inc.,* 606 F.2d 379, 388 (3d Cir. 1979) (drivers who owned their own trucks and were "not instructed how to do their job" were acting as independent contractors when they delivered coal for defendant).

[8] Defendants previously moved to dismiss Plaintiffs' ninth cause of action on these grounds under FRCP 12(b)(6). (ECF 22.) In response, Plaintiffs' *conceded* their FAC did not state a valid PAGA cause of action and asked for leave to amend. (ECF 34.) For the reasons stated herein and in Defendants' Reply in support of the Motion to Dismiss (ECF 36), leave to amend would be futile.

18

The ninth cause of action also seeks PAGA penalties based on alleged violations of Labor Code § 204. Plaintiffs failed to identify this Labor code provision in their PAGA notice letter. This claim is therefore barred and must be dismissed.

### i.    Plaintiffs' PAGA Notice Letter Failed to Identify the Group of Allegedly "Aggrieved Employees," Requiring Dismissal

PAGA imposes administrative exhaustion requirements that must be met prior to filing suit. Lab. Code § 2699.3(a)(1)(a). Per these requirements, PAGA plaintiffs must put defendants and the California Labor & Workforce Development Agency ("LWDA") on notice of the allegedly "aggrieved employees" they seek to represent. Plaintiffs' PAGA notice letter plainly fails to do so.

The purpose of PAGA's pre-filing administrative exhaustion requirements is to allow the LWDA to "intelligently assess the seriousness of the alleged violations" and the defendant to "determine what policies and practices are being complained of." *Alcantar v. Hobart Serv.,* 800 F.3d 1047, 1057 (9th Cir.2015). These requirements are "intended to protect businesses by putting them on notice of violations such that they can remedy those violations without litigation." *Hamilton v. Genesis Logistics*, No. 13-CV–01848-DDP-VBKx, 2013 WL 3168373, at *5 (C.D. Cal. June 20, 2013).

At a minimum, PAGA notice letters must identify the group of allegedly aggrieved employees the plaintiffs purport to represent. *Khan v. Dunn-Edwards Corp.*, 19 Cal. App. 5th 804, 810 (2018), *review denied* (Apr. 18, 2018) ("Because Khan failed to give fair notice of the individuals involved, he failed to comply with the administrative requirement, and the trial court properly granted summary judgment"). To meet this requirement, PAGA plaintiffs must *expressly* identify the group of allegedly "aggrieved employees." *Gunn v. Family Dollar Stores, Inc.,* 2016 WL 7030363, at *4 (S.D. Cal. Dec. 2, 2016) (tentative ruling subsequently confirmed, 3:14-cv-01916-GPC-BGS at Doc. 40). In *Gunn*, the defendant moved to dismiss the plaintiff's PAGA claim for failure to exhaust administrative remedies. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

36398172_1.docx

It challenged the sufficiency of the plaintiff's PAGA notice letter, which stated the plaintiff was pursuing the case on behalf of "all other similarly situated current and former employees." *Id*. The plaintiff argued the "positions and job duties covered are self-explanatory and were sufficiently addressed" by the notice letter. *Id*. The plaintiff further argued "the facts included in the notice letter were sufficient because they implied other details." *Id*. The Court disagreed and granted the defendant's motion to dismiss. *Id*. Citing *Alcantar*, *supra*, the Court held that "[f]actual details implied by the labor code violations are not sufficient to meet PAGA's notice requirement." *Id*.

Here, Plaintiff's PAGA notice letter fails to put the LWDA or Defendants on notice of *which individuals Plaintiffs are attempting to represent*. Nowhere in the letter do Plaintiffs identify the group of allegedly "aggrieved employees." Instead, the letter makes vague, sweeping statements, including:

- "As a result of the above-mentioned practices, Defendants do not provide all wages when due to their employees";

- "Defendants failed to compensate Plaintiffs and similarly situated employees for all hours worked";

- "Defendants fail to reimburse Plaintiffs and similarly situated employees";

- "Defendants do not provide all wages when due to Plaintiffs and similarly situated employees"; and

- "Defendants do not provide sufficient information to their employees." (Ex. W to Tobin Decl.)

