Frank L. Tobin CA Bar No. 166344
frank.tobin@ogletree.com
Clint S. Engleson CA Bar No. 282153
clint.engleson@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone: 858.652.3100
Facsimile: 858.652.3101

Kevin Hishta (*Pro Hac Vice*)
kevin.hishta@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, GA 30303
Telephone: 404.881.1300
Facsimile: 404.870.1732

Attorneys for Defendants FLOWERS FOODS, INC.,
FLOWERS BAKING CO. OF CALIFORNIA, LLC, and
FLOWERS BAKING CO. OF HENDERSON, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, an individual; TONY RUSSELL, an individual; REY PENA, an individual; JOSE PENA, an individual; JEFF BELANDER, an individual; GUISEPPE ZIZZO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKING CO. OF CALIFORNIA, LLC, a California limited liability company; FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 17-CV-02580-JLS-JLB<br><br>**DECLARATION OF CHUCK RICH IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: January 31, 2019<br>Time: 1:30 p.m.<br>Courtroom: 4D<br><br>Complaint Filed: December 13, 2017<br>Trial Date: Not Set |

Declaration of
Chuck Rich in

I, Chuck Rich, declare and state as follows:

1.     I am currently the Vice President of Compliance for the Distributor Enablement Group for Flowers Bakeries, LLC. I assumed that position in January, 2018. Prior to that, I was the Vice President of Distributor Operations for Flowers Bakeries, LLC. I assumed this position in July 2005. Prior to being the Vice President of Distributor Operations for Flowers Bakeries, LLC, I held the position of Director of Distributor Relations for Flowers Bakeries, LLC. Prior to assuming the position of Director of Distributor Relations, I held the positions of Tax Associate and Distributor Coordinator for Flowers Industries, Inc. I have personal knowledge of all of the facts set forth below, and if called upon to testify to the same, I could and would do so competently and truthfully.

2.     Defendant Flowers Foods, Inc., is the parent holding company of numerous operating subsidiaries like Flowers Baking Co. of California, LLC ("Flowers/California") and Flowers Baking Co. of Henderson, LLC ("Flowers/Henderson"), each of which is its own separate legal entity. Flowers Foods, Inc., which is headquartered in Thomasville, Georgia, provides overall strategic direction to, and oversees the financial performance of, its subsidiaries. The subsidiaries, however, manage their own respective operations and are their own separate profit and loss centers.

3.     I am familiar with the distributorship program implemented by various subsidiaries of Flowers Foods, Inc. (and its predecessor Flowers Industries, Inc.), including the reasons for its implementation, distributorship programs implemented by other companies in the baking industry, Internal Revenue Service ("IRS") treatment of Distributors, and litigation involving distributors at various subsidiaries of Flowers Foods, Inc. or Flowers Industries, Inc.

4.     Under the distributor business model, Distributors are sold distribution rights to certain branded products of Flowers Foods, Inc. and its subsidiaries, such as Nature's Own, Cobblestone Mill, and Tastykake. Distribution

Declaration of
Chuck Rich in

1                                    Case No. 17-CV-02580-JLS-JLB

DECLARATION OF CHUCK RICH IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT

1  rights to private label products, which are products sold by major retailers using their

2  own respective label names, are not sold.  Neither are rights to non-branded products

3  sold, such as products sold in clear bags to various fast food restaurants.

4      5.    This business model is premised on the belief that a Distributor who

5  owns his/her distribution rights will have more entrepreneurial incentive to develop

6  the business and generate additional sales.  This entrepreneurial incentive was the

7  principal reason the distributor business model was implemented by Flowers

8  Industries, Inc. for use by its baking subsidiaries.  However, this distributor model is

9  not novel or unique to Flowers Foods, Inc. and its subsidiaries, but has a long history

10  and is common throughout the food-distribution industry.  The model itself was

11  developed in the 1950s by Robert Fanelli with Arnold's Bread Company.

