# EXHIBIT HH

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CIVIL COMPLEX CENTER

### MINUTE ORDER

DATE: 07/18/2018      TIME: 10:00:00 AM      DEPT: CX102

JUDICIAL OFFICER PRESIDING: William Claster
CLERK: Gus Hernandez
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: Barbara Allen

CASE NO: **30-2015-00802813-CU-CR-CXC** CASE INIT.DATE: 08/05/2015
CASE TITLE: **Johnson vs. VCG-IS, LLC, et al.**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Civil Rights

EVENT ID/DOCUMENT ID: 72809838
**EVENT TYPE**: Motion - Other

**APPEARANCES**

There are no appearances by any party.

Tentative Ruling e-served upon the parties.

All parties telephonically submit on the Court's tentative ruling.

The Court confirms the tentative ruling as follows: The Court's ruling is attached hereto and incorporated herein by reference.

Court orders clerk to give notice.

**JOHNSON v. VCG-IS, LLC  15-802813: RULING ON MOTION IN LIMINE**

The instant PAGA case involves, among other things, the issue of whether exotic dancers working at Imperial Showgirls in Anaheim, California qualify as independent contractors. The entity which directly engages the dancers is Defendant VCG-IS, LLC dba Imperial Showgirls. Defendants VCG Holding Corp. and International Entertainment Consultants, Inc. are affiliated companies which, according to Plaintiffs, are jointly liable for the alleged Labor Code violations.

On May 10, 2018, during a status conference preceding an upcoming motion for summary judgment and the trial, the parties jointly requested that the Court provide clarification on whether the California Supreme Court's recent decision in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal. 5th 903 will be applied and relied upon in deciding the case. The case is significant in that it altered the previous test *(see S.G. Borello v. & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal. 3d 341) utilized to determine whether individuals qualify as independent contractors or employees in any given situation. Although the question before the Court is essentially a question of law, the guidance being provided herein is in the context of a motion in limine. For the parties' benefit and planning, the Court's intention is to apply the following ruling to subsequent motions and the trial.

1. **Is Dynamex Retroactive?**

In *Dynamex*, a putative class of delivery drivers contended that their employer misclassified them as independent contractors. The lawsuit in that case sought to certify a class of drivers who purportedly had been misclassified since 2005. By the time that *Dynamex* was decided—April 30, 2018—the case had been going on for 13 years. Ultimately the California Supreme Court ruled that previous multi-factor tests to determine misclassification, including the "economic realities" test of the FLSA and the *Borello* test, leave "both businesses and workers in the dark with respect to basic questions relating to wages and working conditions that arise regularly," and were subject to abuse because they permit "a hiring business greater opportunity to evade its fundamental responsibilities under a wage and hour law by dividing its work force into disparate categories and varying

Ruling Page 1

the working conditions of individual workers within such categories with an eye to the many circumstances that may be relevant under the multifactor standard." (*Dynamex, supra* at 954-55.) The Court therefore sought to create a brighter line, citing favorably to Massachusetts cases holding workers to be employees when they performed their work within the usual course of a hiring entity's business. (*Id*. at 963.)

To satisfy these aims, the *Dynamex* Court held that it is appropriate to (1) place the burden on the hiring entity to establish that the worker is an independent contractor who was not intended to be included within the IWC wage order's coverage; and (2) requiring the hiring entity, in order to meet this burden, to establish each of the three factors embodied in simpler test known as the ABC test. (*Id*. at 957.) The Court embraced the ABC test because it would "provide greater clarity and consistency, and less opportunity for manipulation than a test or standard that invariably requires the consideration and weighing of a significant number of disparate factors on a case-by-case basis." (*Id*. at 964.)

Even though *Dynamex* established a new standard for evaluating independent contractor/employee issues (at least as to claims brought under the IWC wage orders), it did not state that its decision applied only prospectively. Given the age of the claims in the *Dynamex* case, and given the Court's longstanding acknowledgment of its authority to make such a statement (*see Newman v. Emerson Radio Corp.* (1989) 48 Cal. 3d 973, 978), the lack of such a pronouncement suggests that the decision should apply retroactively. Although not necessarily determinative, the Court's later decision (on June 20, 2018) to deny requests to modify its decision to state that *Dynamex* will only be applied prospectively supports this conclusion. In light of "the general rule that judicial decisions are given retroactive effect" (*Newman, supra* at 978), and because it is up to the Supreme Court to declare an exception to this rule (*see Barr v. ADandS, Inc.* (1997) 57 Cal. App. 4th 1038, 1053), this Court will apply *Dynamex* retroactively.

