UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Simon Goro, et al.,
Plaintiffs,
v.
Flowers Foods, Inc., et al.,
Defendants.

Case No.: 17-cv-02580-JLS-JLB

**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL**

**[ECF No. 64]**

Presently before the Court is Plaintiffs' Motion to Compel (ECF No. 64). Plaintiffs seek to compel Defendants to produce the full deposition transcript of former Chief Financial Officer Jimmy Woodward from a North Carolina misclassification case, as requested by Request for Production ("RFP") 15 in Plaintiffs' Requests for Production of Documents, Set Three. (ECF No. 64-1 at 7–8.) Plaintiffs also seek to compel Defendants to produce all pre-2018 revenue recognition memoranda and all appendices to the 2017 Ernst & Young Memorandum, as requested by RFP 22 in the same set of requests. (*Id.* at 8–9.)

For the reasons stated below, Plaintiffs' Motion to Compel is **GRANTED in part and DENIED in part**.

///

## I. BACKGROUND

Plaintiffs Simon Goro, Guiseppe Zizzo, Jeff Belander, Jose Pena, Rey Pena, and Tony Russell worked as distributors for Defendants Flowers Foods, Inc., Flowers Baking Company of Henderson, LLC ("Flowers/Henderson"), and Flowers Baking Company of California, LLC ("Flowers/California"). (ECF No. 17 at 2.) Plaintiffs originally filed this action in state court against Defendants on November 27, 2017. (ECF No. 1-2 at 2.) Underpinning Plaintiffs' claims is the allegation that Defendants misclassified them as independent contractors instead of employees. (ECF No. 17.) Defendants develop, produce, and deliver baked goods. (ECF No. 44 at 2.) Plaintiffs perform delivery and merchandising services for customers that purchase Defendants' baked goods. (ECF No. 17 at 2.) Distribution agreements executed between each Plaintiff and Defendants govern Plaintiffs' compensation and the terms of the parties' relationship. (*Id.* at 5.) These agreements designate Plaintiffs as independent contractors. (*Id.*) Plaintiffs allege that they are compensated based on the number and type of baked goods sold, but Defendants require them to deliver baked goods to customers six days a week, regardless of the profit Plaintiffs will receive. (*Id.*) Plaintiffs further allege that Defendants exclusively negotiate with customers that purchase the baked goods, setting all material terms of the relationship such as prices for baked goods, service and delivery agreements, shelf and display space, baked good selection, and print advertisements for baked goods. (*Id.* at 6–7.) Plaintiffs allege that they regularly work seven days per week delivering the baked goods, amounting to 55 to 75 hours worked per week. (*Id.* at 2.) Plaintiffs allege that this arrangement results in nonproductive time that Plaintiffs are not compensated for. (*Id.*) Plaintiffs allege Defendants violated numerous sections of the California Labor Code, California's Industrial Wage Commission ("IWC") Wage Orders, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, by misclassifying Plaintiffs as independent contractors instead of employees. (*Id.* at 2–3.) Plaintiffs also seek civil penalties for the alleged Labor Code violations as aggrieved employees under the California Private Attorneys General Act ("PAGA"). (*Id.* at 16.)

Defendants removed this action from state court on December 18, 2017. (ECF No. 1.) On March 22, 2018, Plaintiff filed the operative First Amended Complaint. (ECF No. 17.) On April 12, 2018, Defendants filed a motion to dismiss Plaintiffs' PAGA cause of action on multiple grounds. (ECF No. 22.)

On September 28, 2018, the Court held a counsel-only, telephonic Discovery Conference regarding the deposition transcript of Mr. Woodward. (ECF No. 58.) On October 15, 2018, the Court held a counsel-only, telephonic Discovery Conference regarding the accounting memoranda. (ECF No. 62.) The Court issued a Briefing Schedule for Plaintiffs to file a motion to compel regarding both discovery disputes on October 16, 2018. (ECF No. 63.) Plaintiffs filed the instant motion on October 22, 2018. (ECF No. 64.) Defendants oppose the motion. (ECF No. 86.)

