1

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)

2
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)

3
225 Broadway, 19ᵗʰ Floor
San Diego, California 92101

4
Tel: (619) 325-0492
Fax: (619) 325-0496

5
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

6
Email: smarkley@nicholaslaw.org

7
Attorneys for Plaintiffs

8
**UNITED STATES DISTRICT COURT**

9
**SOUTHERN DISTRICT OF CALIFORNIA**

10
SIMON GORO, an individual;
TONY RUSSELL, an individual;

11
REY PENA, an individual; JOSE
PENA, an individual; JEFF

12
BELANDER, an individual;
GUISEPPE ZIZZO, an individual,

13

14
                    Plaintiffs,

15
          vs.

16
FLOWERS FOODS, INC., a
Georgia corporation; FLOWERS

17
BAKING CO. OF CALIFORNIA,
LLC, a California limited liability

18
company; FLOWERS BAKING
CO. OF HENDERSON, LLC, a

19
Nevada limited liability company;

20
                    Defendants.

21

22

23

24

25

26

27

28

Case No. 17-cv-02580-JLS-JLB

~~FIRST~~SECOND **AMENDED COMPLAINT FOR:**

**(1)   FAILURE TO COMPENSATE FOR ALL HOURS WORKED**

**(2)   FAILURE TO PAY OVERTIME PREMIUM PAY;**

**(3)   WAITING-TIME PENALTIES;**

**(4)   FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS;**

**(5)   FAILURE TO PROVIDE MEAL PERIODS;**

**(6)   UNLAWFUL DEDUCTIONS FROM WAGES;**

**(7)   FAILURE TO INDEMNIFY FOR NECESSARY EXPENDITURES;**

**(8)   VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *ET SEQ.*; AND**

**(9)   ENFORCEMENT OF THE CALIFORNIA PRIVATE ATTORNEY GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698 *ET SEQ.*;**

**DEMAND FOR JURY TRIAL**

17-CV-02580-JLS-JLB

~~FIRST~~SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Simon Goro, Tony Russell, Rey Pena, Jose Pena, Jeff Belander, and Guiseppe Zizzo (collectively "Plaintiffs") allege, on information and belief, as follows:

## I.   INTRODUCTION

1.   Plaintiffs are current employees who worked as distributors for Defendants' Flowers Foods, Inc., Flowers Baking Co. of Henderson, LLC, and Flowers Baking Co. of California, LLC. Plaintiffs bring this action for violation of California's Labor Code, California's Industrial Wage Commission ("IWC") Wage Orders, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

2.   Plaintiffs perform delivery services for Defendants, including, but not limited to, delivery and merchandising services to Defendants' customers of baked goods manufactured or sold by Defendants. Plaintiffs are compensated on a piece rate basis. As such, their pay depends on the number and type of baked goods delivered and sold. Plaintiffs are required to pick up baked goods six days a week at Defendants' warehouse and deliver them to Defendants' customers regardless of profitability. This results in nonproductive time, during which Defendants pay nothing to Plaintiffs. This includes failing to pay for rest breaks, a compensable unit

~~FIRST~~SECOND AMENDED COMPLAINT

1  of nonproductive time under California law.

2      3.    Defendants misclassify Plaintiffs as independent contractors, rather

3  than employees. Plaintiffs regularly work seven days per week and 55-75 hours per

4  week (depending on their route). As a result of Defendants' misclassification,

5  various California Labor Laws are violated, such as sections calling for overtime

6  premium pay, meal periods, accurate wage statements, indemnification for

7  reasonable and necessary business expenses, and prohibiting unlawful wage

8  deductions.

9

10

11      4.    Defendants' employment practices are unfair to their employees and

12  competitors.  Plaintiffs bring this complaint for recovery of wages, penalties, and

13  unjust gains realized by Defendants.

