Frank L. Tobin CA Bar No. 166344
frank.tobin@ogletree.com
Clint S. Engleson CA Bar No. 282153
clint.engleson@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA  92122
Telephone:   858.652.3100
Facsimile:    858.652.3101

Kevin Hishta (*Pro Hac Vice*)
kevin.hishta@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, GA  30303
Telephone:   404.881.1300
Facsimile:    404.870.1732

Attorneys for Defendants FLOWERS FOODS, INC.,
FLOWERS BAKING CO. OF CALIFORNIA, LLC, and
FLOWERS BAKING CO. OF HENDERSON, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, an individual; TONY RUSSELL, an individual; REY PENA, an individual; JOSE PENA, an individual; JEFF BELANDER, an individual; GUISEPPE ZIZZO, an individual,<br><br>                Plaintiffs,<br><br>        v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKING CO. OF CALIFORNIA, LLC, a California limited liability company; FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 100, inclusive,<br><br>                Defendants. | Case No. 17-CV-02580-JLS-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**FILED CONDITIONALLY UNDER SEAL**<br><br>Date:            May 9, 2019<br>Time:            1:30 p.m.<br>Courtroom:   4D<br><br>Complaint Filed:   December 13, 2017<br>Trial Date:           Not Set |

37712609_1

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................... 1

II.     STATEMENT OF FACTS .......................................................... 2

    A.     The Direct Store Delivery System ................................. 2

    B.     Plaintiffs Order Out-of-State Products for Delivery to
        California Customers ...................................................... 4

    C.     The Distributor Model ................................................... 3

    D.     Distributors Are Independent Contractors Pursuant to the
        Distributor Agreement and Defendants' Reasonable
        Expectations .................................................................. 6

    E.     Distributors Operate their Territories Differently ........... 7

III.    LEGAL STANDARD ................................................................ 9

IV.     SUMMARY JUDGMENT SHOULD BE GRANTED ........................ 10

    A.     Summary Judgment Should Be Granted as to Plaintiffs'
        Overtime Claims............................................................ 10

        1.     California Law Recognizes that Drivers Engaged in
            Interstate Commerce Are Exempt from Overtime
            Requirements....................................................... 10

        2.     Flowers/California and Flowers/Henderson Qualify
            as a Motor Private Carrier ................................... 11

        3.     Plaintiffs Regularly Distribute Goods in the Stream
            of Interstate Commerce ....................................... 11

            (a)    Plaintiffs Distribute Products that Were in a
                Practical Continuity of Movement Across
                State Lines................................................. 12

            (b)    Other Cases Involving Food
                Distributors/Drivers Demonstrate the
                Practical Continuity of Movement .......... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

37712609_1

(c)    Plaintiffs' Use of Personal Vehicles for Tasks that Do Not Involve Interstate Commerce Is Immaterial ............................................................ 14

B.    Summary Judgment Should Be Granted as to Plaintiffs' Meal and Rest Break Claims ........................................................ 16

1.    The FMCSA Preemption Ruling ....................................... 16

2.    Plaintiffs' Meal and Rest Break Claims Are Preempted ............................................................... 17

C.    Plaintiffs Cannot Recover Purported Expenses Associated with Vehicle Purchases or Leases ................................................ 17

D.    Plaintiffs' Claims that Require a Willful Violation Fail as a Matter of Law. ........................................................................ 18

E.    Plaintiffs' Representative PAGA Claims Fail as a Matter of Law ......................................................................................... 20

1.    Plaintiffs cannot assert representative PAGA claims because they have not complied with the procedural requirements of Rule 23. .................................................... 20

2.    Unless they Certify a Class Under Rule 23, Plaintiffs Lack Standing to Bring their Representative PAGA Claims .......................................... 232

3.    Even if Rule 23 Did Not Apply, Plaintiffs' Representative PAGA Claims Still Cannot Proceed Because they Are Unmanageable. ..................................... 24

4.    Plaintiffs' PAGA Notice Letter Failed to Identify Labor Code § 204, Requiring Dismissal ............................ 28

F.    The FAAAA Preempts Application of *Dynamex*'s "ABC" Test ............................................................................................ 28

V.    CONCLUSION ........................................................................... 30

37712609_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Luxottica U.S. Holdings Corp.*,
No. 07-cv-1465-AHS, 2009 WL 7401970 (C.D. Cal. July 24, 2009) .................24

*Allen v. Coil Tubing Servs., L.L.C.*,
846 F. Supp. 2d 678 (E.D. Tex. 2012) ..................................................15

*Alvarez v. XPO Logistics Cartage LLC*,
No. CV 18-03736 SJO (E), 2018 WL 6271965 (C.D. Cal. Nov. 15, 2018) .........30

*American Trucking Associations, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ..........................................................29, 30

*Amiri v. Cox Commc'ns Cal., LLC*,
272 F. Supp. 3d 1187 (C.D. Cal. 2017) ....................................................27

*Arias v. Sup. Ct.*,
46 Cal.4th 969 (2009) .......................................................................23

*Barker v. U.S. Bancorp*,
No. 3:15-cv-1641-CAB-WVG, 2018 WL 340232 (S.D. Cal. Jan. 9, 2018) .........24

*Borello & Sons, Inc. v. Department of Industrial Relations*,
48 Cal.3d 341 (Cal. 1989) ..............................................................25, 29

*Bowers v. First Student, Inc.*,
No. 2:14-cv-8866-ODW (Ex), 2015 WL 1862914 (C.D. Cal. Apr.
23, 2015) ..................................................................................22, 24

*California Trucking Association v. Su*,
903 F.3d 953 (9th Cir. 2018) ...............................................................29

*Canela v. Costco Wholesale Corp.*,
No. 13-cv-03598-BLF, 2018 WL 3008532 (N.D. Cal. June 15, 2018) .........22, 24

*Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 175 v. N.L.R.B.*,
946 F.2d 1563 (D.C. Cir. 1991). (*Id.* at ¶ 7.) .......................................5, 6

37712609_1

*Dalton v. Lee Publ'ns, Inc.*,
No. 08cv1072 BTM (NLS), 2011 WL 1045107 (S.D. Cal. Mar. 22, 2011) ... 18, 19

*DLSE Interpretive Bulletin* No. 84-7 (Jan. 8, 1985) ................................................. 17

*Dynamex Operations West, Inc. v. Superior Court of Los Angeles County*,
4 Cal.5th 903 (Cal. 2018) ............................................................. 25, 26, 28-30

*Estrada v. FedEx Ground Package System, Inc.*,
154 Cal. App. 4th 1 (2007) ........................................................................... 18

*Field v. Am. Mortgage Exp. Corp.*,
No. C-09-5972 EMC, 2011 WL 3354344 (N.D. Cal. Aug. 2, 2011) ..................... 9

*Fields v. QSP, Inc.*,
No. 12-cv-1238-CAS, 2012 WL 2049528 (C.D. Cal. June 4, 2012) ........ 20, 21, 22

*Foxworthy v. Hiland Dairy Co.*,
997 F.2d 670 (10th Cir. 1993) ................................................................. 12, 13

*Garcia v. W. Waste Servs., Inc.*,
969 F. Supp. 2d 1252 (D. Idaho 2013) ............................................................. 15

*Halliwell v. A-T Sols.*,
983 F. Supp. 2d 1179 (S.D. Cal. 2013) ..................................................... 20, 22

*Halliwell v. A-T Sols.*,
No. 13-cv-2014-H KSC, 2014 WL 4472724 (S.D. Cal. Sept. 10, 2014) ............. 22

*Hurst v. Buczek Enters., Inc.*,
870 F. Supp 2d 810 (N.D. Cal. 2012) ............................................................. 19

*Ivey v. Apogen Techs., Inc.*,
No. 11-cv-366-DM-NLS, 2011 WL 3515936 (S.D. Cal. Aug. 10, 2011) ........... 22

*Litty v. Merrill Lynch & Co.*,
No. 14-cv-0425-PA (PJWx), 2014 WL 5904904 (C.D. Cal. Nov. 10, 2014) ....... 24

*LVRC Holdings, LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ......................................................................... 9

*Marlo v. United Parcel Serv., Inc.*,
No. CV 03-04336 DDP, 2009 WL 10669255 (C.D. Cal. Mar. 19, 2009) ........... 10

37712609_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*Martinez v. Flower Foods, Inc.*,
   No. 15-cv-5112 RGK (Ex), 2016 WL 10746664 (C.D. Cal. Feb. 1, 2016) .......... 27

*Massachusetts Delivery Association v. Healey*,
   821 F.3d 187 (1st Cir. 2018) ................................................................. 30

*McGuiggan v. CPC Int'l, Inc.*,
   84 F. Supp. 2d 470 (S.D.N.Y. 2000) .............................................. 13, 14

*Medlock v. Taco Bell Corp.*,
   No. 1:07-cv-01314-SAB, 2014 WL 4319510 (E.D. Cal. Aug. 29, 2014) ....... 21, 22