But this is a *misclassification* case and Plaintiffs were classified as *independent contractor franchisees*. Worse, the letter never *defines* the term "similarly situated employees." The letter only alleges *Plaintiffs themselves* are "employees of Flowers," despite signing independent contractor agreements. (Ex. W.) It makes no further distinction between "employees" and "independent contractors." The letter references "distributors," but similarly fails to define this group of individuals, or even state they are located in California. Rather, it vaguely references "'independent contractors,' aka 'distributors.'" (*Id*.) But *which*

36398172_1.docx

"independent contractors"? The letter is fatally vague.

The letter leaves open several key questions, the answers to which are required to provide adequate notice under PAGA. For example, are Plaintiffs attempting to represent individuals Defendants classified as employees? If so, which employees? Where did they work? What job positions did they hold? Or are Plaintiffs only attempting to represent individuals who signed independent contractor agreements? If so, which of the *three* Defendants did these individuals sign agreements with? The letter failed to put the LWDA on notice of any of this key information.

As in *Gunn*, Plaintiffs cannot argue that these missing factual details can be "implied" or somehow written in after the fact. 2016 WL 7030363, at *4. PAGA's *pre-filing* administrative exhaustion requirements are mandatory. *Williams v. Superior Court*, 3 Cal.5th 531, 545 (2017). Plaintiffs failed to meet these mandatory pre-filing requirements. Their PAGA claim must be dismissed accordingly.

### ii. Plaintiffs' PAGA Notice Letter Failed to Identify Labor Code § 204, Requiring Dismissal

PAGA's administrative exhaustion requirements also mandate that plaintiffs list the "specific provisions of [the Labor Code] alleged to have been violated" in their pre-filing notice letter. Lab. Code § 2699.3(a)(1)(a). If a specific Labor Code section is not listed in the PAGA notice letter, it cannot be included in a subsequent PAGA cause of action and must be dismissed.[2] *See Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1047 (C.D. Cal. 2016) (dismissing PAGA claim on grounds that plaintiffs' pre-filing notice letter failed to list the underlying Labor Code violation).

Here, Plaintiffs' ninth cause of action includes a claim for PAGA penalties based on alleged violations of Labor Code § 204. ECF 17, ¶ 69(f). But Labor Code §

---

[2] PAGA uses the term "provision" synonymously with "Labor Code section." *See* Lab. Code § 2699.5 (enumerating the "provisions" of the Labor Code which may give rise to PAGA penalties, all of which are various Labor Code sections).

204 is *not* listed in Plaintiffs' PAGA notice letter. (Ex. W.) Thus, Plaintiffs failed to provide notice to Defendants and the LWDA of their intention to seek penalties based on alleged violations of this provision in contravention of Labor Code § 2699.3(a)(1)(A). Plaintiffs' claim for PAGA penalties based on alleged violations of Labor Code § 204 must be dismissed accordingly.[10]

## VI.   CONCLUSION

For the foregoing reasons, summary judgment should be granted to Defendants.

DATED: November 16, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Frank L. Tobin*
      Frank L. Tobin
      Kevin P. Hishta
      Clint S. Engleson

Attorneys for Defendants FLOWERS FOODS, INC., FLOWERS BAKING CO. OF CALIFORNIA, LLC, and FLOWERS BAKING CO. OF HENDERSON, LLC

---

[10] Plaintiffs' expert report also includes calculations of PAGA penalties for violations of Labor Code §§ 226.8 and 256. Neither section is listed in Plaintiffs' PAGA notice letter or their ninth cause of action. (ECF 17, ¶ 69; Ex. W.) Because these claims are not plead, Defendants do not move to dismiss them here. But to the extent Plaintiffs later seek penalties based on these provisions, they will be barred from doing so.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

36398172_1.docx

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 16, 2018.


By: /s/ Frank L. Tobin
     Frank L. Tobin

36398172.1

36398172_1.docx

23