12  Thereafter, it was adopted by other baking companies, including Tasty Baking

13  Company and Holsum Bakery.  Others in the baking industry, such as George

14  Weston, Ltd. and Bimbo Bakeries USA, also use this independent distributor model.

15      6.    I am aware that there have been several legal challenges involving

16  Distributors at various subsidiaries of Flowers Industries/Flowers Foods.  In 1988,

17  the Teamsters filed an unfair labor practice charge regarding a conversion from

18  employees to independent distributors at West Virginia Baking Company.  This legal

19  challenge resulted in a decision favorable to West Virginia Baking Company by the

20  National Labor Relations Board in Washington, D.C.  A true and correct copy of the

21  Board's decision is attached as **Exhibit A**.

22      7.    The Board's decision was upheld on appeal by the D.C. Circuit Court of

23  Appeals in a decision reported at 946 F.2d 1563 (D.C. Cir. 1991).  In this decision,

24  the Board found the Distributors to be independent contractors and found that the

25  decision to convert to independent distributors involved a fundamental change in the

26  nature and direction of the West Virginia subsidiary's operations.  The Board also

27  found that the decision to convert was unrelated to labor costs, noting an analysis

28  that projected labor costs actually increased.

Declaration of
Chuck Rich in

8.      The West Virginia decision also notes two decisions in the baking industry where similar independent contractor models were upheld, *Bellacicco & Sons* and *Gold Medal Baking Co.*   True and correct copies of the decisions are attached as **Exhibits B and C**.

9.      I am also aware that at least two Regional Directors of the National Labor Relations Board have concluded that distributors of the particular subsidiary involved were independent contractors.   True and correct copies of these decisions are attached as **Exhibits D and E**.

10.      The New Hampshire Department of Employment Security has also found that Distributors at another Flowers Foods, Inc. subsidiary were properly classified as independent contractors.   In particular, the Lepage subsidiary in New Hampshire converted employee drivers to independent distributors starting in 2013. In 2016, the New Hampshire Department of Employment Security issued an Administrative Hearing Decision, which found that the services provided by the Lepage distributors "after the effective date of their franchise purchase are not in employment."   A true and correct copy of the Administrative Hearing Decision is attached as **Exhibit F**.

11.      Within the last three years, two Regional Directors of the National Labor Relations Board have also concluded that distributors with Pepperidge Farm and Bimbo Bakeries were properly classified as independent contractors.   True and correct copies of these decisions are attached as **Exhibits G and H**.

12.      The IRS has also historically treated the distributorship business model as one involving independent contractors.   Some Flowers Foods, Inc.'s subsidiaries treat distributors as "statutory employees" under Section 3121(d)(3)(A) of the Internal Revenue Code.   Thereunder, certain categories of common law independent contractors, including bakery distributors, are treated as employees for Federal Insurance Contribution Act ("FICA") purposes only.   The IRS has audited various Flowers Foods, Inc. subsidiaries and specifically acknowledged the propriety of

1 treating distributors as "statutory employees" for FICA, but as independent
2 contractors otherwise.

3     13.   As noted above, my responsibilities both as Vice President of
4 Distributor Operations and as Director of Distributor Relations have included
5 providing advice and recommendations to subsidiaries of Flowers Foods on
6 distributor-related issues. This has included ongoing training with sales management
7 at the subsidiaries on how to treat distributors as independent contractors and not
8 employees. Those training efforts are tailored to impress upon local management the
9 need to avoid excessive control in actual practice and to avoid any other such actions
10 that could be deemed inconsistent with independent contractor status. Such training
11 has been conducted at Flowers/California and Flowers/Henderson.

12     14.   Based on decisions upholding the distributorship model as independent
13 contractor, IRS treatment of distributors as independent contractors, and the above-
14 discussed training efforts to maintain the integrity of the distributorship model as one
15 of independent contractor, I have seen no need to advise the management of Flowers
16 Foods, Inc.'s subsidiaries that the distributorship model is not one of independent
17 contractor and I have not done so.