2. **Does Dynamex Only Apply to Claims Seeking to Enforce California's Wage Orders?**

Defendants argue that the ABC standard enunciated in *Dynamex*, even if applied retroactively, is limited to claims brought under the IWC wage orders. Indeed, the Supreme Court stated at the beginning of its opinion as follows: "Dynamex's petition for review challenged only the Court of Appeal's conclusion that the trial court properly determined that the wage order's definitions of "employ" and "employer" may be relied upon in determining whether a worker is an employee or an independent contractor for purposes of the obligations imposed by the wage order. We granted the petition for review to consider that question." (*Dynamex, supra* at 925.)

In light of this and other statements by the Supreme Court emphasizing that its analysis focused on specific language found in the wage orders, Defendants argue that *Dynamex* does not apply to PAGA claims since such claims are premised on Labor Code violations, not wage order violations. Instead, according to Defendants, PAGA claims must be considered using the *Borello* test. Not surprisingly, Plaintiffs disagree with this position.

The PAGA claims in this case are all based on alleged violations of Labor Code provisions. These violations include:

(a) Failure to pay all wages owed, including minimum wage (Violation of Labor Code §§ 201-204, 210, 558, 1194, 1194.2, 1197 and 1198);
(b) Failure to provide meal breaks (Violation of Labor Code §§ 226.7 and 512);
(c) Failure to provide rest breaks (Violation of Labor Code § 226.7);
(d) Failure to provide accurate itemized wage statements (Violation of Labor Code § 226);
(e) Failure to keep accurate records of hours worked (Violation of Labor Code §§ 1174, 1174.5 and 1175);
(f) Failure to reimburse all expenses incurred for Defendants' benefit (Violation of Labor Code § 2802);
(g) Improper deductions from wages (Violation of Labor Code § 221); and
(h) Failure to permit Plaintiffs and aggrieved employees to retain all gratuities (Violation of Labor Code § 351).

As it turns out, the applicable wage order (IWC Order No. 10) also covers each of these violations except for the gratuity claim pursuant to Labor Code § 351. Thus, a failure to pay minimum wages is covered by Section 4 of the wage order, meal periods are governed by Section 11, rest periods are covered by Section 12, accurate wage statements and records of hours work are required by Section 7, and reimbursement of expenses and improper deductions are covered by Sections 8 and 9. Further, these wage order requirements are tied into the Labor Code by, among others, Labor Code § 1194 (failure to pay minimum wages which, per Labor Code § 1197, are set in the wage orders), § 1198 which makes unlawful "employment of any employee . . . under conditions of labor prohibited by the [wage] order," and Labor Code §§ 512 and 516 pertaining to meal periods and rest breaks.

Notwithstanding these close, if not inseparable ties between the applicable Labor Code sections and the wage order provisions, Defendants insist that different tests should be used to determine employee v. independent contractor status depending on the statutory basis for the particular claims. Stated differently, Defendants contend that a violation of the requirement to pay minimum wages under Labor Code § 1194 should be analyzed under *Borello*, while a violation of Section 4 of the wage order should be decided under *Dynamex*.

In this Court's view, this position misses the mark. For one thing, there is a huge practical problem. Considering wage and hour claims based on state laws, how is a trial court supposed to apply one standard to a claim grounded in the Labor Code and a different test for essentially the same claim premised on a wage order? More significantly, how are employers and employees/independent contractors supposed to determine their rights if they are unable to figure out what test applies? Indeed, the suggestion that multiple tests should apply to state law wage and hour claims runs counter to the purpose of *Dynamex*—providing greater clarity and consistency in analyzing this issue. (*Dynamex, supra* at 964.)

More to the point, there is no private right of action under the wage orders. As stated by the court in *Thurman v. Bayshore Transit Mgmt., Inc.* (2012) 203 Cal. App. 4th 1112, 1132: "The IWC has not created, and has no power to create, a private right of action for violation of a wage order, and we are aware of no statute that creates a private right of action for a violation of an IWC wage order when the violation at issue is not also a violation of the Labor Code."

The foregoing statement makes clear that in lawsuits such as the one at hand, where an individual is suing for violation of the minimum wage laws, etc., he or she is actually enforcing the Labor Code which, by its own terms, incorporates the wage orders. "[An employee] who sues to recover unpaid minimum wages under Section 1194 [of the Labor Code} actually sues to enforce the applicable wage order. Only by deferring to wage orders' definitional provisions do we truly apply Section 1194 according to its terms by enforcing the 'legal minimum wage.'" *Martinez v. Combs* (2010) 49 Cal. 35, 62.