## II. DISCUSSION

### A. Legal Standard

Nonprivileged information is discoverable under Federal Rule of Civil Procedure 26 if it is (1) relevant, and (2) proportional to the needs of the case. Rule 26(b)(1) provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 34 further provides that a party may serve requests for documents or tangible things on any other party that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 34(a). The propounding party may move to compel a response if a party fails to produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of

establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining[,] or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citations omitted) (first citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); then citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**B. Request for Production 15**

RFP 15 requests "[a]ll declarations, affidavits, or deposition testimony provided by former CFO Chief Financial Officer Jimmy Woodward relating to misclassification claims by distributors." (ECF No. 64-6 at 6.) Specifically, Plaintiffs move to compel Defendants to produce the full transcript of a single deposition taken of Mr. Woodward in the matter of *Rehberg, et al. v. Flowers Foods, Inc. et al.*, 3:12-cv-00596, filed in the Western District of North Carolina. (ECF No. 64-1 at 7.) Plaintiffs argue that Mr. Woodward's testimony in *Rehberg* is relevant to Plaintiffs' "misclassification issue and the willful/intentional behavior of Flowers in classifying distributors like Plaintiffs as independent contractors." (*Id.* at 8.) Plaintiffs claim that Mr. Woodward testified about his "tax assessment role" and "Flowers' knowledge of risks of classifying the distributors and independent contractors." (*Id.* at 7.) Plaintiffs further claim that the deposition transcript is relevant to this case because Defendants have produced correspondence between Flowers and the IRS signed by Mr. Woodward. (*Id.*)

Defendants in response argue that Mr. Woodward's testimony in *Rehberg* is irrelevant to this case because (1) *Rehberg* was "a North Carolina lawsuit involving distributors who contracted with a North Carolina subsidiary of Flowers Foods, Inc.," (2) "Mr. Woodward ceased acting as Flowers Foods, Inc.'s CFO in early 2006," and (3)

Flowers' correspondence with the IRS was signed by Mr. Woodward in 2004. (ECF No. 86 at 9.)

The Court agrees with Defendants and finds that Plaintiffs have not met their burden of establishing that Mr. Woodward's testimony in *Rehberg* satisfies the relevancy requirements of Rule 26(b)(1). *See Bryant*, 2009 WL 1390794, at *1. As Defendants highlight, Mr. Woodward's deposition was taken in 2014 in the context of "a North Carolina lawsuit involving distributors who contracted with a North Carolina subsidiary of Flowers Foods, Inc." (ECF No. 86 at 9.) In contrast, the instant action turns on whether California distributors were misclassified as independent contractors under the California Labor Code. In response to a compromise position suggested by the Court during the September 28, 2018 Discovery Conference, Defendants offered to produce any portions of the deposition transcript that could be construed to bear on Flowers' decision to classify distributors as independent contractors *in general*. (*Id.* at 9–10; ECF No. 70-1 ¶ 2.) Plaintiffs declined that compromise. (ECF Nos. 86 at 10; 70-1 ¶ 2.)

The only arguable relevance of Mr. Woodward's testimony would be if Mr. Woodward had provided testimony as to Flowers' decision to classify distributors as independent contractors. However, even that testimony would be of questionable relevance considering Mr. Woodward ceased to be Flowers' CFO in early 2006, and Flowers' correspondence with the IRS, signed by Mr. Woodward, dates back to 2004. And again, Plaintiffs' claims turn on the application of California law whereas the claims in *Rehberg* involved North Carolina distributors who contracted with a North Carolina subsidiary of Flowers.