14        **II.**    **JURISDICTION AND VENUE**

15      5.    Defendant Flowers Baking Co. of Henderson, LLC removed this action

16  from the Superior Court of the State of California for the County of San Diego to the

17  United States District Court for the Southern District of California, pursuant to 28

18  U.S.C. Sections 1332, 1441, and 1446. It did so on the grounds that, when the initial

19  Complaint was filed and presently, complete diversity of citizenship exists between

20  plaintiffs Simon Goro, Tony Russell, Rey Pena, Jose Pena, Jeff Belander and

21  Guiseppe Zizzo ("Plaintiffs") and all Defendants, and because the amount in

22  controversy exceeds the jurisdictional minimum.

23        **III.**    **THE PARTIES**

24      6.    Plaintiff Simon Goro is, and at all times herein mentioned was, an

25  individual residing in the County of San Diego, California.  Mr. Goro was and is

26  employed by and works for Defendants as a distributor in the State of California,

27  County of San Diego. Mr. Goro was employed by Defendants from approximately

28  October 14, 2013, through Fall 2016, and again from September 26, 2016, to present.

7.    Plaintiff Tony Russell is, and at all times herein mentioned was, an individual residing in the County of San Diego, California.  Mr. Russell is employed by and works for Defendants as a distributor in the State of California, County of San Diego. Mr. Russell has been employed by Defendants from approximately April 15, 2013, through present.

8.    Plaintiff Jose Pena is, and at all times herein mentioned was, an individual residing in the County of San Diego, California.  Mr. J. Pena is employed by and works for Defendants as a distributor in the State of California, County of San Diego. Mr. J. Pena has been employed by Defendants from approximately June 24, 2013, through present.

9.    Plaintiff Rey Pena is, and at all times herein mentioned was, an individual residing in the County of San Diego, California.  Mr. R. Pena is employed by and works for Defendants as a distributor in the State of California, County of San Diego. Mr. R. Pena has been employed by Defendants from approximately June 24, 2013, through present.

10.    Plaintiff Jeff Belander is, and at all times herein mentioned was, an individual residing in the County of San Diego, California.  Mr. Belander is employed by and works for Defendants as a distributor in the State of California, County of San Diego. Mr. Belander has been employed by Defendants from approximately March 18, 2013 through present.

11.    Plaintiff Giuseppe Zizzo is, and at all times herein mentioned was, an individual residing in the County of San Diego, California.  Mr. Zizzo is employed by and works for Defendants as a distributor in the State of California, County of San Diego. Mr. Zizzo has been employed by Defendants from approximately April 8, 2013, through present.

12.    Defendant Flowers Baking Co. of California, LLC is a limited liability company formerly organized and existing under and by virtue of the laws of the State of California. It does and/or did business in the County of San Diego. Upon

1   information and belief, Flowers Baking Co. of California is a wholly owned
2   subsidiary of Flowers Foods, Inc.

3          13.     Defendant Flowers Baking Co. of Henderson, LLC is, and at all times
4   mentioned was, a limited liability company organized and existing under and by
5   virtue of the laws of the State of Nevada, and doing business in the County of San
6   Diego. Upon information and belief, Flowers Baking Co. of Henderson is a wholly
7   owned subsidiary of Flowers Foods, Inc.

8          14.     Defendant Flowers Foods, Inc., is a Georgia corporation with its
9   principal place of business in Thomasville, Georgia. Flowers Foods is a corporation
10  whose business consists of distributing baked goods to retail customers, using a
11  centralized network of communication, distribution, and warehousing facilities.
12  Some of Flower Food's bakeries and several of its warehouses are operated by
13  Defendants Flowers Baking Co. of Henderson, LLC and Flowers Baking Co. of
14  California, LLC.

15         15.     Flowers Baking Co. of California, LLC, Flowers Baking Co. of
16  Henderson, LLC, and Flowers Foods, Inc. are part of the Flowers enterprise
17  (collectively referred to as "Defendants" and/or "Flowers"). Flowers hired Plaintiffs
18  as so-called "distributors," whom they unilaterally classified as independent
19  contractors, to deliver and stock baked goods from their San Diego warehouses to
20  their retail customers. Flowers jointly employed Plaintiffs as distributors in Southern
21  California.