*Merchants Home Delivery Serv., Inc. v. N.L.R.B.*,
   580 F.2d 966 (9th Cir. 1978) ................................................................. 19

*Morris v. McComb*,
   332 U.S. 422 (1947) ............................................................................. 12

*N.L.R.B. v. A. Duie Pyle, Inc.*,
   606 F.2d 379 (3d Cir. 1979) .................................................................. 19

*Ortiz v. CVS Caremark Corp.*,
   No. 12-cv-05859-EDL, 2014 WL 1117614 (N.D. Cal. Mar. 19, 2014) .............. 27

*Raphael v. Tesoro Ref. & Mktg. Co. LLC*,
   No. 2:15-cv-02862-ODW, 2015 WL 5680310 (C.D. Cal. Sept. 25, 2015) .... 24, 27

*Rix v. Lockheed Martin Corp.*,
   No. 09-cv-2063-CAB NLS, 2013 WL 9988381 (S.D. Cal. Feb. 15, 2013) .......... 28

*Ruiz v. Affinity Logistics Corp.*,
   No. 05-cv-2125, 2006 WL 3712942 (S.D. Cal. Nov. 9, 2006) ............................ 14

*S. Pac. Transp. Co. v. I.C.C.*,
   565 F.2d 615 (9th Cir. 1977) ................................................................. 12

*Salazar v. McDonald's Corp.*,
   No. 14-cv-02096-RS, 2017 WL 88999 (N.D. Cal. Jan. 5, 2017) ................... 24, 27

*Schilling v. Schmidt Baking Co., Inc.*,
   876 F.3d 596 (4th Cir. 2017) ................................................................. 15

*Schwann v. FedEx Ground Package System*,
   813 F.3d 429 (1st Cir. 2016) .......................................................... 29, 30

37712609_1

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ............................................................. 21, 22

*Shann v. Durham Sch. Servs., L.P.*,
   182 F. Supp. 3d 1044 (C.D. Cal. 2016) ............................... 28

*Shew v Southland Corp.*,
   370 F.2d 376 (5th Cir. 1996) ......................................... 13, 14

*Soares v. Flowers Foods, Inc.*,
   320 F.R.D. 464 (N.D. Cal. 2017) .......................................... 27

*Taylor v. W. Marine Prod., Inc.*,
   No. 13-cv-04916-WHA, 2014 WL 1248162 (N.D. Cal. Mar. 26, 2014) ............. 23

*United States v. Silk*,
   331 U.S. 704 (1947) ............................................................ 19

*Villalpando v. Exel Direct Inc.*,
   No. 12-cv-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) ........... 19, 20

*Walling v. Jacksonville Paper Co.*,
   317 U.S. 564 (1943) ...................................................... 11, 12

*Watkins v. Ameripride Servs.*,
   375 F.3d 821 (9th Cir. 2004) ............................................... 10

*Webb v. Athens Newspapers, Inc.*,
   999 F. Supp. 1464 (M.D. Ga. 1998) ....................................... 12

**Statutes**

29 U.S.C. § 213(b)(1) ......................................................... 10

49 U.S.C. 31141(c) ............................................................ 16

49 U.S.C. § 13102(14) ........................................................ 11

49 U.S.C. § 14501(c)(1) ...................................................... 28

49 U.S.C. § 31141(a) ......................................................... 16

49 U.S.C. § 31141(c)(4) ...................................................... 16

49 U.S.C. § 31502 and (2) .................................................... 10

37712609_1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Code Regs. tit. 8, § 11040(3)(K) .................................................................. 10

Cal. Code Regs. tit. 8, § 13520 ............................................................................ 19

California Labor Code § 203 .......................................................................... 1, 18, 19

California Labor Code § 204 ................................................................................. 28

California Labor Code § 226 .......................................................................... *passim*

California Labor Code § 226.8 .............................................................................. 28

California Labor Code § 256 ................................................................................. 28

California Labor Code § 2699(a) ........................................................................... 22

California Labor Code § 2699.3(a)(1)(a) ............................................................... 28

California Labor Code § 2802 .............................................................................. 17

Pub. L. 110-224, 122 Stat. 1572 ........................................................................ 14

**Other Authorities**

29 Code Fed. Reg § 782.7(b)(1) .......................................................................... 11

83 FR 67470-01 ................................................................................................ 16

332 U.S. 422, 431-36 (1947) .............................................................................. 12

California's "ABC" ............................................................................................... 1

Code Fed. Reg. § 390.5. ...................................................................................... 17

Code Fed. Reg. §§ 395.1(a)(1), 395.3(a) .............................................................. 16

Dep't of Labor Opinion Letter, 1999 WL 1002364 (Feb. 10, 1999) ...................... 14

Dep't of Labor Opinion Letter FLSA 2005-2NA, 2005 WL 5419038 (Apr. 27, 2005) .......................................................................................................... 14

Federal Rules of Civil Procedure, Rule 23 ...................................................... *passim*

Federal Rules of Civil Procedures, Rule 56(a) ....................................................... 9

IWC Wage Order No. 4-2001, § 3(K) (Jan. 1, 2005) ............................................ 10

37712609_1

Case No. 17-CV-02580-JLS-JLB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.      **INTRODUCTION**

At trial, Defendants will prove that Plaintiffs Simon Goro, Tony Russell, Rey Pena, Jose Pena, Jeff Belander, and Guiseppe Zizzo ("Plaintiffs") were properly classified as independent contractors, a finding that dooms all of their claims. Through this motion for partial summary judgment, however, Defendants only seek the dismissal of certain claims and a determination of applicable law.

Plaintiffs pursue claims for allegedly unpaid overtime and meal and rest break violations under California law. Even if Plaintiffs could prove they were misclassified as independent contractors (they cannot), Plaintiffs are not eligible for overtime because their hours of service were regulated by the Department of Transportation, a finding that bars state overtime claims. Similarly, Plaintiffs' meal and rest break claims are preempted by the Federal Motor Carrier Safety Administration's Hours of Service Regulations.

Plaintiffs also seek reimbursement for purported expenses related to purchasing or leasing the vehicles they used for their businesses. Again, even if Plaintiffs could prove they were misclassified, they cannot recover these amounts because employees cannot recover for such expenditures as a matter of law.

Plaintiffs pursue penalty claims and liquidated damages that require a showing that Defendants willfully violated the law. While Defendants are not moving for summary judgment as to Plaintiffs' misclassification claim, there is ample evidence that Defendants had a legitimate basis for classifying Plaintiffs as independent contractors. Because a good-faith dispute exists as to whether Plaintiffs were misclassified, Plaintiffs cannot recover penalties under Labor Code §§ 203, 226. Further, Plaintiffs' Private Attorneys General Act of 2004 claims fail as a matter of law because Plaintiffs have not satisfied Rule 23's procedural requirements, lack standing to assert claims on behalf of alleged "aggrieved employees," and because their claims are unmanageable. Finally, the Federal Aviation Administration Authorization Act of 1994 preempts application of California's "ABC" test.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## II.    **STATEMENT OF FACTS**

Plaintiff Simon Goro was previously an independent contractor franchisee with defendant Flowers Baking Co. of California ("Flowers/California") and then defendant Flowers Baking Co. of Henderson ("Flowers/Henderson"). The remaining Plaintiffs are currently independent contractor franchisees with defendant Flowers/Henderson and previously with Flowers/California.

### A.    **The Direct Store Delivery System**

Defendant Flowers Foods, Inc. ("Flowers"), is the parent holding company of numerous operating subsidiaries like Flowers/California and Flowers/Henderson, each of which is its own separate legal entity.[1] (Declaration of Chuck Rich ("Rich Decl."), ¶ 2.) Flowers, which is headquartered in Thomasville, Georgia, provides overall strategic direction to, and oversees the financial performance of, its subsidiaries. (*Id.*) The subsidiaries, however, manage their own respective operations and are their own separate profit and loss centers. (*Id.*)

Flowers/California operated in California from 2013 until early 2014. In early 2014, Flowers/California ceased operations and a new entity – Flowers/Henderson – was created to operate in Southern California. Entities, like Flowers/California and Flowers/Henderson, operate under a "direct store delivery" ("DSD") system. (Rich Decl., ¶ 15.) Under a DSD system, independent business owners like Plaintiffs (known as "Distributors") purchase fresh products from the subsidiaries and deliver those products directly to customers immediately after production, as opposed to going through a customer's warehouse or broker. (*Id.*) The fresh products available to Distributors to purchase and sell include baked breads, buns, rolls, and snack cakes. (*Id.*) A critical component of this distribution network is a sophisticated system of reciprocal baking whereby each subsidiary has an assigned production

---

[1] Flowers/California, Flowers/Henderson and Flowers Foods, Inc. are referred to collectively herein as "Defendants."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

mission to produce items for its own market and other subsidiaries' markets. (*Id.*)