18     15.   Entities like Flowers/California and Flowers/Henderson, operate under a
19 "direct store delivery" ("DSD") system. Under a DSD system, independent business
20 owners like Plaintiffs purchase fresh products from the subsidiaries and deliver those
21 products directly to customers immediately after production, as opposed to going
22 through a customer's warehouse or broker. The fresh products that are available to
23 Independent Distributors ("ID") to purchase and sell include baked breads, buns,
24 rolls, and snack cakes. A critical component of this distribution network is a
25 sophisticated system of reciprocal baking whereby each subsidiary, like
26 Flowers/California and Flowers/Henderson, has an assigned production mission to
27 produce certain items for its own market, as well as for other subsidiaries' markets.

28     16.   Given my positions, I am aware that IDs with Flowers/California and

Declaration of
Chuck Rich in

1  Flowers/Henderson regularly ordered and sold products that are produced by out-of-
2  state bakeries to their customers.  These include, for example, various Nature's Own
3  and Cobblestone Mill products, including Nature's Own 100% Wheat Sandwich
4  Rounds, Nature's Own Multigrain Sandwich Rounds, Cobblestone Mill Whole
5  Wheat Bagels, Cobblestone Mill White Bagels, and Cobblestone Mill Multigrain
6  Sandwich Rounds; Sara Lee Delightful Wheat Bread; various Sunnyside Farms
7  products, including Sunnyside Farms Jewish Rye, Sunnyside Farms Bagels, and
8  Sunnyside Farms English Muffins; EarthGrains 12 Grain Bread and EarthGrains
9  100% Whole Wheat Bread; various types of Dave's Killer Bread; and various types
10  of Tastykake products.

11      17.   As Independent Distributors, Plaintiffs determine the necessary number
12  of products for each of their customers on a regular basis.  Specifically, Plaintiffs
13  place orders for products using a handheld computer, at which point the orders are
14  transmitted to the producing bakeries, many of which are located out of state.  Those
15  bakeries then produce the products in response to the specific orders that are placed
16  using the handheld computers, i.e., the out-of-state bakeries produce and transport
17  the number of products needed to fulfill the specific orders placed by Plaintiffs, as
18  well as other Distributors who operate out of the same distribution depot.  The out-
19  of-state bakeries are aware that the products they produce in response to such orders
20  are for end customers, and not simply a warehouse, given the structure of the DSD
21  system, the perishable nature of the goods, and the specific quantity ordered by each
22  Distributor.

23      18.   The products that are manufactured outside the State of California are
24  transported across state lines and delivered directly by interstate truckers to the
25  depots operated by Flowers/Henderson, and, previously, Flowers/California.
26  Flowers/California was, and Flowers/Henderson is, a registered motor carrier with
27  the U.S. Department of Transportation, Federal Motor Carrier Safety Administration
28  ("FMCSA").  I am aware that, within the last several years, Flowers/Henderson was

1  subjected to, and passed, a safety audit that was conducted by the FMCSA, which

2  confirmed that Flowers/Henderson could "continue to operate in interstate commerce

3  within the United States."  Flowers/Henderson received a letter from the FMCSA

4  confirming a "Safety Audit Pass" on April 21, 2016.

5      19.  After arriving at the distribution depots, the trucks are quickly unloaded

6  and the fresh baked products are set aside for the IDs who placed an order.  Because

7  the products have a very limited shelf life, and because customers expect and want

8  fresh bread, these products and others are not held in any sort of inventory except in

9  exceptional circumstances.  These out-of-state goods are not altered or processed

10  during the temporary pause at the distribution depots.  Plaintiffs, as part of the

11  intended DSD system of delivery, pick up the products for delivery to their

12  customers, typically within six-to-twelve hours of when the out-of-state products

13  were delivered to the distribution depots.  As such, these products are in nearly

14  continuous movement from the point of origin to the point of destination.

15      20.  Because the bakery products sold by the IDs, including Plaintiffs, have

16  a short shelf life, Flowers/California and Flowers/Henderson do not typically

17  maintain a standing inventory of products.  The only exception may be around

18  holidays when the bakeries freeze a particular item.