Indeed, that is exactly what happened in *Dynamex*. There, the plaintiffs filed a complaint that set forth alleged Labor Code violations based on, among other things, Dynamex's alleged failure to pay overtime compensation. Given this pleading and the fact that overtime pay requirements are set by the wage orders, the Court's holding that the ABC test should be applied to determine employee status under the wage orders can only mean that that test also had to be applied to Labor Code claims seeking to enforce the wage order requirements.

Because all of the claims (except for the gratuities claim) in the instant case are rooted in the wage orders, the Court concludes that *Dynamex's* ABC test should be utilized to determine the employee/independent contractor issues in this case. The fact that the case is brought under PAGA does not compel a different result. PAGA claims are based on violations of the Labor Code which, in turn, requires compliance with the wage orders. As such, "PAGA actions can serve to *indirectly* enforce certain wage order provisions by enforcing *statutes* that require compliance with wage orders (e.g., § 1198, which prohibits longer work hours than those fixed by wage order or employment under conditions prohibited by a wage order*).* " *Thurman, supra* at 1132 (emphasis in original).

Defendants' contention that the Supreme Court specifically approved different tests for determining employee status in the context of wage and hour litigation also misses the mark. While Defendants correctly point out that the *Dynamex* court acknowledged the possibility of a "two-test approach" to "disparate claims under different labor statutes brought by the same individual" (*Dynamex, supra* at 948), there is no indication that the court approved such an approach when it comes to state wage and hour law. In referencing different wage and hour standards under the federal FLSA, the Court appropriately lumped together the protections afforded by both state wage and hour laws and the wage orders: "The federal context demonstrates that California is not alone is adopting a distinct standard that provides broader coverage of workers with regard to *the very fundamental protections afforded by wage and hour laws and wage orders*." (*Id.*; emphasis added)

While the *Dynamex* court did not cite specific examples of non-wage and hour labor statutes for which the *Borello* test would continue to apply, it is likely that the workers compensation and unemployment compensation laws would fit into this category. It is those types of laws, which are not directly based on the wage orders and which do not fall into the generic category of "wage and hour laws" that, in this Court's view, would not yet be analyzed under the ABC test.

### 3. Labor Code Section 351--Gratuities

Labor Code §§ 350-356 is the state law pertaining to gratuities or tips. Because of the nature of this form of compensation, the statute includes a unique definition of "Employee" in § 350(b):

> "Employee" means every person, including aliens and minors, rendering actual service in any business for an employer, whether gratuitously or for wages or pay, whether the wages or pay are measured by the standard of time, piece, task, commission, or other method of calculation, and whether the service is rendered on a commission, concessionaire, or other basis.

The plain language of this provision establishes that, for purposes of gratuities, the determination of who qualifies as an employee is different (and arguably broader) than the definition found in the wage orders. "Rendering actual service," including doing so "gratuitously," supports the conclusion that the Legislature recognized that tips often are provided to individuals who do not fit into traditional definitions (or even the *Dynamex* version) of employee. Because of this specialized definition, there is no basis to apply the *Dynamex* analysis in determining issues relating to the gratuities issue in this case.

This conclusion is reinforced by the fact that there is no reference to gratuities in the wage orders. Indeed, an argument can be made that Labor Code §§ 350 et seq. are not "wage and hour laws" given that gratuities or tips are usually not determined by the employer, but rather by the customer.

4. **Joint Employer Issues**

The final issue for resolution in connection with this motion in limine is whether *Dynamex's* ABC test also applies to the determination of joint employer status as to VCG Holding (the owner of VCG-IS, LLC--the club where the dancers worked) and IEC (the consulting company). For now, the answer is relatively simple. In *Curry v. Equilon Enterprises* (2018) 23 Cal. App. 5th 289, the court of appeal concluded that it was not the intention of the Supreme Court to apply this new test to joint employment issues: "In conclusion, the "ABC" test set forth in *Dynamex* is directed toward the issue of whether employees were misclassified as independent contractors. Placing the burden on the alleged employer to prove that the worker is not an employee is meant to serve policy goals that are not relevant in the joint employment context. Therefore, it does not appear that the Supreme Court intended for the "ABC" test to be applied in joint employment cases." *Id.* at 314.

Plaintiff argues that this Court should not follow *Curry* inasmuch as that decision conflicts with *Dynamex* and because a petition for review has been filed in that case. As to the first point, this Court is not inclined to second guess the court of

appeal which considered and rejected Plaintiff's argument. As to the second point, until such time as the Supreme Court overrules or depublishes the case, this Court is bound to follow it.