Plaintiffs declined to limit their request to those portions of Mr. Woodward's testimony that could be arguably relevant to this case, and the Court does not otherwise find that Mr. Woodward's testimony is relevant. *See SolarCity Corp. v. Doria*, No.: 16cv3085-JAH (RBB), 2018 WL 467898, at *2 (S.D. Cal. Jan. 18, 2018) ("District courts have broad discretion to determine relevancy for discovery purposes and to limit the scope of discovery."). Therefore, Plaintiffs' Motion to Compel as to RFP 15 is **DENIED**.

**C. Request for Production 22**

RFP 22 requests "[a]ll DOCUMENTS and ESI relating to [Defendants'] accounting memorandum or similar document supporting gross revenue recognition on sales made using independent contractors." (ECF No. 64-6 at 7.) In response to RFP 22, Defendants have produced a 2018 revenue recognition accounting memorandum ("2018 memo") and its exhibits, "correspondences between Flowers and the [SEC] regarding Flowers' revenue recognition practices," and a memorandum prepared by third-party Ernst & Young ("EY memo"), including two of its six appendices. (ECF Nos. 86 at 10; 70-1 ¶¶ 3–4.) Plaintiffs move to compel Defendants to supplement its production with two types of documents: (1) pre-2018 revenue recognition memoranda; and (2) the remaining four appendices to the EY memo. (ECF No. 64-1 at 9.)

**i. Pre-2018 Revenue Recognition Memoranda**

Plaintiffs argue that pre-2018 revenue recognition memoranda are relevant to this action because the 2018 memo shows an "assessment of revenue . . . [that] looks into the Distributor Agreement, Flowers['] relationship with end retailers and the distributors' role in the process, who controls the product, and who takes on title and risk of loss at what point in time." (*Id.* at 10.) Plaintiffs assert that the pre-2018 memoranda "make a variety of fact-based findings" that are helpful to Plaintiffs' misclassification claim. (*Id.* at 8.)

Defendants in response argue that, although they have produced the 2018 memo, Flowers' revenue recognition memoranda are irrelevant because "any assessment of Flowers' revenue recognition practices assumes an independent contractor relationship," as testified by their 30(b)(6) witness. (ECF No. 86 at 10.) Defendants further argue that Plaintiffs' requests for additional revenue recognition memoranda are "entirely disproportionate to the needs of the case." (*Id.* at 2; *see id.* at 10.)

The Court finds that Plaintiffs have met their burden of establishing the relevance and proportionality of the pre-2018 revenue recognition memoranda. As Plaintiffs assert, the 2018 memo analyzes the Distributor Agreement, a "central document in this case," as well as the relationship between Flowers and its distributors. (ECF No. 64-1 at 8.) Given

that the statute of limitations in this case reaches back to 2013, pre-2018 revenue recognition memoranda are likewise relevant.

The burden then falls on Defendants, the party opposing discovery, to show that production of additional memoranda should be prohibited. *See Bryant*, 2009 WL 1390794, at *1. Defendants' argument against production focuses mainly on what discovery they have already produced and not why production of additional memoranda would be disproportionate to the needs of this case. Without more, the Court finds that Defendants have failed to meet their "heavy burden of showing" why discovery should be denied. *Blankenship*, 519 F.2d at 429.

Plaintiffs' Motion to Compel as to the production of pre-2018 revenue recognition memoranda is **GRANTED**. Accordingly, Defendants shall produce all revenue recognition memoranda dating back to 2013 on or before **January 4, 2019**. By the same date, Defendants shall produce supplemental written responses to RFP 22 that comply with the requirements of Federal Rule of Civil Procedure 34(b)(2)(C).

**ii. 2017 Ernst & Young Memorandum Appendices**

As detailed above, Defendants have produced two out of six appendices to the EY memo. (ECF Nos. 86 at 6; 70-1 ¶ 4.) Plaintiffs move to compel Defendants to produce the remaining four appendices: A, B, C, and E. (ECF No. 64-1 at 10.)