22         16.     At all times mentioned, defendants were the agents, alter egos, servants,
23  joint venturers, joint employers, employees, common enterprises, predecessors,
24  subsidiaries, affiliates, parents, officers, or directors for and/or of each other.
25  Defendants acted with the consent of the other co-defendants and acted within the
26  course, purpose, and scope of their agency, service, employment, or other
27  relationship. All conduct was ratified by defendants, and each of them.

28                     **IV.   GENERAL ALLEGATIONS**

17.     Flowers ships baked goods to warehouses within its network. Distributors, such as Plaintiffs, arrive at their designated warehouse early in the morning (i.e., around 4:00 a.m.) and load their trucks with Flowers' baked goods. Plaintiffs then deliver the baked goods to Flowers' customers at the time and place specified by agreements Flowers exclusively negotiated.

18.     Flowers required each Plaintiff to sign a distribution agreement, designating them as alleged independent contractors. But the existence of a written agreement purporting to establish an independent contractor relationship is not determinative. *S.G. Borello & Sons, Inc. v Dept. of Industrial Relations*, 48 Cal. 3d 341, 349 (1989).

19.     The determining factor as to whether distributors are employees or independent contractors under the California Labor Code is not the distributors' election, subjective intent, or any contract. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *Real v. Driscoll Strawberry Associates, Ltd.*, 603 F.2d 748, 755 (9th Cir. 1979). Any contract which attempts to have workers waive, limit, or abridge their statutory rights to be treated as an employee under the California Labor Code is void, unenforceable, unconscionable, and contrary to public policy. Despite this, Flowers unfairly, unlawfully, and unconscionably attempts to coerce distributors to waive their California Labor Code rights and elect to be treated as independent contractors. Flowers threatens to penalize distributors if they assert their California Labor Code rights by threatening to terminate their routes, imposing terms for indemnification for attorney's fees, and by imposing other financial penalties, among other things.

20.     Flowers' misclassification of distributors as independent contractors is intentionally and willfully designed to deny distributors their fundamental rights as employees and enhance Flowers' profits. Flowers knows that its distributors perform the same essential job duties, yet continues to misclassify them as independent contractors. Flowers has previously been sued several times for the same

1   misclassification scheme. *See, e.g., Martinez, et al. v. Flowers Foods, Inc., et al.*,

2   No. 2:15-cv-05112-RGK-E (9th Cir., No. 16-56327, app. pending.); *Rehberg, et al.*

3   *v. Flowers Foods, Inc., et al.* (W.D. N.C., 3:12-cv-00596-MOC-DSC).

4       21.    The distribution agreements between Flowers and Plaintiffs have no

5   specific end date and can be terminated by either party at any time with limited

6   notice. This means that the relationship between Plaintiffs and Flowers is at-will,

7   just like a typical employment relationship.

8       22.    Flowers markets its baked good products to various retailers, including

9   big-box stores, local markets, regional grocery stores, and restaurant chains. Flowers

10  exclusively negotiates with the customers, setting all material terms of the

11  relationship such as prices for baked goods (including promotional pricing), service

12  and delivery agreements, shelf and display space, baked good selection (including

13  customer's store brand baked good), and print advertisements for baked goods. The

14  result of this is that Flowers controls Plaintiffs' ability to earn income and which

15  customers Plaintiffs can work with. Flowers will not permit Plaintiffs to negotiate

16  sales prices with prospective customers, discount prices set by Flowers, discontinue

17  servicing unprofitable customers, or to even wrap their own vehicles with third-

18  parties' marketing materials. Plaintiffs' ability to earn money is completely

19  dependent on Flowers.

20      23.    Plaintiffs must strictly follow Flowers' instructions and adhere to the

21  pricing, policies, and procedures negotiated between Flowers and their customers.