Through this system, Plaintiffs ordered and sold products that are produced by out-of-state bakeries to their customers. (*Id.* at ¶ 16.) Most of the products are manufactured outside the State of California and are transported across state lines and delivered directly by interstate truckers to the depots operated by Flowers/Henderson. (*Id.* at ¶ 18.) Accordingly, Flowers/California was, and Flowers/Henderson is, a registered motor carrier with the U.S. Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"). (*Id.*) The FMCSA, after conducting a safety audit of Flowers/Henderson, confirmed it could "continue to operate in interstate commerce within the United States." (*Id.*)

## B. The Distributor Model

Flowers/California and now Flowers/Henderson implemented the independent contractor franchise model because the program had been successful in building sales at other subsidiaries. (Rich Decl., ¶ 5.) Management at these subsidiaries believe that individuals and businesses who own distribution rights have more financial incentive to develop business and generate additional sales based on their own entrepreneurial efforts and individualized sales strategies. (*Id.*) This distributor model is not novel or unique to Flowers and its subsidiaries, but has a long history and is common throughout the food-distribution industry. (*Id.*)

Throughout the years, there have been various legal challenges to the distributorship model at Flowers' subsidiaries. (*Id.* at ¶ 6.) In 1988, the Teamsters union filed an unfair labor practice charge at West Virginia Baking Company. (*Id.*) This legal challenge resulted in a decision favorable to West Virginia Baking Company by the National Labor Relations Board upholding the distributor model as one of independent contractor, and citing similar decisions in the baking industry. (*Id.* at ¶¶ 6, 8, Exs. A-C.)[2] The D.C. Circuit affirmed. *Chauffeurs, Teamsters,*

---

[2] Regional Directors of the National Labor Relations Board have also concluded that distributors of certain Flowers subsidiaries were independent contractors. (Rich

*Warehousemen and Helpers, Local Union No. 175 v. N.L.R.B.*, 946 F.2d 1563 (D.C. Cir. 1991). (*Id.* at ¶ 7.) Regional Directors of the National Labor Relations Board have reached the same conclusion regarding other baking companies' use of independent contractors in the last several years. (*Id*. at ¶ 11, Exs. G-H.) Another Flowers subsidiary also received an Administrative Hearing Decision confirming that Distributors were properly classified. (*Id.* at ¶ 10, Ex. F.) The Internal Revenue Service ("IRS") has also historically treated the distributorship business model as one involving independent contractors. (*Id*. at ¶ 12.) Flowers Foods, Inc. and its subsidiaries have taken numerous steps to maintain the integrity of the independent distributor model. (*Id.* at ¶ 13.)

## C. <u>Plaintiffs Order Out-of-State Products for Delivery to California Customers</u>

Flowers/California and Flowers/Henderson contracted with Plaintiffs, who purchased distribution rights to market and sell bakery products in a defined geographic territory. (Rich Decl., ¶ 22, Ex. I.) Plaintiffs' customers include chain grocery stores, independent grocery stores, restaurants, and cash customers. Some example of customers are Safeway, Whole Foods, Smart & Final, Wal-Mart, Wendy's, and Denny's. (Tobin Decl. ¶¶ 2-7, Exs. A at 135:2-16 and 136:10-20, B at 96:2-5 and 98:1-8, C at 105:4-11, 105:24-106:2, 106:3-4, and 106:25-107:2, D at 86:7-15 and 85:2-3, E, at 91:1-15 and 92:10-12, and F at 82:22-83:7 and 88:17-19.)

As independent Distributors, Plaintiffs determine the necessary number of products for each of their customers on a regular basis. (Rich Decl., ¶ 17.) Plaintiffs place orders for products using a handheld computer, at which point the orders are transmitted to the producing bakeries, many of which are located out of state. (*Id.*) Those bakeries then produce the products in response to the specific orders that are placed using the handheld computers, *i.e.*, the out-of-state bakeries produce and

Decl., ¶ 9, Exs. D-F.)

37712609_1

transport the number of products needed to fulfill the specific orders placed by Plaintiffs and other Distributors. (*Id.*) The out-of-state bakeries are aware that the products they produce in response to such orders are for end customers, and not simply a warehouse, given the structure of the DSD system, the perishable nature of the goods, and the specific quantity ordered by each Distributor. (*Id.*)

These out-of-state products are transported across state lines and delivered directly to Flowers/Henderson's depots by truck. (*Id.* at ¶ 18.) After arriving at the distribution depots, the trucks are quickly unloaded and the fresh baked products are set aside for the Distributors who placed an order. (*Id.* at ¶ 19.) Because the products have a very limited shelf life, and because customers expect fresh bread, these products are not held in any sort of inventory except in exceptional circumstances. (*Id.*) These out-of-state goods are not altered or processed during the temporary pause at the distribution depots. (*Id.*) As such, these products are in nearly continuous movement from the point of origin to the point of destination. (*Id.*)

Plaintiffs (or someone working on their behalf) typically deliver such products five days a week – Monday, Tuesday, Thursday, Friday, and Saturday. (Tobin Decl. ¶¶ 6, 7, and 11, Exs. A at 217:21-25, B at 191:13-20, C at 200:12-205:21, D at 153:6-22 and 154:13-17, E at 239:16-240:5, and F at 130:1-5) On delivery days, Plaintiffs start by going to the distribution depot to pick up the products for delivery to their customers, typically within six-to-twelve hours of when the products were delivered to the distribution depots. (Rich Decl. ¶ 19; Tobin Decl. ¶¶ 6, 7, 8, 9, and 11, Exs. A at 262:18-264:3 and 273:13-23, B at 238:9-239:10, C at 201:1-6, D at 237:7-9, E at 160:15-20, and F at 188:11-189:6, 189:17-191:8) Plaintiffs admit they typically use vehicles with a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds to deliver products. (Tobin Decl., ¶¶ 6 - 23, Exs. A at 172:13-16, B at 140:1-2, C at 122:14-20, D at 108:13-14, E at 110:12-15, F at 101:20-102:3, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, and V.)

To the extent Plaintiffs claim to have operated their personal vehicles, it was

37712609_1

in connection with a "pull-up" on a non-delivery day, which entails arranging product that is already on the shelf, or pulling existing product from the back room onto the shelves, but not delivering product. (Tobin Decl., ¶¶ 6, 8, 9, 10, and 11, Exs. A at 172:17-23, B at 140:10-20 and 144:10-15, C at 122:21-24, D at 108:24-109:4, E at 110:20-24, and F at 103:14-17)

Between 2013 and the present, the majority of products that were delivered to territories owned by Plaintiffs were baked in factories outside the State of California and transported across state lines to depots in San Diego County. (Rich Decl., ¶ 21.)

**D.    Distributors Are Independent Contractors Pursuant to the Distributor Agreement and Defendants' Reasonable Expectations**

Another step taken to ensure the integrity of the independent distributor model was the implementation of a Distributor Agreement ("DA") between Distributors and Flowers/California and then Flowers/Henderson. The DA, which Plaintiffs initially entered into on their own behalf and later through their corporations, establishes the "DISTRIBUTOR is an independent contractor" and that "DISTRIBUTOR shall not be controlled by COMPANY as to the specific details or manner of DISTRIBUTOR's business." (Rich Decl., ¶ 22, Ex. I (DA), ¶ 4; ¶ 16.1.)[3]

The DA *does not require Plaintiffs to personally perform the services*, and permits them to hire helpers, advertise, own outside businesses, perform work elsewhere, and buy and sell their distribution rights to others, all hallmarks of an independent contractor relationship. DA ¶¶ 13.1, 15.1, 16.2, 19.2. The DA does not require distributors to wear a uniform or put logos on their vehicles, and it permits Plaintiffs to sell Defendants' products *and* outside merchandise. *Id.* at ¶¶ 5.1, 19.2.

Other than expressly *prohibiting* Defendants from controlling Plaintiffs' businesses, the DA is silent regarding the "specific details or manner" of how they may distribute products in their territories. While the DA contains the general

---

[3] In 2016, Flowers/Henderson began using new Distributor Agreements that contain an arbitration agreement and class action waiver. Schoenewald Decl. ¶ 19. 19 distributors have signed these agreements. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

expectation that Plaintiffs will follow "Good Industry Practice," that phrase is defined broadly as "the standards that have developed and are generally accepted and followed in the baking industry," and includes several broad, non-exhaustive examples, including "maintaining proper service and delivery . . . in accordance with [the customer's] requirements." DA ¶ 2.6. Defendants expected Plaintiffs to operate their distributorships in a manner that was consistent with the DA and an independent-contractor relationship. (Rich Decl., ¶ 23.)

### E.   Distributors Operate their Territories Differently

Under the autonomy afforded by the DAs, Distributors are free to—and do—operate their territories in a wide variety of ways. As set forth below, without detailed individualized inquiries, it is impossible to determine *who* is even operating a given territory on a given day, much less how it is being operated.