19      21.  Since 2013, most of the products that were delivered to the territories

20  operated by Plaintiffs were baked in factories outside the State of California and

21  transported across state lines to depots in San Diego County.

22      22.  One of the steps taken to ensure the integrity of the independent

23  distributor model was the implementation of a Distributor Agreement ("DA")

24  between Plaintiffs and Flowers/California and then Flowers/Henderson.  A true and

25  correct copy of an exemplar DA is attached as **Exhibit I**.  A substantively identical

26  DA was entered into by all the Plaintiffs.

27      23.  I understand that the Plaintiffs contend in this lawsuit that they were

28  treated like employees and not like independent contractors.  This claim is

Declaration of
Chuck Rich in

1  inconsistent   with   the   model   implemented   by   Flowers/California   and

2  Flowers/Henderson, inconsistent with the terms of the DA, and inconsistent with my

3  expectations   for   how   Plaintiffs   were   able   to   run   their   businesses.   While the

4  following is not intended to be an exhaustive list, it identifies some of the ways that

5  Plaintiffs were able to operate their businesses:

6  • Plaintiffs can exercise their rights under the DA to hire others to distribute

7     products for them, without prior approval from Defendants.

8  • Plaintiffs choose how to dress for work and what vehicle to use for their work.

9  • Plaintiffs choose when to start working each day.

10  • Plaintiffs determine the order in which to service their accounts.

11  • Plaintiffs and their customers (not Flowers) determine the number of service

12     days.  As I previously testified in this matter, the stores – not Flowers –

13     established the expectation that Plaintiffs provide service a certain number of

14     times per week.  As long as Plaintiffs were meeting the customers'

15     expectations, Flowers does not have any right to mandate a greater number of

16     service visits per week.

17  • Plaintiffs determine what products to order.

18  • Flowers' management relays information and makes suggestions, but cannot

19     tell Plaintiffs what to do.  Flowers/California and Flowers/Henderson

20     historically employed Branch Sales Managers ("BSMs") to serve as the

21     "advisor or liaison" to the distributors and help them grow their sales.  While

22     the BSMs may communicate requests that were generated by Plaintiffs'

23     customers (not Flowers) or share potential strategies that might allow

24     Plaintiffs to grow their sales, the BSMs are instructed not to control and

25     should not control the specific details or manner of the Plaintiffs'

26     distributorships.

27  • A "stale cap" does not control Plaintiffs' businesses.  While Flowers will only

28     repurchase a certain amount of stale product, Plaintiffs determine how much

Declaration of
Chuck Rich in

7                        Case No. 17-CV-02580-JLS-JLB

1    stale their territories would generate, based on how much product they

2    purchased and their efforts to sell that product.

3  • Flowers cannot terminate Plaintiffs' DAs without cause.  Plaintiffs'

4    distribution rights can only be terminated for cause and in certain limited

5    circumstances, such as criminal or violent activity or ongoing serious

6    performance issues in breach of their contractual obligations.

7  • The more that they sell, the more the Plaintiffs earn.  Plaintiffs' compensation

8    is determined by the "margin" between the price at which they purchase

9    products for the bakeries and the price at which they sell those products to

10    their customers.  Consequently, Plaintiffs are not paid by the hour, but, rather,

11    earn more or less depending on their entrepreneurial efforts.

12  • Plaintiffs have a tangible property interest in their territories.  Because

13    Plaintiffs own distribution rights to their territories, they possess an asset that

14    can increase in value and can be sold, for a profit.

15    I declare under penalty of perjury under the laws of the United States of America

16  and of the State of California that the foregoing is true and correct, and that this

17  declaration was executed on ___November 14___, 2018, at Thomasville, Georgia.

18

19                                                                Chuck Rich

20

21                                                                          36079851.1

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 16, 2018.


By: /s/ Frank L. Tobin
      Frank L. Tobin

36079851.1

Case No. 17-CV-02580-JLS-JLB

DECLARATION OF CHUCK RICH IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

36079851_1.docx