Plaintiffs argue that the EY memo is relevant for the same reasons that the revenue recognition memoranda are relevant. (*See id.* at 8–9.) It is Plaintiffs' position that all appendices to the EY memo are therefore relevant because the EY memo expressly references the appendices, and the appendices elaborate on the memo's contents. (*Id.* at 10–11.) Plaintiffs maintain that Defendants should not be allowed to "show one document, but none of the attached and expressly-referenced exhibits covering the same relevant topics." (ECF No. 74 at 5.)

Defendants in response argue that the appendices are incorporated into the EY memo's findings, and thus, there is no need to produce the appendices themselves. (ECF No. 86 at 11.) Defendants further argue that the appendices are irrelevant, and producing

them would be disproportional to the needs of this case. (*Id.* at 3.) Defendants also contend that appendices A, B, C, and E contain confidential and proprietary information, and it would be unduly burdensome to produce such sensitive documents in light of Plaintiffs' failure to honor the protective order in this case.[1] (*See id.* at 3, 7–8, 11.)

Plaintiffs defend their public filing of confidential documents and material gleaned from confidential documents by accusing Defendants of improperly overdesignating documents as confidential. (ECF No. 74 at 6.) Specifically, Plaintiffs state that Defendants have "marked every single page of every document that [they have] ever produced in this case, along with every page of every deposition transcript, as "CONFIDENTIAL" under the protective order," including publicly available documents.[2] (*Id.*; ECF No. 74-1 ¶ 2.)

Defendants have produced the EY memo, and the EY memo relies upon and incorporates the appendices. The Court finds that Plaintiffs have met their burden of establishing the appendices' relevance. At the very least, the appendices may be useful in providing context for the relevant information contained within the EY memo. *See Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) ("Irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information."). The burden then shifts to Defendants to support their objections to production. Defendants' reluctance to take comfort from the protective order in light of Plaintiffs' apparent violation is

---

[1] In support of the instant motion, Plaintiffs publicly filed ECF No. 64-4, which is a portion of a deposition transcript Defendants designated as confidential. Defendants argue that Plaintiffs did not seek permission from the Court or Defendants before filing the transcript, as required by the protective order in this case. (ECF No. 86 at 7 (citing ECF No. 19 § 12.5).) Plaintiffs also quoted from and described the contents of the accounting memoranda Defendants designated as confidential in their memorandum of points and authorities. (ECF No. 64-1 at 8–11.)

[2] On this subject, the Court notes that when a party overdesignates documents as confidential, the proper way to challenge the overdesignation is to follow the procedure set forth in the protective order, not to unilaterally disregard confidential designations, as Plaintiffs seem to have done here. Section 6 of the protective order provides the proper procedure for challenging confidentiality designations in this action. (*See* ECF No. 19 §§ 6.1–6.3.)

understandable. Nonetheless, Defendants have failed to provide the Court with a sufficiently detailed description of appendices A, B, C, and E to meet their burden of demonstrating that the nature of the appendices is so sensitive that it would be unduly burdensome to produce them. *See Ivy Hotel San Diego, LLC v. Houston Casualty Co.*, No. 10cv2183-L (BGS), 2011 WL 13240637, at *3 (S.D. Cal. Oct. 20, 2011) ("[D]ocuments are not shielded from discovery merely because they are confidential." (quoting *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 685 (D. Kan. 2004))).

Plaintiffs' Motion to Compel as to the production of appendices A, B, C, and E to the EY memo is **GRANTED**. Accordingly, Defendants shall produce the appendices on or before **January 4, 2019**. By the same date, Defendants shall produce supplemental written responses to RFP 22 that comply with the requirements of Federal Rule of Civil Procedure 34(b)(2)(C).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel (ECF No. 64) is **GRANTED in part and DENIED in part**. Each party shall bear their own fees and expenses incurred from bringing this motion.[3]

**IT IS SO ORDERED**.

Dated: December 11, 2018

Hon. Jill L. Burkhardt
United States Magistrate Judge

[3] Federal Rule of Civil Procedure 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." The Court finds that no party is entitled to the costs incurred from making or opposing Plaintiffs' Motion to Compel.