22  Plaintiffs are required to use Flowers' warehouses to load and return baked goods,

23  yet are charged a fee to do so. Plaintiffs are required to use Flowers' hand-held

24  computer to log deliveries and create orders. Flowers bills their customers using the

25  data entered into the computer by Plaintiffs. Flowers charges a fee to Plaintiffs for

26  use of their required hand-held computer. Flowers also maintains the ability to

27  manipulate the size of the orders, and regularly increases the orders placed by

28  Plaintiffs. This often leads to increased stale baked goods, which means a higher

1  "charge back" unless Flowers voluntarily agrees to increase the permissible stale
2  amount.

3      24.    Flowers requires Plaintiffs to place orders at least five days per week,
4  take inventory count on Fridays or Saturdays each week, remove stale or rejected
5  product, and organize Flowers's customer's shelves every day. If Flowers is running
6  a sale or promotion, Plaintiffs are required to construct and stock promotional
7  displays. Flowers unilaterally sets the percentage it is willing to buy-back before a
8  "charge back" is assessed on Plaintiffs. Flowers covers the first 15-20% of stale
9  baked goods returned.

10

11      25.    Flowers exclusively retains and exercises the following rights:
12      (a)    To negotiate the price for purchase and resale of baked goods;
13      (b)    To designate the size and area of Plaintiffs' routes;
14      (c)    To negotiate shelf space in the customers' locations within
15      Plaintiffs' routes;
16      (d)    To establish sales and promotions;
17      (e)    To require Plaintiffs to follow negotiated prices and established
18      promotions;
19      (f)    To change orders placed by Plaintiffs, to require them to pay for
20      baked goods they did not order, load the goods on their trucks,
21      deliver the goods, and return the stale baked goods to the
22      warehouse for credit;
23      (g)    Bill Plaintiffs for baked goods they did not order or attempt to
24      distribute;
25      (h)    Charge Plaintiffs for stale baked goods but require the goods be
26      returned to Flowers for resale to a discount store;
27      (i)    To add delivery stops and/or customers to Plaintiffs' routes
28      despite profitability;

(j)     To negotiate all contracts with prospective customers;

(k)     To handle customer complaints and implement disciplinary action against Plaintiffs;

(l)     To unilaterally discipline Plaintiffs, up to and including termination for taking time off work, refusing to service specific customers, refusing to incorporate, or wrapping their vehicle in an attempt to increase profits, among others;

(m)     To withhold pay for expenses;

(n)     To unilaterally vary the standards, guidelines, operating procedures, products, and customer contracts; and

(o)     Other terms Flowers published via memorandum without input from Plaintiffs.

26.     Plaintiffs' job duties do not require specialized skills. Plaintiffs are required to abide by Flowers' policies and service the routes set by Flowers. Plaintiffs are required to pick-up, deliver, and place orders for baked goods five days per week. The other two days each week, Plaintiffs are required to service Flowers' big box retail customers, pulling stale baked goods and organizing the shelves pursuant to the terms Flowers negotiated. Plaintiffs have no specialized training or qualifications, but are integral to Flowers's distribution enterprise. Plaintiffs work, on average, a total of 55-75 hours per week (depending on their route).

27.     As a result of the misclassification, Plaintiffs were denied the rights and benefits of employment, including overtime wages, payment for all time worked, rest and meal periods, accurate wage statements, indemnification for expenses, protection from unlawful wage deductions, among others.

## V.     <u>FIRST CAUSE OF ACTION</u>

**(Failure to Compensate For All Hours Worked)**

**(By Plaintiffs Against All Defendants)**

28.     Plaintiffs incorporate by reference each and every allegation contained

above.

29.    California law requires Defendants to compensate Plaintiffs for all hours worked, including nonproductive time. This is a separate obligation from paying piece rate compensation.

30.    Defendants did not separately compensate Plaintiffs for rest periods, to the extent they were taken, or other nonproductive time as required. The unpaid nonproductive time includes, but is not limited to, time spent at the warehouse organizing and loading baked goods, time spent traveling between Defendants' retail-customers' stores, time spent completing paperwork and placing orders, and

time spent on displays that do not result in sales and/or result in a "charge-back" (no net payment received).