Since December 2016, approximately 260 Distributors have contracted with Flowers/Henderson, 33 of whom own distribution rights to *multiple territories*. Schoenewald Decl. ¶¶ 18, 20. These Distributors take delivery of products from one or more of the 20 warehouses operated by Flowers/Henderson in California. *Id*. at ¶ 10. Each warehouse generally has a different area sales director ("Manager") who oversees the warehouse's operations. *Id*. at ¶ 9. Since 2014, there have been 23 different Managers for Flowers/Henderson. *Id*.

As noted above, the DAs allow distributors to hire helpers to run their territories *without Flowers/Henderson's knowledge or consent*. DA ¶ 16.2. Many distributors exercise this right to hire helpers and do so in varying ways. *See* SE 3-6. For example, 8 Flowers/Henderson distributors are entirely "absentee," meaning they perform *no work whatsoever* in their territories. Schoenewald Decl. ¶ 21; *see also* CE 6, Campbell Decl. ¶ 15 ("I currently have agents running both of my territories."); SE 3. Other distributors (including ███████████████) hire helpers to help them run their territories in varying ways and frequencies. *See* ████  ████████

██████████████████████); *see also* SE 4. Thus, Flowers has *no way of knowing who is servicing what territory or when*. *See* ██████ ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████); SE 5.

Distributors' declarations also establish that they engage in a wide variety of entrepreneurial activities, at their discretion, to grow the value of their businesses although this, too, varies by distributor and account. *See* CE 5, Aldrich Decl. ¶ 10 ("Owning a distributorship involves being good at sales—it is all about the hustle and positioning your product and getting incremental sales from a displays… For example, I will try to get a bagel display set up by cream cheese when bagels are on sale."); *see also* SE 13-16.

Various distributors also actively solicit and add new customers within their territories to increase their sales and profits. *See* SE 14. Others do not. *See* CE 4, Aguirre Decl. ¶ 9 ("Although I am free to get additional cash accounts to further expand my business, I have decided to focus my time and attention on working with my current accounts to help expand their orders."); SE 13.

While some distributors report that customers set their schedules, others report they set their own schedules. (SE 7.[4]) And, some Distributors comply with their customers' service requirements, while others may not. (SE 8, 9.) ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

Further, some distributors determine what products to order for their

---

[4] To the extent Plaintiffs contend Distributors are constrained by customer's service windows, this also necessarily varies given different customer mixes. (SE 12.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

customers without input from sales management, while others say sales management makes changes to their orders or recommends that they order certain products. *See* SE 10. And, even when Flowers/Henderson makes suggestions on products, distributors do not always follow them. *See* SE 10, 19. Similarly, some distributors claim that they receive a lot of suggestions from the Managers, which they may or may not follow. Some claim they rarely, if ever, follow such suggestions. *See* SE 19. Distributors' level of interaction with Managers also varies. *See* SE 20. Different Managers also have different levels of interaction with the same Distributors. *Id.*

Distributors' earnings vary depending on their sales, with some making up to $180,000 a year in gross profits. (Compendium of Evidence ("CE") 2, Rodriguez Decl. ¶ 45.) The composition of customers varies by Distributor; different customers have different requirements and needs. (Summary of Evidence ("SE") 8, 13.)

Distributors also use different types of vehicles, some use logos and advertise on them, and some use multiple vehicles. *See* SE 17. The clothing worn by distributors also varies. *See* SE 18.

## III.   **LEGAL STANDARD**

Summary judgment should be granted in whole or in part where "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure to make a showing sufficient to establish the existence of an element essential to the plaintiff's case." *Field v. Am. Mortgage Exp. Corp.*, No. C-09-5972 EMC, 2011 WL 3354344, at *3 (N.D. Cal. Aug. 2, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotations omitted). To avoid summary judgment, the non-moving party must produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009).

37712609_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## IV. SUMMARY JUDGMENT SHOULD BE GRANTED

### A. Summary Judgment Should Be Granted as to Plaintiffs' Overtime Claims

All of Plaintiffs' claims fail because Plaintiffs were independent contractors and not employees. But even if Plaintiffs could show they were misclassified, their overtime claims fail as a matter of law because they were overtime exempt.

#### 1. California Law Recognizes that Drivers Engaged in Interstate Commerce Are Exempt from Overtime Requirements.

Plaintiffs are pursuing their overtime claims under California law. Following federal law, California recognizes that drivers who are engaged in interstate commerce are not entitled to overtime. The FLSA specifically exempts from overtime any persons "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" under the Motor Carrier Act of 1935, 49 U.S.C. § 31502 (referred to herein as the "MCA" or "motor carrier exemption"). 29 U.S.C. § 213(b)(1).

Drivers who are exempt from federal overtime requirements under the MCA are also exempt from California's overtime requirements. *See* IWC Wage Order No. 4-2001, § 3(K) (Jan. 1, 2005) (Wage Order"); Cal. Code Regs. tit. 8, § 11040(3)(K). California exempts drivers "whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers . . . ." *Id.* Consequently, "the issue before us is whether [the plaintiff] was engaged in transporting property in interstate commerce so as to be subject to the federal regulations referenced in the IWC order. If so, [a plaintiff] is not entitled to overtime pay in California." *Watkins v. Ameripride Servs.*, 375 F.3d 821, 825 (9th Cir. 2004).

"To establish that the [DOT] has jurisdiction over an employee and the overtime provisions therefore do not apply to that employee, an employer must show that (1) the employer is a motor carrier pursuant to 49 U.S.C. § 31502 and (2) the

employee was engaged in safety-affecting activities in interstate commerce." *Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP (RZx), 2009 WL 10669255, at *4 (C.D. Cal. Mar. 19, 2009).

### 2.  Flowers/California and Flowers/Henderson Qualify as a Motor Private Carrier

Under the MCA, the Secretary has authority over drivers who are employed by either a "motor carrier" or "motor private carrier." A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "motor private carrier" is defined as:

> [A] person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in 13501 . . . [interstate commerce]; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise. 49 U.S.C. §13102(15).

Here, Flowers/Henderson (and, previously, Flowers/California) is a registered DOT motor carrier. (Rich Decl., ¶ 18.) Flowers/Henderson regularly transports baked goods across state lines in the stream of interstate commerce. (*Id.*) Flowers is the owner or bailee of the property being transported, depending upon the circumstances and such distribution is conducted to further Flowers/Henderson's business. (Declaration of Tyler Schoenewald, ¶¶ 2-7.) As such, this element of the motor carrier exemption is satisfied.

### 3.  Plaintiffs Regularly Distribute Goods in the Stream of Interstate Commerce

Interstate commerce, for purposes of the MCA, occurs not only when the driver actually transports goods across state lines, but also when there is a "practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders or contracts are being filled." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 567, 569 (1943); *see also* 29 C.F.R. § 782.7(b)(1) (interstate commerce element satisfied where the "vehicles

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce."). Thus, out-of-state goods shipped to a warehouse, where they are transferred to a local driver for delivery to the end customer for whom the goods were originally intended, are in a "practical continuity of movement" if the pause at the warehouse is merely an "efficient opportunity to convert the means of delivery from one form of transportation to the other." *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 673 (10th Cir. 1993). Whether the transportation is interstate or intrastate depends on the "essential character of the shipment," which is dependent on the shipper's "fixed and persisting intent." *S. Pac. Transp. Co. v. I.C.C.*, 565 F.2d 615, 617 (9th Cir. 1977).

> (a)    *Plaintiffs Distribute Products that Were in a Practical Continuity of Movement Across State Lines*

As set forth in the above Statement of Facts, the uncontroverted evidence establishes Plaintiffs distribute products that are in a practical continuity of movement from out-of-state manufacturers to in-state recipients through the DSD model. (Rich Decl., ¶¶ 16-19.)[5, 6]

The perishable nature of the goods Plaintiffs deliver, and their limited shelf life, confirm the goods remain in interstate commerce until reaching the end customer. This non-fungible nature of these goods make it clear the producing

---

[5] As the Supreme Court observed in *Walling*, 317 U.S. at 568: "The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act . . . . [I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points . . . . Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce."

[6] The fact that Plaintiffs may also distribute products that are produced in California does not change the result. For example, in *Morris v. McComb*, the Supreme Court held that drivers who only spent 4% of their trips involved in interstate commerce were still exempt from the FLSA's overtime requirements. 332 U.S. 422, 431-36 (1947). Here, many of the products distributed in Plaintiffs territories were produced out of state. (Rich Decl., ¶ 17.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

bakeries *do not* intend for the goods to remain in inventory, but continue in interstate commerce and reach the end customers as soon as possible. *See, e.g.*, *Webb v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1471-1472 (M.D. Ga. 1998) (the "strongest evidence" that the out-of-state newspaper supplements were intended to (and did) remain in interstate commerce until delivery to the end customers was that they were non-fungible in nature and lost their value if not delivered immediately).