31.    As a proximate result of Defendants' unlawful conduct, Plaintiffs sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorney's fees, and costs.

## VI.    SECOND CAUSE OF ACTION

### (Failure to Provide Overtime Premium Pay)

### (By Plaintiffs Against All Defendants)

32.    Plaintiffs incorporate by reference each and every allegation contained above.

33.    Under California law, employees are entitled to premium pay of not less than one and one-half times their regular rate for hours worked in excess of eight hours in a day, forty in a week, and on the seventh consecutive day.

34.    Plaintiffs regularly worked over eight hours in a day, forty hours in a week, and for seven consecutive days, yet Defendants failed to provide overtime premium pay for such hours.

35.    As a proximate result of Defendants' unlawful conduct, Plaintiffs sustained damages and are entitled to recover unpaid overtime wages, liquidated

1    damages, interest, applicable penalties, attorney's fees, and costs.

2                          **VII.   THIRD CAUSE OF ACTION**

3                              **(Waiting Time Penalties)**

4               **(By Plaintiff Simon Goro Against All Defendants)**

5       36.    Plaintiff Simon Goro incorporates each and every allegation contained

6    above.

7       37.    By failing to compensate Plaintiff Simon Goro for all hours worked,

8    failing to adequately compensate for meal and rest breaks, failing to pay overtime

9    premium pay, illegally deducting from wages, failing to reimburse for necessary

10

11   business expenses, and the like, Defendants have and continue to violate California

12   law which requires payment of full wages when due.

13      38.    Defendants' willful failure to make timely payment of full wages due

14   is a violation of Labor Code Sections 201, 202 and 203, entitling Plaintiff Simon

15   Goro to recover waiting time penalties.

16      39.    Plaintiff Simon Goro is entitled to recover waiting time penalties and

17   unpaid wages along with interest, applicable penalties, attorney's fees, and costs.

18                         **VIII.  FOURTH CAUSE OF ACTION**

19               **(Failure to Provide Accurate Wage Statements)**

20                  **(By Plaintiffs Against All Defendants)**

21      40.    Plaintiffs incorporate each and every allegation contained above.

22      41.    Employers must furnish employees with accurate, itemized wage

23   statements at the time of payment of wages. These statements must show detailed

24   information, including but not limited to, each hour worked, each wage rate applied,

25   hours of compensable rest and recovery periods, and total hours of nonproductive

26   time as well as the rate of compensation. This ensures employees are able to

27   determine whether or not they are being paid wages in accordance with California

28   law.

42. Defendants knowingly and intentionally violated their duty to provide accurate wage statements by failing to provide earnings statements which accurately document hours worked, wage rate applied, hours of compensable rest and recovery periods, and total hours of nonproductive time along with the rate of compensation, among other shortcomings. Because Plaintiffs were not aware of what their true wages should have been and how such wages were calculated, they suffered economic loss in the form of lower wages for their labor.

43. Plaintiffs are entitled to and seek injunctive relief requiring Defendants to comply with Labor Code section 226, and relevant subsections, among other provisions. Plaintiffs are also entitled to and seek actual and statutory damages available for such violations under Labor Code section 226, and relevant subsections, as well as interest, costs, and attorneys' fees.

## IX.   FIFTH CAUSE OF ACTION

### (Failure To Provide Meal Periods)

### (By Plaintiffs Against All Defendants)

44. Plaintiffs incorporate each and every allegation contained above.

45. Under California law, employers must provide a thirty-minute uninterrupted, off-duty meal period for each shift of qualifying duration. Where a meal period is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

46. Plaintiffs regularly worked shifts of qualifying duration. However, Defendants made no arrangements for and did not allow uninterrupted, off-duty meal periods, and did not provide compensation in lieu.

47. As a proximate result of Defendants' unlawful conduct, Plaintiffs sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorney's fees, and costs.