(b)   Other Cases Involving Food Distributors/Drivers
Demonstrate the Practical Continuity of Movement

Other cases involving food distributors or delivery drivers demonstrate that Plaintiffs deliver out-of-state products in the practical continuity of movement. In *Foxworthy v. Hiland Dairy Co.*, the Tenth Circuit held that a driver who delivered milk and cheese products was exempt from overtime under the FLSA. *Foxworthy*, *supra*, 997 F.2d at 670. The plaintiff ordered products from Hiland Dairy Company for delivery to his customers in Ponca City, Oklahoma. *Id*. at 671. Upon receiving plaintiff's orders, Hiland Dairy Company shipped products from Arkansas to a distribution center in Oklahoma City, Oklahoma. *Id*. The products were then refrigerated overnight before being transported to Ponca City, where the plaintiff would load his delivery truck and make intrastate deliveries. *Id*. at 671-72. Even though the plaintiff's transportation efforts were purely within Oklahoma, the Tenth Circuit concluded the plaintiff was engaged in interstate commerce because the defendant had a fixed and persisting intent at the time of shipment based on specific customer orders and because "the products were not processed in any way and were not held in storage or inventory pending the receipt of actual orders." *Id*. at 673-74; *see also Shew v Southland Corp.,* 370 F.2d 376, 380 (5th Cir. 1996);

The *McGuiggan* case, which also involved bakery distributors, is likewise illustrative. *McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470 (S.D.N.Y. 2000). Dismissing the plaintiffs' overtime claims, the district court observed that the defendant "baked the English muffins in New Jersey, and New York customers

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

served by the plaintiffs (and the plaintiffs themselves) called their orders in to New Jersey. **If this does not qualify as interstate commerce, I am hard pressed to understand what is**." *Id.* at 483 (emphasis added).[7] This conclusion was not changed by "the 'ritual' of placing goods in a warehouse before subsequent delivery to customers within the same state," nor was it affected "[e]ven where the driver performs duties other than, or in addition to, driving." *Id.*[8]

Here, the record evidence establishes Plaintiffs transport out-of-state products that are intended to, and do, remain in interstate commerce. Plaintiffs are engaged in interstate commerce and exempt from overtime.

> (c)   *Plaintiffs' Use of Personal Vehicles for Tasks that Do Not Involve Interstate Commerce Is Immaterial*

Plaintiffs may argue they are nevertheless entitled to overtime because they used personal vehicles that weighed less than 10,001 pounds in connection with their distributorships. Defendants anticipate that such an argument would be based on the limited overtime exception contained in SAFETEA-LU Technical Corrections Act of 2008, Pub. L. 110-224, 122 Stat. 1572 ("TCA") for drivers who drive non – commercial vehicles (which is defined to include vehicles under 10,001 pounds).

Importantly, as noted above, Plaintiffs are pursuing their overtime claims under California law. Thus, *the TCA is inapplicable*, as that exception is an amendment to the FLSA *only* and does not affect claims under California law. The Wage Order establishes that Plaintiffs cannot recover overtime under California law

---

[7] *See also Ruiz v. Affinity Logistics Corp.*, No. 05-cv-2125, 2006 WL 3712942, at *2, *8 (S.D. Cal. Nov. 9, 2006) (granting summary judgment based on motor carrier exemption where plaintiff did not drive across state lines but where shipper had an intent to ship Sears appliances to a specific destination).

[8] It also is not necessary that the shipper know specifically which goods are earmarked for a particular customer, only that the goods will ultimately continue from the warehouse to a customer in a state different from that of the shipper. *See Shew,* 370 F.2d at 378, 380 (shipper had fixed and persisting intent beyond terminal storage point at time of shipment even though orders were consolidated); Dep't of Labor Opinion Letter FLSA 2005-2NA, 2005 WL 5419038 (Apr. 27, 2005); Dep't of Labor Opinion Letter, 1999 WL 1002364 (Feb. 10, 1999) (same).

*if they are subject to regulation by the Secretary of Transportation.* Any finding that Plaintiffs were "covered employees" under the TCA (and, therefore, *subject to the Secretary's jurisdiction*) would compel the dismissal of the Plaintiffs' state law overtime claim, since the Wage Order does *not* contain an exception to the exemption similar to that created by the TCA. *See Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596, 603 (4th Cir. 2017) (dismissing state law overtime claims).

Significantly, the TCA grants the Secretary of Transportation's authority to cover motor vehicles *of any weight. Allen v. Coil Tubing Servs., L.L.C.,* 846 F. Supp. 2d 678, 692 (E.D. Tex. 2012). Thus, the TCA further strengthens the Defendants' motor carrier defense. That defense, as noted above, is applicable to *all* employees *subject to federal DOT jurisdiction*, and is not qualified by the personal vehicle amendment. To put it another way, the "personal vehicle" use issue, which has divided courts under the FLSA, is *inapplicable* to the overtime claims asserted here.

Even assuming, arguendo, the limited overtime amendment of the TCA applied to California claims, the Plaintiffs here have testified that they only used their personal vehicle conducting pull-ups (when Plaintiffs go to existing accounts and pull product that has already been dropped off in the back room to put on the shelves). (Tobin Decl., ¶¶ 6, 8, 9, 10, and 11, Exs. A at 172:17-23, B at 140:10-20 and 144:10-15, C at 122:21-24, D at 108:24-109:4, E at 110:20-24, and F at 103:14-17) This does not count as non-exempt time. With a pull-up, the product has already come to rest when it was placed in the back room of the account; *it no longer remains in interstate commerce*. Thus, use of the personal vehicle for pull-ups is purely *intra*state. *See, e.g., Garcia v. W. Waste Servs.*, *Inc.,* 969 F. Supp. 2d 1252, 1261 (D. Idaho 2013) (because the plaintiff did not transport product in interstate commerce when using a personal vehicle, the MCA exemption still applied). In short, in order to be a "covered employee" under the TCA and trigger potential overtime, the employee must use his *personal vehicle* in *inter*state commerce. That did not happen here.

Thus, even if Plaintiffs established employment status, they are engaged in interstate commerce and exempt from overtime under state law.

## B.   Summary Judgment Should Be Granted as to Plaintiffs' Meal and Rest Break Claims

On December 21, 2018, the Federal Motor Carrier Safety Administration ("FMCSA") issued a ruling preempting California's meal and rest break laws as applied to property-carrying commercial motor vehicle drivers covered by the FMCSA's hours of service rules ("HOS rules") (the "Preemption Ruling"). 83 FR 67470-01 (Request for Judicial Notice ("RJN") No. 1). Because Plaintiffs are property-carrying commercial motor vehicle drivers covered by the HOS rules, their meal and rest period claims are preempted.

### 1.   The FMCSA Preemption Ruling

The Motor Carrier Safety Act of 1984 (the "Act") prohibits States from enforcing a law or regulation on commercial motor vehicle safety that the Secretary of Transportation has determined to be preempted. 49 U.S.C. § 31141(a). A State law may be preempted if it is "additional to or more stringent" than the HOS rules and it (1) has no safety benefit; (2) is incompatible with the regulation prescribed by the Secretary; or (3) would cause an unreasonable burden on interstate commerce. 49 U.S.C. § 31141(c)(4).

In its December 2018 Preemption Ruling, the FMCSA held California's meal and rest break laws are "more stringent than the Agency's hours of service regulations, that they have no safety benefits that extend beyond those already provided by the Federal Motor Carrier Safety Regulations, that they are incompatible with the Federal hours of service regulations, and that they cause an unreasonable burden on interstate commerce." (RJN 1.) The laws, therefore, "are preempted under 49 U.S.C. 31141(c)" and may no longer be enforced "with respect to drivers of property-carrying [commercial motor vehicles] subject to FMCSA's HOS rules." *Id*.

Drivers are presumptively subject to the HOS rules if they operate a "property-

37712609_1

carrying commercial motor vehicle." Code Fed. Reg. §§ 395.1(a)(1), 395.3(a). A "commercial motor vehicle," in turn, is defined as "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property" that has "a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater." Code Fed. Reg. § 390.5.

## 2. Plaintiffs' Meal and Rest Break Claims Are Preempted

As established above, Plaintiffs operate "commercial motor vehicles" and are therefore subject to the HOS rules. First, Plaintiffs admit they typically use vehicles with a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds to deliver products. (Tobin Decl., ¶¶ 6 - 23, Exs. A at 172:13-16, B at 140:1-2, C at 122:14-20, D at 108:13-14, E at 110:12-15, F at 101:20-102:3, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, and V.) Second, they delivery these products in interstate commerce. (Rich Decl., ¶¶ 16-19.) Thus, Plaintiffs are "drivers of property-carrying [commercial motor vehicles] subject to FMCSA's HOS rules" (RJN 1.) California's meal and rest break laws *cannot* be applied to Plaintiffs. *Id*. Plaintiffs' meal and rest break laws are preempted and must be dismissed.