## X.   SIXTH CAUSE OF ACTION

### (Unlawful Deductions From Wages)

**(By Plaintiffs Against All Defendants)**

48.    Plaintiffs incorporate each and every allegation contained above.

49.    California prohibits deducting wages from employees for mistakes in their work or other non-malicious conduct. The IWC provides that the only circumstances under which an employer can make a deduction from an employee's wage are due to cash shortage, breakage, or loss of equipment if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

50.    Plaintiffs were subject to "charge-backs" for stale baked goods (despite Defendants unilaterally increasing order amounts), rejected baked goods, stolen baked goods (*i.e.*, inventory shortage), and other things. Defendants then go on to resell the stale baked goods directly to discount retailers, recuperating the costs, but do not reimburse Plaintiffs for recuperated "charge-backs." Plaintiffs were also subject to distribution rights, which Defendants required in order for Plaintiffs to work their routes. Defendants also deduct expenses associated with computer equipment, administrative support, warehouse space, open inventory, insurance, financing, temporary service fees, directly from Plaintiffs' wages.

51.    As a proximate result of Defendants' unlawful conduct, Plaintiffs sustained damages and are entitled to recover in the amount of these "charge-backs" and other fees, liquidated damages, interest, applicable penalties, attorney's fees, and costs.

## XI.    <u>SEVENTH CAUSE OF ACTION</u>

**(Failure to Indemnify for Necessary Expenditures)**

**(By Plaintiffs Against All Defendants)**

52.    Plaintiffs incorporate each and every allegation contained above.

53.    California law requires employers to indemnify employees for all necessary expenditures or losses incurred in direct consequence of the discharge of their duties.

54.     Defendants unlawfully failed to indemnify Plaintiffs for reasonable and necessary expenditures, including their vehicles, tools, cellular telephones, transportation expenses, insurance, uniform and laundry of the same, loss of product (such as stolen baked goods), among other expenses. Apart from the initial purchase or lease of the vehicle, which Defendants assist with, Plaintiffs are not required to arrange any other necessities. In fact, Defendants provide computer equipment, administrative support, warehouse space, advertisements, promotional materials, bakery trays, market and strategic development and all other business necessities. Defendants also arrange for insurance and financing on behalf of Plaintiffs. In exchange, Defendants deduct these expenses from Plaintiffs' wages.

55.     As a proximate result of Defendants' unlawful conduct, Plaintiffs sustained damages and are entitled to recover for necessary expenditures or loss incurred, interest, applicable penalties, attorneys' fees, and costs.

## XII.   EIGHTH CAUSE OF ACTION

### (Violations of the UCL)

### (By Plaintiffs Against All Defendants)

56.     Plaintiffs incorporate each and every allegation contained above.

57.     California Business & Professions Code sections 17200, *et seq.* ("UCL"), prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practice.

58.     Defendants have committed ongoing business practices within the meaning of the UCL, including, but not limited to:

    a.     Failing to pay Plaintiffs for all hours worked, including nonproductive time and rest breaks pursuant to California Labor Code sections 1194, 1194.2, 1197, among others;

    b.     Failing to provide meal periods or pay compensation in lieu to the Plaintiffs pursuant to California Labor Code section 512, 226.7 and IWC Wage Orders;

|    |    |    |
|----|----|----|
| 1  | c. | Failing to pay overtime premium pay to the Plaintiffs pursuant to |
| 2  |    | California Labor Code section 1194, among others, and the IWC |
| 3  |    | Wage Orders; |
| 4  | d. | Making illegal deductions from wages earned by the Plaintiffs |
| 5  |    | pursuant to California Labor Code sections 221, 223 and the |
| 6  |    | California IWC Wage Orders; |
| 7  | e. | Failing to reimburse Plaintiffs for reasonable and necessary |
| 8  |    | business expenses pursuant to California Labor Code section |
| 9  |    | 2802; |
| 10 |    |    |
| 11 | f. | Failing to pay Plaintiff Simon Goro wages when due pursuant to |
| 12 |    | California Labor Code section 203; and |
| 13 | g. | Failing to provide accurate wage statements to the Plaintiffs |
| 14 |    | pursuant to California Labor Code section 226. |

59. The unlawful business practices described above have proximately caused monetary damages to Plaintiffs and the general public. Plaintiffs have lost money or property as a result of Defendants' acts of unfair competition.