## C. Plaintiffs Cannot Recover Purported Expenses Associated with Vehicle Purchases or Leases

Through their sixth and seventh causes of action, Plaintiffs seek reimbursement under Labor Code § 2802 for several categories of alleged business expenses, including the "purchase or lease of [their] vehicle[s]." ECF No. 95 (Second Amended Compl.), ¶ 54). But Plaintiffs are barred from recovering expenses associated with vehicle purchases or leases.

The California Division of Labor Standards and Enforcement ("DLSE") has consistently held that, although the costs of *operating* a motor vehicle in the course of employment may be covered by Section 2802, the costs of *furnishing* the vehicle itself are not. *See DLSE Interpretive Bulletin* No. 84-7 (Jan. 8, 1985) ("[A]n

applicant for employment may be required, as a condition of employment, to furnish his[ ] own automobile or truck to be used in the course of employment, regardless of the amount of wages paid. In *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1 (2007), the California Court of Appeal adopted the DLSE's reasoning when it affirmed a trial court's finding that the plaintiffs "were not entitled to reimbursement for expenses related 'to purchasing or leasing a vehicle for the purpose of performing pick up and delivery services' because 'employers in the pick-up and delivery industry in California can require as a condition of employment that their drivers, at their own expense, purchase or lease a truck to the employer's specifications.'" *Id.* at 21-22. Thus, Plaintiffs cannot recover the costs they allegedly incurred in purchasing, leasing, renting, or otherwise obtaining the vehicles they used to operate their distributorships.

### D. Plaintiffs' Claims that Require a Willful Violation Fail as a Matter of Law.

Plaintiffs seek penalties for Defendants' alleged failure to provide accurate itemized wage statements under Labor Code § 226 and waiting time penalties under Labor Code § 203. ECF No 95, ¶¶ 43, 39. Even if Plaintiffs could establish they were misclassified, these penalty claims fail as a matter of law because Plaintiffs cannot make the requisite showing that Defendants willfully violated the pertinent statutes.

Although Plaintiffs seek statutory penalties for allegedly inaccurate wage statements and for allegedly failing to pay all wages, a predicate to recovery is a "knowing and intentional" violation of the statutes. Labor Code §§ 226(e)(1), 203(a). The existence of a "'good faith dispute' as to whether Plaintiff is subject to these provisions precludes a finding that Defendant[s] acted with requisite scienter." *Dalton v. Lee Publ'ns, Inc.*, No. 08cv1072 BTM (NLS), 2011 WL 1045107, at *5-6 (S.D. Cal. Mar. 22, 2011) (granting summary judgment to Section 226 claim in case involving alleged misclassification of independent contractors). A good-faith dispute exists:

> [W]hen an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith will preclude a finding of a "good faith dispute."

Cal. Code Regs. tit. 8, § 13520 (defining "good-faith dispute" for purposes of Labor Code § 203); *Dalton*, 2011 WL 1045107, at *5-6 (applying same "good-faith dispute" definition to analysis of Section 226 claim); *Hurst v. Buczek Enters., Inc*., 870 F. Supp 2d 810, 829 (N.D. Cal. 2012).

Defendants will prove at trial that Plaintiffs were properly classified as independent contractors. But even at this stage of the proceedings, it is clear Defendants did not willfully misclassify Plaintiffs as independent contractors, as shown by judicial and administrative decisions concluding that Distributors are independent contractors under Flowers' distributorship model (and under similar models in the baking industry), IRS treatment of Distributors as independent contractors, previous litigation, and the ongoing efforts made by Flowers to maintain the independent-contractor business model. (Rich Decl., ¶¶ 5-12, Exs. A-H.)

The existence of a good-faith dispute between Plaintiffs and Flowers is amply demonstrated by the summary judgment decision in *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015). In *Villalpando*, Judge Spero granted the defendants' summary judgment motion as to the section 226 claim, *even after granting class certification and finding misclassification*. 2015 WL 5179486 at *37. In doing so, Judge Spero observed that even though the drivers were misclassified, the "Plaintiff have not demonstrated that there is a fact question as to Exel's intent" and "[t]ruck drivers who owned their own trucks have been found to be independent contractors in a variety of contexts." *Id*.[9] If there was no showing of

---

[9] The *Villalpando* court cited several authorities. *United States v. Silk,* 331 U.S. 704, 719 (1947) (holding that truck drivers who owned their own trucks and hired their own helpers were "small businessmen" who were properly classified as independent contractors); *Merchants Home Delivery Serv., Inc. v. N.L.R.B.*, 580 F.2d 966, 968

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

willfulness in *Villalpando – despite a class being certified and a finding of misclassification*, then Plaintiffs plainly cannot show Flowers committed a "knowing and intentional" violation of sections 203 and 226 here.

### E.   Plaintiffs' Representative PAGA Claims Fail as a Matter of Law

The Court should grant Defendants' motion for partial summary judgment on Plaintiffs' representative PAGA claims for three independent reasons: (1) Plaintiffs have not satisfied Rule 23's procedural requirements, which apply to representative actions brought in federal court; (2) absent certification of a class action under Rule 23, Plaintiffs do not have standing to assert claims on behalf of the "aggrieved employees" they seek to represent; and (3) Plaintiffs' claims are unmanageable because numerous individual inquiries would be necessary to determine liability.

#### 1.   Plaintiffs cannot assert representative PAGA claims because they have not complied with the procedural requirements of Rule 23.

Plaintiffs cannot maintain a representative PAGA action unless they comply with the procedural requirements of Rule 23.

"Under PAGA, an 'aggrieved employee' may bring a civil action against an employer 'on behalf of himself or herself and other current or former employees.'" *Fields v. QSP, Inc.*, No. 12-cv-1238-CAS (PJWx), 2012 WL 2049528, at *4 (C.D. Cal. June 4, 2012) (quoting Cal. Lab. Code § 2699(a)). Because "PAGA specifically permits recovery for unnamed nonparties[,] . . . it is a procedural mechanism by which litigants may recover for absent plaintiffs, akin to a class action." *Id.* at *5; s*ee also Halliwell v. A-T Sols.*, 983 F. Supp. 2d 1179, 1183 (S.D. Cal. 2013) ("As in a class action, PAGA actions are brought by an individual who represents not just his or her own interest, but also the interests of other unnamed parties sharing the same grievance."). Indeed, the California Supreme Court agrees that the PAGA "is simply

---

(9th Cir. 1978) (delivery truck drivers were properly classified as independent contractors); *N.L.R.B. v. A. Duie Pyle, Inc.,* 606 F.2d 379, 388 (3d Cir. 1979) (drivers who owned their own trucks and were "not instructed how to do their job" were acting as independent contractors when they delivered coal for defendant).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

a procedural statute allowing an aggrieved employee to recover civil penalties[.]" *Fields*, 2012 WL 2049528, at *4 (quoting *Amalgamated Transit Union, Local 1756, AFL–CIO v. Sup. Ct.*, 46 Cal.4th 993, 1003 (Cal. 2009)).

While the California Supreme Court has also held that "an 'aggrieved employee' suing in a representative capacity under PAGA need not meet *California* class action requirements," that does matter here because "'like the rest of the Federal Rules of Civil Procedure, Rule 23 automatically applies in all civil actions and proceedings in the United States District Courts.'" *Fields*, 2012 WL 2049528 at *4 (citing *Arias v. Sup. Ct.*, 46 Cal.4th 969, 975 (2009) and quoting *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Nor would it matter if the California Supreme Court's characterization of the PAGA as "procedural" were wrong because "it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Shady Grove*, 559 U.S. at 410.

"Congress itself has created the possibility that the same case may follow a different course in federal instead of state court." *Shady Grove*, 559 U.S. at 416. "The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping." *Id.* "To hold otherwise would be to disembowel either the Constitution's grant of power over federal procedure or Congress's exercise over it." *Id.* (quotation marks omitted). Accordingly, a "plaintiff must meet the requirements of Rule 23 to proceed with [a] PAGA claim in" federal court. *Fields*, 2012 WL 2049528, at *5.