60. Pursuant to the UCL, Plaintiffs are entitled to restitution of money or property acquired by Defendants by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

61. Pursuant to the UCL, Plaintiffs and the general public are entitled to injunctive relief against Defendants' ongoing continuation of such unlawful business practices.

62. If Defendants are not enjoined from engaging in the unlawful business practices described above, Plaintiffs and the general public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain at this time.

63. Plaintiffs have no plain, speedy, and adequate remedy at law.

64.     Defendants, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiffs and of the general public.

65.     The success of Plaintiffs in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

66.     Private enforcement of these rights is necessary as no public agency has pursued enforcement.  There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiffs are therefore entitled to an award of attorney's fees and costs of suit pursuant to California Code of Civil Procedure Section 1021.5.

**XIII.  NINTH CAUSE OF ACTION**

**(Enforcement of the California Private Attorneys General Act)**

**(By Plaintiffs Against All Defendants)**

67.     Plaintiffs incorporate each and every allegation contained above.

68.     The California Private Attorneys General Act ("PAGA") permits aggrieved employees *(i.e., those suffering Labor Code violations),* like Plaintiffs, to recover civil penalties for violations of numerous Labor Code sections after giving notice to the employer as set out in California Labor Code section 2699.3. *See* Cal. Lab. Code, § 2699.5.

69.     ~~Defendants'~~Plaintiffs are aggrieved employees.  They gave notice pursuant to Section 2699.3 to Defendants via certified mail and to California's LWDA via online submission on November 27, 2017. *See* ECF No. 34-2 (true and correct copy of the Notice Letter) incorporated here by reference. Plaintiffs received no response to the Notice Letter from the LWDA to date. Well over the statutory 65-day period passed before Plaintiffs filed this Second Amended Complaint (and before Plaintiffs filed their First Amended Complaint first containing a PAGA cause

of action).

70. As set forth in this Second Amended Complaint and in the Notice Letter, Defendants bake and distribute products to their retail customers by using distributor employees, like Plaintiffs, throughout California. Flowers misclassifies these California distributors as "independent contractors" and, as a result, violates California's Labor Code in numerous ways (as summarized below).

71. Through this representative PAGA claim, Plaintiffs seek penalties for the following Labor Code violations on behalf of themselves and the following group of aggrieved employees:

> All persons who worked as distributors in California pursuant to a "Distributor Agreement" or similar arrangement on behalf of Flowers Food, Inc., or one of its subsidiaries such as Flowers Baking Co. of Henderson, LLC, Flowers Baking Company of California, LLC, or Flowers Baking Co. of Modesto, LLC, that were classified as "independent contractors" during the period commencing one year prior to the commencement of this action through judgment ("PAGA Representative Action Group").

72. Flowers's conduct, as alleged above and in the Notice Letter, violates numerous sections of the California Labor Code, including, but. These are the violations that Flowers commits against every PAGA Representative Action Group member each pay period (each week):

> 69.a. By paying the PAGA Representative Action Group piece rate only—*i.e.*, only for products delivered to and sold at retail locations. As a result, the PAGA Representative Action Group is not limited to, the following:paid for all hours worked. Each PAGA Representative Action Group member is responsible for a variety of tasks that do not go towards earning piece rate compensation such as fueling their vehicles, removing stale product, stocking product that does not actually sell, loading and unloading products, and the like. The failure to pay separately for