The court came to the same conclusion in *Medlock v. Taco Bell Corp.*, No. 1:07-cv-01314-SAB, 2014 WL 4319510, at *7, 8 (E.D. Cal. Aug. 29, 2014):

> [R]egardless of whether PAGA suits can proceed in a California state court without meeting California's requirements for class actions, PAGA cannot be interpreted to operate in a federal court in a diversity action in a manner that would trump Rule 23's requirements governing representative actions in a federal court. The Legislature's use of the phrase "only if" in Rule 23 clearly evinces an intent that Rule 23(a)'s prerequisites are to apply in all representative actions brought in federal

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

court, leaving no room for states to fashion alternative procedural avenues for the prosecution of representative actions . . . Since PAGA's provisions providing for representative actions conflict[] with Rule 23's provisions regarding representative actions and Rule 23 represents a valid exercise of Congress' rulemaking authority, the Court finds that Rule 23 must be applied to Plaintiffs' PAGA claims.[10]

Many other decisions, including those in this district, are in accord. *See, e.g.*, *Bowers v. First Student, Inc.*, No. 2:14-cv-8866-ODW (Ex), 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) ("Because Rule 23 is a procedural statute that clearly outlines requirements for third-party representation, the Court holds that Plaintiffs' PAGA representative claims must abide by Rule 23."); *Halliwell*, 983 F. Supp. 2d at 1183-84 ("PAGA is a procedural mechanism by which litigants may recover for absent plaintiffs, akin to a class action. Federal Rule of Civil Procedure 23 governs all representative claims brought in federal court, even if the underlying individual claims arise under state law.") (citation, quotation marks, and text alteration omitted), No. 13-cv-2014-H KSC, 2014 WL 4472724, at *3 (S.D. Cal. Sept. 10, 2014) (denying motion for reconsideration); *Ivey v. Apogen Techs., Inc.*, No. 11-cv-366-DM-NLS, 2011 WL 3515936, at *3 (S.D. Cal. Aug. 10, 2011) ("Because Section 2699(a) of the California Labor Code provides for recovery to unnamed nonparties, it contravenes federal procedural requirements. […] To the extent Plaintiff here seeks to bring a representative PAGA action on behalf of other non-party, unnamed aggrieved employees in federal court, such a claim must meet the requirements of Rule 23.") (quotation marks omitted).

Because Plaintiffs have not even attempted to meet the procedural requirements of Rule 23, the Court should dismiss their PAGA claims.[11]

---

[10] Both *Medlock*, 2014 WL 4319510, at *7, and *Fields*, 2012 WL 2049528, at *5 n.3, note that courts reaching the opposite conclusion rely on a characterization of the PAGA as a law enforcement action. But "[a] Federal Rule of Procedure is not valid in some jurisdictions and invalid in others—or valid in some cases and invalid in others—depending upon whether its effect is to frustrate a state substantive law (or a state procedural law enacted for substantive purposes)." *Shady Grove*, 559 U.S. at 409.

[11] The court in *Canela v. Costco Wholesale Corp.*, No. 13-cv-03598-BLF, 2018 WL

37712609_1

## 2.   Unless they Certify a Class Under Rule 23, Plaintiffs Lack Standing to Bring their Representative PAGA Claims.

Without certifying a class under Rule 23, Plaintiffs do not have standing to assert PAGA claims on behalf of other purportedly "aggrieved employees."

"[A]bsent certification of a class under Rule 23, plaintiffs generally must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties." *Taylor v. W. Marine Prod., Inc.*, No. 13-cv-04916-WHA, 2014 WL 1248162, at *2 (N.D. Cal. Mar. 26, 2014) (Alsup, J.) (quotation marks and text alterations omitted). "This is because Article III 'require[s] a plaintiff to show, *inter alia*, that he has actually been injured by the defendant's challenged conduct,' such that 'a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.'" *Id.* (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001)).

In *Taylor*, the court noted that, although the California Supreme Court held in *Arias* that PAGA claims do not have to meet *state* class action requirements, "Article III imposes a *mandatory* standing requirement." *Id.* (emphasis added). The court held states cannot simply issue "to private parties who otherwise lack standing a ticket to the federal courthouse.'" *Id.* (quoting *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2667 (2013)). Relying on this "settled law," the court allowed plaintiffs to amend "only on the understanding that plaintiffs may seek PAGA penalties for which they have Article III standing and prudential standing, including (without limitation) violations involving them or those perpetrated in connection with any wage-and-hour claims ultimately certified herein under Rule 23." *Id.* at *3 ("If Rule 23 classes are eventually certified to assert various California Labor Code violations, then as to each violation proven for each such class member, PAGA penalties may be sought

3008532, at *3 (N.D. Cal. June 15, 2018), recently certified this issue for interlocutory appeal. The parties are now briefing the issue before the Ninth Circuit.

37712609_1

by plaintiffs as additional relief. If, however, Rule 23 certification is ultimately denied in this case, the PAGA violations will be limited to those proven for our plaintiffs named herein[.]"); *see also*, *Barker v. U.S. Bancorp*, No. 3:15-cv-1641-CAB-WVG, 2018 WL 340232, at *2 n.3 (S.D. Cal. Jan. 9, 2018) (questioning Article III standing "to assert PAGA claims outside of […] Rule 23"); *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 2:15-cv-02862-ODW, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015) (Citing "numerous rulings" in accord and dismissing PAGA claim for lack of standing); *Adams v. Luxottica U.S. Holdings Corp.*, No. 07-cv-1465-AHS, 2009 WL 7401970, at *7 (C.D. Cal. July 24, 2009) (same).

Accordingly, the Court should dismiss Plaintiffs' representative PAGA claims because they lack standing.[12]

### 3. Even if Rule 23 Did Not Apply, Plaintiffs' Representative PAGA Claims Still Cannot Proceed Because they Are Unmanageable.

Courts "have been careful not to hold that PAGA actions can never be maintained wherever individual assessments are required because every PAGA action in some ways requires some individualized assessment regarding whether a Labor Code violation has occurred." *Salazar v. McDonald's Corp.*, No. 14-cv-02096-RS, 2017 WL 88999, at *8 (N.D. Cal. Jan. 5, 2017) (citations omitted). Nonetheless, "[t]hey have stricken or dismissed representative PAGA claims where the evidence shows that numerous individualized determinations would be necessary to determine whether any class member has been injured." *Id.* (citations omitted). *See also Bowers v. First Student, Inc.*, No. 2:14-cv-8866-ODW (Ex), 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) ("[a] PAGA claim can be considered unmanageable when a multitude of individualized assessments would be necessary"); *Litty v. Merrill Lynch & Co.*, No. 14-cv-0425-PA (PJWx), 2014 WL 5904904, at *3 (C.D. Cal. Nov. 10, 2014) (dismissing PAGA claim as

---

[12] The court in *Canela*, 2018 WL 3008532, at *4, also certified this issue for interlocutory appeal.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

"unmanageable because a multitude of individualized assessments would be necessary."). That is precisely the case here.

Two different tests for determining whether Plaintiffs are correctly classified as independent contractors are potentially applicable in this case: the common-law test from *Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (Cal. 1989); and the "ABC" test from *Dynamex Operations West, Inc. v. Superior Court of Los Angeles County*, 4 Cal.5th 903 (Cal. 2018). Each requires the evaluation of multiple factors.

*Borello* relies on numerous "individual factors" that "cannot be applied mechanically" because they are "intertwined and their weight depends on different combinations." 4 Cal.3d at 351 (quotation marks omitted). The principal test is whether the "person to whom service is rendered has the right to control the manner and means of accomplishing the result desired[.]" *Id.* at 350 (quotation marks omitted). There are also numerous secondary factors that are relevant to the determination: whether the one performing services is engaged in a distinct occupation or business; the kind of occupation; the skill required; whether the principal or the worker supplies the instrumentalities, tools, and the place of work; the length of time for which the services are to be performed; the method of payment; whether the work is a part of the regular business of the principal; and whether the parties believe they are creating the relationship of employer-employee. *Id.* at 351. In addition, the factfinder should consider the alleged employee's "opportunity for profit or loss depending on his or her managerial skill" and "investment in equipment or materials required for his task, or his employment of helpers." *Id.* at 355.

Under the "ABC" test, Defendants must establish the following: "(A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the

hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Dynamex*, 4 Cal.5th at 916-17.

Engaging with either test would require numerous individualized determinations. As discussed above in the Statement of Facts, there are stark differences between Distributors in how they set their schedules, decide what products to order, service their accounts, engage in marketing and promotional activities related to their businesses, and interact with management. Moreover, several Distributors **hire helpers to service their territories—in whole or in part—without Flowers' knowledge**. As such, numerous individualized inquiries would be necessary to determine whether Defendants controlled Plaintiffs and the large group of other "aggrieved employees" they seek to represent. Determining whether "aggrieved employees" engaged in a distinct occupation or business also cannot be determined without probing into their individual circumstances, including whether they used helpers or employees to operate their businesses and provided delivery services for other companies. Similarly, determining whether each "aggrieved employee" and Defendants believed they were creating an employer-employee relationship would require nothing short of a sworn statement from each individual distributor. These and other highly individualized determinations are necessary to decide only the threshold issue of whether Distributors are properly classified.

If Plaintiffs can clear that hurdle, a number of other highly individualized inquiries would be required to prove their actual claims. Individual inquiries will be needed to determine whether the expenses "aggrieved employees" seek reimbursement for were actually incurred and, if so, whether they were reasonable and necessary; whether they authorized in writing the alleged unlawful deductions from their settlement statements; whether they worked enough time to be entitled to take a meal and/or rest break on any given day and whether they had the opportunity to take those breaks; and whether they worked overtime. These determinations

37712609_1

would require a day-by-day or week-by-week analysis for each distributor.