1   this time violates California Labor Code sections 1182.12, 1194,
2   1194.2, and 1197 *et seq.*, requiring pay for each hour worked;
3   a.   California Labor Code sections 1182.12, 1194, 1194.2, and
4   1197, for failure to pay for all hours worked and all wages
5   earned;
6   b.   The same piece rate pay system also violates California Labor
7   Code section 226.2 for failure to payrequiring piece rate
8   employees be paid separately for nonproductive time and rest
9   breaks;
10   c.   Flowers Foods, Inc., furthermore, has no meal and rest break
11   policy for its misclassified PAGA Representative Action Group
12   members and therefore violates California Labor Code sections
13   226.7 and 512 for failureby failing to provide adequaterequired
14   meal and rest breaks to all Group members;
15   d.   California Labor Code section 510 for failure to provide
16   overtime compensation;
17   e.   California Labor Code sections 221, 223, and 224 for making
18   illegal deductions from wages;
19
20   d.   PAGA Representative Action Group members receive no
21   overtime pay for hours worked over 8 in a day or 40 in a week
22   despite consistently working more than these threshold hours.
23   This violates California Labor Code sections 510, 1194, 1194.2,
24   and 1197 *et seq.*;
25   e.   Flowers illegally deducts money from PAGA Representative
26   Action Group members' pay for a variety of things such as
27   "warehouse" fees, handheld fees, territory payments, and
28   interest, among other things.  Flowers does this automatically

every week, for every Group member, during the electronic payroll settlement process. This violates California Labor Code sections 221, 223, and 224;

f. PAGA Representative Action Group members who no longer work for Defendants like Mr. Goro and Mr. Russell are not paid for all hours worked upon the end of their employment as required by California Labor Code sections 201, 202, 203, and 204, for failure to timely pay Plaintiffs and other aggrieved employees all earned wages;

g. PAGA Representative Action Group members never receive compliant California Labor Code section 226, for failure to provide accurate wage statements to Plaintiffs. For example, weekly statements provided by Defendants fail to record the number of hours worked, the rate of pay, and other aggrieved employeesrequired items; and

h. PAGA Representative Action Group members are not reimbursed for gas/mileage and other expenses they incur each week in violation of California Labor Code section 2802, for failure to reimburse for reasonable and necessary business expenses.

70.73.As noted above, Plaintiffs complied with all administrative requirements and pre-conditions contained within CaliforniaCalifornia's Labor Code section 2699.3.for filing a PAGA action. Plaintiffs' counsel submitted written notice to the PAGA Administrator, with a copy to Defendants, on November 27, 2017. The California Labor and Workforce Development Agency confirmed receipt of the notice on the same day and assigned it LWDA Case No. LWDA-CM-368297-17. The deadline for the PAGA Administrator to respond ran on January 26, 2018. Plaintiff'sPlaintiffs received no response.

1   71.74. Pursuant to PAGA and, in particular, California Labor Code sections
2   2699, 2699.3, and 2699.5, Plaintiffs are entitled to and hereby seek to recover civil
3   penalties against Defendants, in addition to reasonable attorney fees and costs, on
4   behalf of themselves and all other similarly-aggrieved current and former employees
5   of Defendants PAGA Representative Action Group members.

### XIV.  REQUEST FOR JURY TRIAL

7   Plaintiffs hereby request a trial by jury.

### XV.  PRAYER FOR RELIEF

9   Plaintiffs pray for judgment against Defendants, as follows:
10   1.   For compensatory damages according to proof;
11   2.   For enhanced damages, liquidated damages, and penalties as
12        permitted under California law, including PAGA;
13   3.   For waiting-time penalties pursuant to Labor Code section 203;
14   4.   For disgorgement of all monies which Defendants have illegally
15        gained;
16   5.   For restitution according to proof at trial;
17   6.   For an order enjoining Defendants from any further acts and practices
18        which violate the UCL;
19   7.   For pre-judgment interest;
20   8.   For costs of suit;
21   9.   For reasonable attorneys' fees; and
22   10.  For such other and further relief as this Court may deem just and
23        proper.

25   Respectfully submitted:
26   DATED:  January 15, 2019          **NICHOLAS & TOMASEVIC, LLP**

28                          By:   /s/ Shaun Markley
                                  Craig M. Nicholas

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alex Tomasevic
Shaun Markley
225 Broadway, Floor 19
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiffs

21                     17-CV-02580-JLS-JLB
~~FIRST~~SECOND AMENDED COMPLAINT