Significantly, the court denied plaintiffs' motion for class certification based on similar manageability concerns in *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 486 (N.D. Cal. 2017):

> Trying this lawsuit as a class action presents manageability issues given the individual inquiries necessary to establish Defendants' liability for each of the putative class members. For example, the Court would need to hold mini-trials to determine which drivers "personally serviced" their routes, when, and for how many hours and whether they did deliveries for other companies in order to analyze whether a particular driver was engaged in a business distinct from other class members . . . There would also need to be individualized inquiries into how to treat Distributors who may have owned more than one territory.

*See also Martinez v. Flower Foods, Inc.*, No. 15-cv-5112 RGK (Ex), 2016 WL 10746664, at *13 (C.D. Cal. Feb. 1, 2016) ("In sum, the Court concludes that individual issues predominate as to the question of whether Defendants improperly classified class members as independent contractors instead of employees.").

Because the circumstances of this case require a multitude of individualized assessments, the Court should dismiss Plaintiffs' representative PAGA claims. *See, e.g.*, *Amiri v. Cox Commc'ns Cal., LLC*, 272 F. Supp. 3d 1187, 1195 (C.D. Cal. 2017) (holding PAGA meal and rest break claims unmanageable because "[T]he Court would be required to determine (1) whether each individual took a particular meal or rest break (2) on a particular occasion and (3) if the individual skipped the break, why it was skipped for each of the around 1,000 aggrieved employees."); *Salazar*, 2017 WL 88999, at *3 (dismissing PAGA claim because, "[a]t bottom, the question of belief turns on an individualized inquiry"); *Raphael*, 2015 WL 5680310, at *3 ("[G]athering inquires for each of these [claimed] expenses from Raphael and all aggrieved employees would be nothing short of unmanageable."); *Ortiz v. CVS Caremark Corp.*, No. 12-cv-05859-EDL, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014) (dismissing PAGA claim seeking expense reimbursement as "unmanageable").

Indeed, dismissal is particularly appropriate here because Plaintiffs bring

PAGA claims on behalf of a large group of allegedly "aggrieved employees" based on eight separate purported violations, citing 14 different Labor Code sections. *See, e.g.*, *Rix v. Lockheed Martin Corp.*, No. 09-cv-2063-CAB NLS, 2013 WL 9988381, at *2 (S.D. Cal. Feb. 15, 2013) ("Plaintiff is seeking to establish 15 separate Labor Code violations as to the 88 ISRs […] This means that Plaintiff's PAGA claim requires Plaintiff to prove Labor Code violations for over one thousand claims. The Court is not persuaded that this can be done through common evidence.").

### 4. Plaintiffs' PAGA Notice Letter Failed to Identify Labor Code § 204, Requiring Dismissal

PAGA's administrative exhaustion requirements mandate that plaintiffs list the "specific provisions of [the Labor Code] alleged to have been violated" in their pre-filing notice letter. Lab. Code § 2699.3(a)(1)(a). If a specific Labor Code section is not listed in the PAGA notice letter, it cannot be included in a subsequent PAGA cause of action and must be dismissed. *See Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1047 (C.D. Cal. 2016). Here, Plaintiffs' ninth cause of action includes a claim for PAGA penalties based on alleged violations of Labor Code § 204. ECF 95, ¶ 72(f). But Labor Code § 204 is *not* listed in Plaintiffs' PAGA notice letter. (Ex. W.) Plaintiffs' claim for PAGA penalties based on alleged violations of section 204 must be dismissed.[13]

### F. The FAAAA Preempts Application of *Dynamex*'s "ABC" Test

The FAAAA provides that "a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or *service* of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. §

---

[13] Plaintiffs' expert report also includes calculations of PAGA penalties for violations of Labor Code §§ 226.8 and 256. Neither section is listed in Plaintiffs' PAGA notice letter or their ninth cause of action. (ECF 95, ¶ 72; Ex. W.) Because these claims are not plead, Defendants do not move to dismiss them here. But to the extent Plaintiffs later seek penalties based on these provisions, they will be barred from doing so.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

14501(c)(1) (emphasis added). The FAAAA preempts *Dynamex*'s "ABC" test because it precludes Defendants from using independent contractors to perform a service that is within the usual course of their business.

Though there is no Ninth Circuit precedent directly on point, *California Trucking Association v. Su*, 903 F.3d 953 (9th Cir. 2018), is instructive. There, the Ninth Circuit ruled that the FAAAA does not preempt the *Borello* standard for determining whether a worker is properly classified as an independent contractor, *id.* at 957, but it forecasted that the result would likely have been different if *Dynamex*'s "ABC" test were at issue.

In evaluating the *Borello* standard, the court contrasted its decision in *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), where it "concluded that the FAAAA likely preempted the Ports of Los Angeles and Long Beach's directive that carriers must use only employee drivers[.]" *Id.* at 964. "As compared to the *Borello* standard, which sets a background rule for ensuring a driver is correctly classified, *American Trucking* stands for the *obvious proposition* that an 'all or nothing' rule requiring services be performed by certain types of employee drivers . . . was *likely preempted*." *Id.* (emphasis added). The court applied the same logic to distinguish the First Circuit's holding in *Schwann v. FedEx Ground Package System* that the FAAAA preempts the second prong of the Massachusetts "ABC" test (which mirrors the test in *Dynamex*):

> Like *American Trucking*, the "ABC" test may effectively compel a motor carrier to use employees for certain services because, under the "ABC" test, a worker providing a service within an employer's usual course of business will never be considered an independent contractor. *Id.* at 438. For a motor carrier company, this means it may be difficult to classify drivers providing carriage services as independent contractors. *Id.* at 439. *Id.*[14]

---

[14] In *Schwann*, the First Circuit applied preemption for numerous reasons, including that the second prong of the "ABC" test "requires a court to define the degree of integration that a company may employ by mandating that any services deemed 'usual' to its course of business be performed by an employee," which "poses a serious potential impediment to the achievement of the FAAAA's objectives because a court, rather than the market participant, would ultimately determine what services

37712609_1

Based on the Ninth Circuit's reasoning, it would likely find that the FAAAA "obviously" preempts *Dynamex*'s "ABC" test. *See, e.g.*, *id.* at 964 ("*American Trucking* stands for the *obvious proposition* that an 'all or nothing' rule requiring services be performed by certain types of employee drivers . . . was likely preempted . . . . Like *American Trucking*, the 'ABC' test may effectively compel a motor carrier to use employees for certain services[.]") (emphasis added).

Notably, a California district court recently applied the reasoning from *Su*, as well as the First Circuit's decisions in *Schwann* and *Massachusetts Delivery Association v. Healey*, 821 F.3d 187 (1st Cir. 2018), and held that *Dynamex*'s ABC test is preempted:

> [W]hile the Ninth Circuit declined to affirmatively address whether the ABC test was preempted by the FAAAA, it nevertheless distinguished the two standards, noting that the ABC test may effectively **compel a motor carrier to use employees for certain services** because, under the ABC test, a worker providing a service within an employer's usual course of business will never be considered an independent contractor. The Court agrees with this dicta and finds that the ABC test—as adopted by the California Supreme Court—"relates" to a motor carrier's services in more than a "tenuous" manner and is therefore preempted by the FAAAA.

*Alvarez v. XPO Logistics Cartage LLC*, No. CV 18-03736 SJO (E), 2018 WL 6271965 (C.D. Cal. Nov. 15, 2018), at *4, 5 (emphasis in original; quotation marks and citation omitted).   This Court should come to the same conclusion.

## V.   **CONCLUSION**

For the foregoing reasons, summary judgment should be granted to Defendants.

---

that company provides and how it chooses to provide them." 813 F.3d 429, 438 (1st Cir. 2016). "Prong 2 also stands as something of an anomaly because it makes any person who performs a service within the usual course of the enterprise's business an employee for state wage law purposes. By contrast, under […] the law of many states, the relationship between the service performed and the usual course of the enterprise's business is simply one among many factors to be considered." *Id.*  (citations omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: March 12, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Frank L. Tobin*
      Frank L. Tobin
Attorneys for Defendants

Case No. 17-CV-02580-JLS-JLB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

37712609_1

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify that on March 12, 2019, I electronically filed the foregoing

3

with the Clerk of the Court using the CM/ECF system which will send notification

4

of such filing to the e-mail addresses denoted on the Notice of Electronic Filing.

5

      I certify under penalty of perjury under the laws of the United States of

6

America that the foregoing is true and correct.  Executed on March 12, 2019.

7

8

9

              By:  */s/ Frank L. Tobin*

10

                   Frank L. Tobin

11

37712609.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37712609_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT