**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, an individual; TONY RUSSELL, an individual; REY PENA, an individual; JOSE PENA, an individual; JEFF BELANDER, an individual; GUISEPPE ZIZZO, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKING CO. OF CALIFORNIA, LLC, a California limited liability company; FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; <br><br> Defendants. | Case No. 17-cv-02580-TWR-JLB <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **Date**: June 2, 2021 <br> **Time**: 1:30 p.m. <br> **Courtroom**: 3A <br><br> **District Judge**: Hon. Todd W. Robinson <br> **Magistrate Judge**:  Hon. Jill L. Burkardt <br><br> **Date of Removal**:   December 28, 2017 |

# TABLE OF CONTENTS

I.    **INTRODUCTION** ...............................................................1

II.   **FACTS** .............................................................................1

    A.   **Flowers' Transportation of Its Goods** ........................1

    B.   **Regulation and Registration of Transportation Activities** .....................................................................3

    C.   **Pull Up Days** ..............................................................4

III.  **LEGAL STANDARD** .....................................................4

IV.  **FLOWERS' SUPPORTING EVIDENCE SHOULD BE STRICKEN** ...................................................................5

V.   **ARGUMENT** ..................................................................6

    A.   **Flowers' Preemption Arguments Fail** ........................7

        1.   *FMCSA Preemption Does Not Reach This Case or Apply to All Meal/Rest Claims at Issue Even if it Did* ................................................................7

        2.   *FAAAA Preemption Is Limited to Transportation Companies, It Does Not Apply Here* .................8

        3.   *Neither the FTC Act nor the Lanham Act Preempt the ABC Test* .................................................11

            a.   **Flowers Misstates That There Is a Franchise Relationship** ..............................11

            b.   **Obstacle Preemption Requires a Clear and Manifest Intent to Preempt State Law** ...................................................12

            c.   **FTC Preemption Fails Because Congress Has No Intent to Regulate the Franchise Relationship** ......................................13

               i.   *Congress' Involvement with Franchising Is Very Limited and Provides Just Minimum Protections to Bona fide Franchisees. Franchise Laws Do Not to Enable Franchisors to Control Workers* ...............13

               ii.  *California's Extension of Wage Protections to Purported Franchisees Does Not Stand as an Obstacle to the FTC's Regulation of Franchising* ........14

*iii.    The Ninth Circuit, Among Others, Rejects Flowers' Plea to Treat "Franchisors" Separately for Wage Per Hour Laws* ....................................15

**d.    Lanham Act Preemption Fails** ....................16

**B.    Plaintiffs State Valid State Overtime Claims** ..................18

*1.    Flowers Misstates the Overtime Standard under California Law, This Is Fatal to Its Requested Relief* ....................................18

*2.    Lack of Interstate Commerce Further Sinks Flowers Bid to Eliminate Overtime Liability*..........................19

**a.    Flowers Depiction of Pull Up Days Eliminates Summary Judgement** ................19

**b.    Non-Pull Up Days Are Not Interstate Either** ..............................20

**C.    There are triable PAGA Claims** ...............................24

*1.    Rule 23 Does Not Apply to PAGA Claims* ...............24

*2.    There is No Other Basis for a "Manageability" Requirement.  And Adding One Would Thwart PAGA's Purpose.* ..............................25

*3.    In Any Event, This Case Is Manageable* ..................26

**V.    <u>CONCLUSION</u>** ..............................29

# TABLE OF AUTHORITIES

**CASES**

*A.G.G. Enterprises, Inc. v. Washington Cty., Or.*,
145 F. Supp. 2d 1215 (D. Or. 2001) ................................................................9

*Alcantar v. Hobart Serv.*,
No. ED CV 11-1600 PSG,
2013 WL 146323 (C.D. Cal. Jan. 14, 2013)..............................................24, 26

*Alvarado v. Dart Container Corp. of California*,
411 P.3d 528 (Cal. 2018) ...............................................................................18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).........................................................................................4

*Arias v. Superior Court*,
46 Cal. 4th 969 (Cal. 2009) ...........................................................................24

*Atlantic Coast Line R.R. v. Standard Oil Co.*,
275 U.S. 257 (1927)..........................................................................20, 21, 23

*Baumann v. Chase Inv. Servs. Corp.*,
747 F.3d 1117 (9th Cir. 2014) .......................................................................24

*Benjamin v. B & H Education, Inc.*,
877 F.3d 1139 (9th Cir. 2017) .........................................................................5

*Borello & Sons, Inc. v. Dept. of Industrial Relations*,
48 Cal.3d 341 (1989) .............................................................11, 26, 27, 29

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988).........................................................................................8

*California Trucking Ass'n v. Becerra*,
433 F. Supp. 3d 1154 (S.D. Cal. 2020) ..........................................................10

*Capp v. Nordstrom, Inc.*,
No. 2:13-CV-00660-MCE-AC,
2013 WL 5739102 (E.D. Cal. Oct. 22, 2013)...................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................4

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582 (2011)...................................................................................12, 16

*Dilts v. Penske Logistics, LLC*,
769 F.3d 637 (9th Cir. 2014) ......................................................................9, 10

*Dynamex Operations W. v. Superior Court*,
4 Cal. 5th 903 (Cal. 2018) ...........................11, 17, 26, 27, 28, 29, 30

*Eisen v. Carlisle and Jacquelin,*
   417 U.S. 156 (1974)...............................................................................24, 26

*Fleming v. Matco Tools Corp.,*
   19-CV-00463-WHO,
   2021 WL 673445 (N.D. Cal. Feb. 21, 2021)......................................................28

*Fleming v. Matco Tools Corp.,*
   No. 19-CV-00463-WHO,
   2020 WL 6461327 (N.D. Cal. Nov. 3, 2020) ....................................................16

*Foxworthy v. Hiland Dairy Co.,*
   997 F.2d 670 (10th Cir. 1993) ..........................................................................23

*Fraser v. Goodale,*
   342 F.3d 1032 (9th Cir. 2003) ............................................................................5

*Gomez v. Lincare, Inc.,*
   173 Cal. App. 4th 508 (2009), *as modified* (Apr. 28, 2009) ...........................19

*Heredia v. Eddie Bauer LLC,*
   16-CV-06236-BLF,
   2020 WL 1492710 (N.D. Cal. Mar. 27, 2020) ..................................................25

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
   738 F.3d 1085 (9th Cir. 2013) ..........................................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices,*
   *& Prod. Liab. Litig.,*
   959 F.3d 1201 (9th Cir. 2020) ..........................................................................12

*Int'l Bhd. of Teamsters, Loc. 2785 v.*
   *Fed. Motor Carrier Safety Admin.,*
   986 F.3d 841 (9th Cir. 2021) ...............................................................8, 16, 17

*Iskanian v. CLS Transportation Los Angeles, LLC,*
   59 Cal. 4th 348 (Cal. 2014) ..............................................................................24

*Jordan v. NCI Grp., Inc.,*
   No. EDCV161701JVSSPX,
   2017 WL 1821122 (C.D. Cal. Mar. 22, 2017)...................................................25

*Kamar v. RadioShack Corp.,*
   No. CV07-2252AHM(AJWX),
   2008 WL 2229166 (C.D. Cal. May 15, 2008)......................................................7

*Klitzke v. Steiner Corp.,*
   110 F.3d 1465 (9th Cir. 1997) ..........................................................................20

*La. Pub. Serv. Comm'n v. FCC,*
   476 U.S. 355 (1986)...........................................................................................13

*Landgraf v. USI Film Prods.,*
   511 U.S. 244 (1994).............................................................................................8

*Martinez v. Flower Foods, Inc.*,
  CV 15-5112 RGK (EX),
  2016 WL 10746664 (C.D. Cal. Feb. 1, 2016) ..................................................29

*Masson v. Ecolab, Inc.*,
  No. 04 CIV. 4488(MBM),
  2005 WL 2000133 (S.D.N.Y. Aug. 17, 2015)...................................................21

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).............................................................................................4

*McClellan v. I-Flow Corp.*,
  776 F.3d 1035 (9th Cir. 2015) ....................................................................12, 14

*McGuiggan v. CPC Int'l, Inc.*,
  84 F. Supp. 2d 470 (S.D.N.Y. 2000) .................................................................23

*Medina v. Multaler, Inc.*,
  547 F.Supp.2d 1099 (C.D. Cal. 2007) .................................................................5

*Murphy v. Kenneth Cole Prods., Inc.*,
  40 Cal. 4th 1094 (2007)........................................................................................7

*Naryan v. EGL, Inc.*,
  616 F.3d 895 (9th Cir. 2010) .............................................................................27

*Neff v. Flowers Foods, Inc.*,
  No. 5:15-cv-0025-GWC (D. Vt. Filed Nov. 7, 2016) (ECF No. 56) ..............29

*Noll v. Flowers Foods, Inc.*,
  No. 1:15-cv-00493-JAW
  (D. Me. Filed Jan. 20, 2017) (ECF No. 81) ......................................................28

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014) ...............................................................................5

*Packard v. Pittsburgh Transp. Co.*,
  418 F.3d 246 (3d Cir. 2005) .........................................................................21, 23

*Patel v. 7-Eleven, Inc.*,
  No. 1:17-cv-11414-NMG,
  2020 WL 5440623 (D. Mass. Sept. 10, 2020)...................................................15

*Pfingston v. Ronan Eng'g Co.*,
  284 F.3d 999 (9th Cir. 2002) ...............................................................................5

*Progressive Cas. Ins. Co. v. Hoover*,
  570 Pa. 423 (Pa. 2002).................................................................................21, 23

*Richard v. Flower Foods, Inc.*,
  No. 6:15-cv-02557-SMH-CBW
  (W.D. La. Filed Nov. 28, 2016) (ECF No. 136).................................................29

*Rincon v. W. Coast Tomato Growers, LLC,*
   13-CV-02473 W (KSC),
   2016 WL 11620827 (S.D. Cal. July 11, 2016) .................................................25

*Saldibar v. Delray One, Inc.,*
   No. 07-80608-CIV,
   2008 WL 755265 (S.D. Fla. Feb. 20, 2008) ....................................................24

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ........................................................................26

*Soares v. Flowers Foods, Inc.,*
   320 F.R.D. 464 (N.D. Cal. 2017) ....................................................................29

*Southern Pac. Trans. Co. v. ICC,*
   565 F.3d 615 (9th Cir. 1977) ..........................................................................20

*United States v. Majure,*
   162 F. Supp. 594 (S.D. Miss. 1957) ..........................................................20, 22

*Valadez v. CSX Intermodal Terminals, Inc.,*
   298 F. Supp. 3d 1254 (N.D. Cal. 2018).......................................................25, 28

*Vazquez v. Jan-Pro Franchising Int'l, Inc.,*
   986 F.3d 1106 (9th Cir. 2021) ....................................................................15, 27

*Veney v. John W. Clarke, Inc.,*
   28 F. Supp. 3d 435 (D. MD 2014).............................................................20, 22

*Walling v. Jacksonville Paper Co.,*
   317 U.S. 564 (1943)........................................................................................23

*Wamboldt v. Safety-Kleen Sys., Inc.,*
   No. C 07-0884 PJH,
   2008 WL 728884 (N.D. Cal. Mar. 17, 2008) ..................................................20

*Ward v. United Airlines, Inc.,*
   2021 WL 345578 (9th Cir. Feb. 2, 2021) .......................................................10

*Williams v. Jani-King of Philadelphia Inc.,*
   837 F.3d 314 (3d Cir. 2016) ...........................................................................15

*Williams v. Superior Court.,*
   3 Cal. 5th 531 (2017) ......................................................................................25

*Worthington v. Icicle Seafoods, Inc.,*
   774 F.2d 349 (9th Cir.1984) ...........................................................................20

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
   259 F.3d 1101 (9th Cir. 2001) ..........................................................................5

*Zackaria v. Wal-Mart Stores, Inc.,*
   142 F. Supp. 3d 949 (C.D. Cal. 2015)............................................................25

**STATUTES**

15 U.S.C. § 45 ................................................................................................13

15 U.S.C. § 57 ................................................................................................13

16 C.F.R. § 436.1 ...........................................................................................13

16 C.F.R. § 436.10 .........................................................................................14

29 C.F.R. § 782.2 ...........................................................................................19

29 U.S.C. § 213 ..............................................................................................19

29 U.S.C. § 216 ..............................................................................................28

49 C.F.R. § 395.11 .........................................................................................18

49 C.F.R. § 395.3 ...........................................................................................18

49 C.F.R. § 395.8 ...........................................................................................18

49 U.S.C. § 13102 .......................................................................................9, 11

49 U.S.C. § 13505 ............................................................................................9

49 U.S.C. § 14501 ............................................................................................9

49 U.S.C. § 31502 ..........................................................................................19

Cal. Code Regs. tit. 8, § 11090 .......................................................................7

Cal. Lab. Code, § 226.7 ...................................................................................7

Cal. Lab. Code, § 2699 ......................................................................24, 25, 26

Cal. Lab. Code, § 512 ......................................................................................7

Cal. Lab. Code, § 516 ......................................................................................7

**OTHER AUTHORITIES**

California's Meal and Rest Break Rules for Commercial Motor
    Vehicle Drivers .........................................................................................7

Disclosure Requirements and Prohibitions Concerning Franchising,
    72 FR 15444-01 .......................................................................................14

Petition for Determination of Preemption, 83 FR 67470-01, 2018 WL
    6809341 (Dec. 28, 2018) ...........................................................................7

**RULES**

CivLR 7.1(h) ...................................................................................................6

Fed. R. Civ. P. 26 ............................................................................................5

Fed. R. Civ. P. 37 ............................................................................................5

Fed. R. Civ. P. 56 ............................................................................................4

Fed. R. Evid. 1002 ..........................................................................................6

## I.   INTRODUCTION

With the determination that Defendants are Plaintiffs' employers under California law on the imminent horizon (*see* Plaintiff's Motion for Partial Summary Judgement, ECF No. 171-1 ["Plaintiff's MSJ"]), Defendants assert a host of novel and inapplicable defenses to try to chip away at the scope of their liability for unpaid wages and other benefits due under California law. First, Defendants ask the Court to find that several of Plaintiffs' theories are preempted. Despite the heavy burden necessary to show that federal laws have a clear and manifest intent to preempt traditional state powers to regulate wages within their borders, Flowers provides only a cursory analysis in support of preempting meal and rest break claims as well as California's prevailing "ABC test" for employment status. *Id.* Each preemption defense fails because no federal law aims to alleviate baking companies subject to manufacturing wage orders from state employment tests and meal/rest obligations.

Next, Flowers asks this Court to extinguish Plaintiffs' state law overtime claims by applying a broader federal test for exemption from overtime. Under the proper state test, Plaintiffs are not exempt because no federal agency ever actually regulated Plaintiffs' operation of their vehicles. Even under the broader federal exemption (if applied), Plaintiffs' *intra*state operations several steps removed from any *inter*state commerce takes them out of the realm of exempt status.

Finally, Flowers' attempt to eliminate PAGA liability rests on a now well-outdated view of PAGA as a Rule 23 analog subject to "manageability" requirements as opposed to a distinct *qui tam* state law enforcement action. PAGA claims are ripe to proceed to trial here.

## II.   FACTS

### A.   Flowers' Transportation of Its Goods

Flowers has about 400 distributors like Plaintiffs in California. Ex. C, Henderson Class List; Ex. D, Modesto Class List. Plaintiffs place product orders with Flowers Henderson, not other bakeries. Ex. E, Franchise Disclosure Document,

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

15 ("facilitation of direct product ordering from you to [Flowers Henderson]"); Ex. F, Hall Dep. Tr., 8:10-24; Ex. B, Rich Dep. Tr., 73:7-22. Local bakeries like Henderson aggregate distributor orders, with the ability to modify them, and send aggregate orders to other bakeries within the reciprocal baking system. Ex. G, Frye Dep. Tr., 20:25-22:2. Flowers Henderson then sells products to distributors. ECF No. 99-14, DA at p. 1 and ¶ 4.1; Ex. B, Rich Dep. Tr., 83:8-84:8. Distributors cannot buy a product from an unaffiliated and/or out-of-state bakery. *Id.*

Flowers Henderson, like other Flowers' "bakeries," is its own separate entity making up part of a reciprocal baking network. Rich Dec., ECF No. 104-27 at ¶¶ 3 and 15. As such, each bakery produces products for the other bakeries, and not for any specific distributor. *Id.* at ¶ 15 (Flowers Henderson and others have "an assigned production mission to produce certain [baked] items for . . . other subsidiaries' markets"). Flowers claims title changes hands from producing bakery to Flowers Henderson before it can pass title along to distributors. ECF No. 99-14, DA at p. 1 and ¶ 4.1; Ex. G, Frye Dep. Tr., 28:19-29:25. The producing bakery only knows that it needs to fulfil an aggregate order. Ex. G, Frye Dep. Tr., 24:7-13. It does not know any breakdown for specific distributors, let alone specific customers. *Id.*; Ex. A, Olivas Dep. Tr., 126:23-129:1; Ex. B, Rich Dep. Tr., 87:4-23.

The out-of-state bakeries then ship products to an in-state "distribution center" in Fontana, California. *Id.* They do so using third party shippers. Ex. A, Olivas Dep. Tr. at 41:23-42:4, 79:16-19; 126:10-129:13 (this warehouse receives products from the Fontana, CA distribution center delivered by a third-party which is then broken down per distributor by a "splitter"); Ex. H, Cass Dep. Tr. at 67:16-68:14 (same). This is where title passes from bakery to bakery. Ex. B, Rich Dep. Tr., 99:10-100:9. Products can remain with the ordering bakery at this distribution point for up to 2 days before re-shipment. Ex. G, Frye Dep. Tr., 31:24-32:5. At the in-state distribution center, Flowers Henderson breaks the bulk out-of-state shipments down further and organizes product according to the needs of each local warehouse. Ex.

1   A, Olivas Dep. Tr., 128:7-16; Ex. G, Frye Dep. Tr., 23:19-24:1. There still is no

2   distributor or customer set to receive these products at that point. *Id.*

3        The shipments from the distribution center (Fontana) to the local warehouse

4   (e.g. the San Diego warehouse where Plaintiffs pick up their orders) are done through

5   a third-party trucking company. Ex. B, Rich Dep. Tr., 91:18-92:8; Ex. A, Olivas

6   Dep. Tr., 129:2-16. Upon arrival at the local Flowers Henderson warehouses, a

7   "splitter" (employed by third party ABM) then fills a distribution order from the bulk

8   shipment. Ex. A, Olivas Dep. Tr., 126:3-21, 128:23-129:1; Ex. B, Rich Dep. Tr.,

9   64:24-65:23. Distributors then load their trucks and begin to service customers.

10  Belander Dec., ¶¶ 6-9; Goro Dec., ¶¶ 6-10; J. Pena Dec., ¶¶ 6-10; R. Pena Dec., ¶¶

11  6-10; Russell Dec, ¶¶ 6-10; Zizzo Dec., ¶¶ 6-10; Ex. I. Distributors pull product from

12  their trucks as needed, sometimes in the same amount they ordered for that store, but

13  other times not. *Id*. This is the first time distributors select a specific product for a

14  specific customer. *Id.*

15       Additionally, distributors may realize they ordered too much or too little of a

16  product. In that case, the distributor will transfer product in or out from another local

17  distributor and/or seek help offloading product from Flowers' management. *Id.*; and

18  *see* Ex. B, Rich Dep. Tr., 85:13-86:1. At times, a piece of bread will not even make

19  it onto a retail shelf because the bread becomes damaged or is not needed. Belander

20  Dec., ¶¶ 6-9; Goro, J. Pena, R. Pena, Russell, and Zizzo Decs., ¶¶ 6-10.

21       **B.    Regulation and Registration of Transportation Activities**

22       It is undisputed that Flowers Foods, Inc. and Flowers California are not

23  registered with the FMCSA as motor carriers in any capacity. Ex. J, Flowers Foods

24  FMCSA; Ex. B, Rich Dep. Tr, 101-102. Flowers Henderson is a registered motor

25  private carrier with the FMCSA. Ex. K. Per its own reporting, Flowers Henderson's

26  operation as a motor private carrier is limited to 1 driver and 3 vehicles (i.e. they do

27  not count the many drivers in their motor carrier operations). *Id.* Flowers Henderson

28  also reports to the FMCSA that its activities over some periods are purely intrastate.

Ex. L. In short, Flowers' limited role as a motor private carrier has nothing to do with the distributors' activities and distributors do not fall within Flowers' FMCSA registration or reporting. Ex. B, Rich Dep. Tr., 114:7-115:23, 112:6-113:5, Ex. 5.

Plaintiffs and other distributors are not regulated by the Department of Transportation or any other federal agency as it relates to operating their routes. For example, they do not track their hours on the road or miles driven. They were not subject to any federal rest or non-driving time requirements. Nor did they maintain any sort of logs relating to these things. Flowers likewise never asked them to do these things. Belander, Goro, J. Pena, R. Pena, Russell, and Zizzo Decs., ¶¶ 2-4.

### C. Pull Up Days

Two days per week, Wednesday and Sunday, distributors do not receive fresh product to distribute, and instead perform merchandising services at retail locations in their territories using their smaller, personal vehicles. ECF Nos. 104-4, at 172:17-23; 104-5 at 140:10-20; 104-6 at 122:21-24; 104-7 at 108:24-109; 104-8 at 110:20-24; 104-9 at 103:14-17.  This usually involves moving products around within a store or taking products from one store to the other if needed. *Id.*

## III. <u>LEGAL STANDARD</u>

Summary judgment is proper only where the admissible evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56 ("Rule 56"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving papers fail to do so, the burden does not shift to the opposing party. *See* Rule 56 Advisory Committee Notes. Finally, courts must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## IV.   FLOWERS' SUPPORTING EVIDENCE SHOULD BE STRICKEN

Flowers' declarations warrant exclusion for several reasons. First, Defendants failed to disclose Diagle, Hughes, and Carter as witnesses. Second, Flowers failed to disclose and produce several documents incorporated into and/or attached to its declarations. *See* ECF Nos. 182-56, 182-57, 182-58, 182-59, 182-62, 182-63, 182-64, 183-1, and 186-1. This violates disclosure obligations under FRCP 26(a) and warrants exclusion under FRCP 37(c). It is inexcusable given the age of the case.

At summary judgment, evidence offered must be "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). It is Flowers' burden to prove admissibility. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).

Rule 26 requires parties to disclose (1) a description of documents in its possession that it may use to support defenses, and (2) the identity of all individuals with discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). This is a mandatory and ongoing requirement in federal court. *See* Fed. R. Civ. P. 26(e)(1)(A); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014). In turn, Rule 37(c)(1) forbids use of any undisclosed information required to be disclosed by Rule 26(a). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *accord Ollier*, 768 F.3d at 861. Courts may strike declarations from undisclosed witnesses offered at this stage. *Benjamin v. B & H Education, Inc.*, 877 F.3d 1139, 1150-51 (9th Cir. 2017).

Here, Flowers offers the declarations of Diagle (ECF No. 182-52), Hughes (ECF No. 182-54), and Carter (ECF Nos. 183, 186), but never disclosed these individuals as witnesses despite the October 4, 2018 fact discovery cutoff. *See* ECF No. 59 (setting cut off); *see* Markley Dec., Ex. M (Defendants' Rule 26(a) Disclosures). Without disclosures, Plaintiffs had no opportunity to depose these declarants or seek written discovery relating to their testimony such as the scope and extent of motor carrier operations. This is prejudicial. *See Medina v. Multaler, Inc.*, 547 F.Supp.2d 1099, 1105, n.8 (C.D. Cal. 2007).

1      Similarly, Flowers' supporting declarations summarize or cite to documents

2  that were not disclosed or produced prior to the discovery cutoff. *Compare* ECF Nos.

3  182-56, 182-57, 182-58, 182-62, 182-63, 182-64, 183-1, and 186-1 with Markley

4  Dec., Ex. M (Defendants' Rule 26(a) Disclosures). Summarizing documentary

5  evidence through declarations as a means of introducing the contents of the

6  documents into evidence constitutes hearsay and violates the best evidence rule. *See*

7  Fed. R. Evid. 1002; and *e.g.* Rich Decl., ECF No. 182-59, ¶¶ 10, 16 (these statements

8  blatantly draw on undisclosed documents, are hearsay, and violate the best evidence

9  rule).

10     Separately, Flowers' "Summary of Evidence" (ECF No. 182-53) supporting

11 its MPSJ violates CivLR 7.1(h) setting a maximum of 25 pages for moving papers.

12 The Court granted the parties' request for 5 additional pages (ECF No. 181), but

13 Flowers now seeks to gift itself an additional 11 pages (single spaced) to set forth

14 additional alleged points and facts. The Court should strike this filing.

15 **V.    ARGUMENT**

16     Flowers asserts a host of inapplicable defenses. Flowers leans heavily into

17 preemption arguments that apply, if at all, to transportation companies. But Flowers

18 is no transportation company.  It is a baking company subject to Wage Orders

19 applying to "manufacturers." Thus, these preemption defenses fail. Flowers also

20 asks the Court to apply a broad *federal* overtime exemption to *state* overtime claims.

21 Under the proper framework, Plaintiffs are not exempt. Flowers also fails to meet

22 the federal overtime standard even if applied. Finally, there are no "manageability"

23 requirements in PAGA actions like this one, but even if there were, this case is ripe

24 to proceed to trial. Thus, the Court should deny each of Flowers' requests for relief.[1]

25

26 _____

27 [1] Plaintiffs do not seek reimbursement for the cost to acquire their vehicles mooting
Section IV(C) of Flowers' MSJ. Plaintiffs reserve their rights to seek reimbursement
for the costs relating to operating their vehicles during the course of their
28 employment with Flowers like fuel, maintenance, insurance, mileage, depreciation,
and the like.

## A.   Flowers' Preemption Arguments Fail

Flowers raises three preemption defenses: (1) that the FMCSA preempts meal and rest break claims; (2) that FAAAA preempts application of the ABC test; and (3) that the FTC Franchise Rule and Lanham Act preempt application of the ABC test. Each defense fails.

### 1.   *FMCSA Preemption Does Not Reach This Case or Apply to All Meal/Rest Claims at Issue Even if it Did*

The FMCSA exercised its power to preempt *certain* California meal and rest break laws. However, this does not warrant summary judgment on meal and rest claims in this lawsuit for several reasons.

In December 2018, the FMCSA determined that "California may no longer enforce **the MRB Rules** with respect to drivers of property-carrying CMVs **subject to FMCSA's HOS rules**."[2] (Emphasis added.) "MRB Rules" are defined as California Labor Code section 512, 516, and 226.7, as well as **Wage Order 9** addressing the Transportation Industry (i.e. 8 CCR § 11090). FMCSA Preemption Determination at *67470-71.

Plaintiffs' meal and rest claims survive here because they fall under Wage Order 1 (i.e. 8 CCR § 11010(11)(12)) which is not preempted as a MRB Rule. *Id.* Flowers admits it is subject to Wage Order 1. Flowers MSJ, 9 at fn. 4.[3]  Flowers'

---

[2] California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption (Dec. 28, 2018), 83 FR 67470-01, at *67480, available at 2018 WL 6809341 ("FMCSA Preemption Determination").

[3] While there is no private right of action under the Wage Orders, meal and rest premiums are wages and wages are recoverable under Labor Code sections 1194 and 218. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1103 (2007) (recognizing meal and rest premium pay as a wage); and see e.g. *Kamar v. RadioShack Corp.*, No. CV07-2252AHM(AJWX), 2008 WL 2229166, at *8 (C.D. Cal. May 15, 2008) (construing section 218 broadly as permitting a private right of action to recover "wages of any kind" permitted by California law). The FMCSA did not purport to preempt this manufacturing Wage Order or these Labor Code provisions enabling recovery of unpaid meal and rest premium wages for manufacturing workers.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

request that this Court extend the preempted MRB Rules to include *all* Wage Orders runs afoul of the plain language of the preemption determination as well as the presumption against preemption and the corresponding need to narrowly construe preemption. *See e.g. Capp v. Nordstrom, Inc*., No. 2:13-CV-00660-MCE-AC, 2013 WL 5739102, at *12 (E.D. Cal. Oct. 22, 2013).

Additionally, as explained in Section V(B)(1), *infra*, Plaintiffs were not actually subjected to Hours of Service rules – another limitation on the reach of the FMCSA Preemption Determination, and they do not operate in interstate commerce. Similarly, certain days per week (e.g. pull up days), Plaintiffs did not operate large vehicles – another requirement for preemption under the FMCSA Determination. *See* Section V(B)(2)(a), *infra*. Flowers' argument focuses on *typical* use of larger vehicles but does not address FMCSA preemption on pull up days. *See* Flowers MSJ, 16-17. Meal and rest claims survive, at a minimum, for these days.

Still further, the FMCSA Preemption Determination has no impact on meal and rest claims accruing prior to December 28, 2018, when the FMCSA made its determination. The text of the FMCSA Preemption Determination does not purport to apply retroactively and courts do not construe administrative rules retroactively. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-09 (1988); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("the presumption against retroactive legislation" is "deeply rooted in our jurisprudence.").[4] Flowers provides no evidence of the FMCSA's ability or intent to retroactively eliminate meal and rest claims predating December 2018.

    *2.*    *FAAAA Preemption Is Limited to Transportation Companies, It Does Not Apply Here*

Flowers asserts that, because one defendant is purportedly a motor private carrier, the ABC test cannot apply here based on so-called FAAAA preemption.

---

[4] The Ninth Circuit declined to address the retroactive application of the FMCSA Preemption Determination. *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 858 at fn. 5 (9th Cir. 2021).

1   Flowers MSJ, 23-25. But Flowers does not fall within the ambit of FAAAA nor does

2   FAAAA preempt wage laws applicable to manufacturing companies.

3        Flowers declares that every company meeting the definition of motor private

4   carrier (49 U.S.C. § 13102(15)) falls within the economic regulations of motor

5   carriers and is therefore protected from laws relating to their prices, routes, or

6   services under FAAAA. Flowers MSJ, 23-24. This is wrong. As explained in more

7   detail in Plaintiff's MSJ (ECF No. 171-1, 17-24), the economic regulation of motor

8   carriers, including FAAAA (49 U.S.C. § 14501), only applies to transportation

9   companies, like aviation companies. *See* 49 U.S.C. § 13505(a) and (b) (excluding

10   from Part B of Subtitle IV of Title 49 – the same Part capturing the definition of

11   "motor private carrier" and promulgating FAAAA – non-transportation companies

12   that happen to transport property in furtherance of their business, or the business of

13   their parent companies); and *see e.g. A.G.G. Enterprises, Inc. v. Washington Cty.,*

14   *Or.*, 145 F. Supp. 2d 1215, 1224 (D. Or. 2001) (FAAAA preemption unavailable to

15   a company where its primary business was not transportation). Flowers concedes it

16   is not a transportation company. Flowers MSJ, 9 at fn. 4. Flowers cites zero case law

17   or other authorities where a non-transportation company is subject to FAAAA

18   preemption.

19        Even if non-transportation companies fell within the FAAAA's ambit, there

20   is no precedent for preempting manufacturing industry wage and hour protections.

21   Plaintiffs claims under Wage Order 1 (manufacturing) and related Labor Code

22   provisions are more than just "generally applicable," they are expressly applicable

23   only to the manufacturing industry and inapplicable to the transportation industry,

24   which has its own *separate* Wage Order (No. 9). *See Dilts v. Penske Logistics, LLC*,

25   769 F.3d 637, 646-647 (9th Cir. 2014) (generally applicable laws not preempted).

26   Employment regulations are also an exercise of traditional state police power and

27   there is, thus, a heightened presumption against preemption. *Dilts*, 769 F.3d at 643

28   (there is a "presumption against the pre-emption of state police power regulations.").

Given their distance from the transportation industry, Flowers cannot prove preemption of Wage Order 1 or related Labor Code provisions in this case.[5]

Separately, Flowers has introduced no evidence to meet its burden to show a significant impact on its business if the ABC test applies. *See e.g. Ward v. United Airlines, Inc.*, 2021 WL 345578, at *7 (9th Cir. Feb. 2, 2021) (insufficient evidence by the defendant seeking preemption). Instead, Flowers contends the impact on its prices, routes, or services should be inferred or "obvious." Flowers MSJ, 25. But inferences are to go *against* Flowers on this motion, not in their favor, and the only "obvious" proposition here is that, as employees, Plaintiffs would receive more money like reimbursement for expenses and overtime. Yet increased costs alone do not trigger preemption. *Ward*, 2021 WL 345578 at *7; *Dilts*, 769 F.3d at 646-47. This lack of impact distinguishes this case from other situations where courts find FAAAA preemption of Prong B. For example, some transportation companies have, for the moment, successfully alleged that they would have to set up vast networks to interface with and treat independent contractors as employees. *Compare e.g. California Trucking Ass'n v. Becerra*, 433 F. Supp. 3d 1154, 1170 (S.D. Cal. 2020) (harm because the companies "must significantly restructure their business model, including by obtaining trucks, hiring and training employee drivers, and establishing administrative infrastructure. . . ."). However, here we know that Flowers already has infrastructure in place to hire, train, and manage distributors. *See* Plaintiff's MSJ, § II(B) (detailing Flowers' business model which already includes hiring and training distributors who have their own trucks and an administrative infrastructure for distributors akin to a typical HR department). Thus, faithful application of Prong B and a determination that Plaintiffs are employees would have little impact on

---

[5] Even as applied to Wage Order 9 addressing the transportation industry, California's Second District Court of Appeals recently found no FAAAA preemption of the ABC test in light of its general applicability and lack of direct impact on prices, routes, or services of motor carriers. *Parada v. E. Coast Transp. Inc.*, No. B296566, 2021 WL 1222007, at *6 (Cal. Ct. App. Mar. 26, 2021).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Flowers' business aside from the above-mentioned increased costs.   There is at least a triable question in this regard.

Lastly, Flowers disclaims a necessary element to achieve "private motor carrier" status: ownership over the product being transported. *Compare* 49 U.S.C. § 13102(15) *with* Schoenewald Declaration,  ¶¶ 6-7 (denying Flowers' ownership of the products when Distributors carry out their work) available at ECF No. 104-2. This alone is fatal.

3.      *Neither the FTC Act nor the Lanham Act Preempt the ABC Test*

Next, Flowers claims that Congress intended to preempt California's ABC test for employment status by enacting pre-franchise disclosure regulations and trademark statutes. Flowers MSJ, 25-28. The Court should reject Flowers' briefly stated and novel argument.

a.      **Flowers Misstates That There Is a Franchise Relationship**

Flowers assumes that there is an actual "franchise" relationship here that federal law has an interest in preserving to the exclusion of an employment relationship.  Flowers is wrong again and this time it ignores the plain language of its own Distributor Agreement. Flowers MSJ, 25-26. Flowers DA is governed by California law. See. Ex. L to Plaintiff's MSJ, available at ECF No. 171-14, § 20.14. The DA plainly states the "status of DISTRIBUTOR pursuant to this Agreement is that of common law independent contractor. . . ." *Id.* at § 16.1; and *see id.* at p. 1 ("DISTRIBUTOR is an independent contractor. . . .").

In California, the unilateral labels assigned by Flowers do not control. Instead, California's test for employee status "presumptively considers all workers to be employees" with the burden falling on the hiring entity to prove lack of an employment relationship. *Dynamex*, 4 Cal. 5th at 955; and *see id.* at 930 (there is "a general presumption that any person 'in service to another' is a covered 'employee.'") (citing *Borello*, 48 Cal.3d at p. 354); and *id.* at 962 (labels do not

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

control). Thus, under the plain terms of its DA, Flowers did not create a "franchise relationship;" instead, it attempts to create a common law independent contractor relationship, but by hiring a worker to perform services, Flowers presumptively established an *employment* relationship under California law. Mr. Rich's declaration – the sole "fact" Flowers relies on to demonstrate a franchise relationship – cannot rewrite the plain terms of the DA or sustain Flowers' burdens on this motion.  Thus, as a threshold matter, Flowers' FTC and Lanham Act preemption arguments fail because Flowers cannot meet its burden to show a "franchise relationship" as a matter of law.

### b.    Obstacle Preemption Requires a Clear and Manifest Intent to Preempt State Law

Obstacle preemption does not save Flowers.  Courts evaluating implied obstacle preemption must look to the text and structure of the federal statute at issue to identify Congress' objectives and then assess how the state law at issue stands as a real obstacle to that objective. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020). Federal laws presumptively do not preempt state laws; this presumption is only overcome where there is a "clear and manifest purpose of Congress" to supersede the state legislation. *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015). Importantly, a preemption analysis does not invite "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives;" rather, "there is high threshold [that] must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011). Finally, "a saving clause [e.g. where Congress states an intent not to preempt state law] raises the inference that Congress did not intend to preempt state law. . . ." *In re Volkswagen*, 959 F.3d at 1213.

Flowers falls far short of its burden to establish a clear and manifest intent of any federal law to preempt California's wage per hour regulation of hiring entities.

         **c.**    **FTC Preemption Fails Because Congress Has No Intent to Regulate the Franchise Relationship**

Flowers' FTC preemption arguments hinge on the false notions that (1) the FTC codified and/or regulates the substance of the franchise relationship and (2) that the FTC intends its substantive regulation of the franchise relationship to eliminate state wage protections for "franchisees." Both are false.

        *i.*    *Congress' Involvement with Franchising Is Very Limited and Provides Just Minimum Protections to Bona fide Franchisees. Franchise Laws Do Not to Enable Franchisors to Control Workers*

Substantively, the FTC Act, authorizing creation of the FTC Franchise Rule, aims to protect consumers - it does not grant substantive rights to large corporations. *See* 15 U.S.C. § 45(a)(1)(2) (The purpose of the Act is protection of consumers and others from "[u]nfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce."). The FTC Act has savings clauses; it expressly states an intent **not** to preempt or defeat any other law, including state law. 15 U.S.C. § 57b(e) (The FTC Act's remedies "are in addition to, and not in lieu of, any other remedy or cause of action provided by State or Federal law."). This is an important, and unmentioned fact within Flowers' analysis because "a federal agency may pre-empt state law only when and if it is acting within the scope of its congressionally delegated authority". *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). The FTC Act's stated intent to create non-exhaustive consumer protections without excluding other state remedies vastly undercuts Flowers' preemption claims which turn on Congress' intent.

Pursuant to the FTC Act's authority, the FTC trade regulations relating to franchising set forth basic *pre-franchise* disclosure requirements that franchisors must provide to *prospective* franchisees. 16 C.F.R. §§ 436.1 et seq. The FTC regulations grant no affirmative rights to franchisors and do not purport to govern or define the actual substance of a franchise relationship once entered. *Id.* Otherwise

1  stated, the FTC's original franchising regulations did "not purport to regulate the

2  substantive terms of the franchise or business opportunity relationship. Rather, it

3  required franchisors and business opportunity sellers to disclose material

4  information to prospective purchasers. . . ." Disclosure Requirements and

5  Prohibitions Concerning Franchising, 72 FR 15444-01, 15445. In 2007, franchisees

6  asked the FTC to enact greater protections governing the franchise relationship once

7  entered. *See id.* at 15447. However, the FTC "decline[d] to attempt to promulgate a

8  franchise relationship law. . . ." *Id.* at 15451. Likewise, the FTC's Chairman recently

9  confirmed that the FTC "does not regulate the substantive terms of the franchisor-

10  franchisee relationship." See RJN; Ex. N (PLTFS3238-3239), Letter from Joseph

11  Simons, Chair of Federal Trade Commission, at 1.

12     The FTC regulations, much like the FTC Act, make clear Congress has no

13  objectives with respect to how the actual franchisor-franchisee relationship will

14  function following required pre-franchising disclosures. These regulations, too, are

15  a minimum set of non-exhaustive franchisee remedies. 16 C.F.R. § 436.10.

16
17
       ii.   *California's Extension of Wage Protections to Purported Franchisees Does Not Stand as an Obstacle to the FTC's Regulation of Franchising*

18     Despite this legislative backdrop, Flowers contends that California's

19  extension of wage protections to workers controlled by a hiring entity stands as an

20  obstacle to the FTC's purported desire for franchisors to be able to control

21  franchisees in the course of their substantive relationship without establishing an

22  employment relationship. This argument misses the mark.

23     The FTC's regulation of pre-franchising disclosures to protect prospective

24  franchisees and explicit choice *not* to regulate the franchise relationship thereafter

25  proves Congress has no "manifest" and clear intent to preempt states' ability to

26  regulate the substantive relationship between hiring entities and workers. *McClellan*,

27  776 F.3d at 1039. Simply put there can be no tension, let alone tension sufficient to

28  overcome the presumption against preemption, where Congress has intentionally

1   avoided regulating the conduct of a franchise relationship. That California has

2   passed labor laws – like every other state - to mandate wage protections for workers,

3   does not stand as an obstacle to any federal objective.

4                                *iii.*     *The Ninth Circuit, Among Others, Rejects Flowers'*

                                            *Plea to Treat "Franchisors" Separately for Wage*

5                                               *Per Hour Laws*

6        While wrapped in preemption dressing, Flowers' request for special treatment

7   as a "franchisor" has been all but put to rest in this and other Circuits.

8        Implicit in Flowers' preemption argument is the notion that by throwing

9   around the word "franchise," it is entitled to some sort of special deference or safety

10  from traditional "control tests" for employment status (e.g. because it supposedly

11  needs to control and protect trademarks). Flowers, however, ignores the Ninth

12  Circuit's recent instructions to lower courts applying the same ABC test to

13  franchisees. The Ninth Circuit rejected franchisor and franchising industry efforts to

14  water down the ABC test in light of the allegedly "special features of the franchise

15  relationship" that Flowers cites here -  namely the purported need to control

16  franchisees and protect the franchisor's brand through controls.  *Vazquez v. Jan-Pro*

17  *Franchising Int'l, Inc*., 986 F.3d 1106, 1122 (9th Cir. 2021) (no franchising "gloss"

18  applicable to employment tests). The Ninth Circuit, as well as other Circuits, have

19  equally rejected Flowers' and others' hyperbolic claims that the ABC test is a death

20  knell for franchising considering the "necessity" of controlling franchisees. *Id.* at

21  1110 (noting the IFA's "death knell" argument, but nonetheless applying the ABC

22  test to franchisees); and *see e.g. Williams v. Jani-King of Philadelphia Inc.,* 837 F.3d

23  314, 325 (3d Cir. 2016) ("no special treatment is accorded to the franchise

24  relationship [under Pennsylvania's ABC test]. A franchisee may be an employee or

25  an independent contractor depending on the nature of the franchise system

26  controls.").

27       Flowers relies on *Patel v. 7-Eleven, Inc*., No. 1:17-cv-11414-NMG, 2020 WL

28  5440623, at *640 (D. Mass. Sept. 10, 2020) but this decision is out of line with this

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Circuit's approach to the ABC test and franchising. It is also distinguishable and
2    unpersuasive for several other reasons. First, *Patel* is on appeal (appellate case No.
3    20-1999). Second, defendant Jan-Pro and the franchise lobby extensively but
4    unsuccessfully relied on *Patel* in supplemental briefing put in front of the Ninth
5    Circuit prior to its issuance of its decision in *Vazquez*. *See* RJN; Ex. O. *Patel's*
6    reasoning failed to move the Ninth Circuit as it instructed the lower court to apply
7    the ABC test to the defendant franchisor. Still further, courts in this circuit have
8    distinguished *Patel* based on its use of a "franchise gloss" that is out of touch with
9    *Vazquez*. *Fleming v. Matco Tools Corp.*, No. 19-CV-00463-WHO, 2020 WL
10   6461327, at *4, fn. 1 (N.D. Cal. Nov. 3, 2020). This Court should also ignore this
11   questionable out of state district court decision.

12                          **d.    Lanham Act Preemption Fails**

13       Flowers' cursory hybrid FTC-Lanham Act preemption argument also fails.
14   Flowers manufactures a "direct conflict" in two steps. First, it asserts that the FTC
15   regulations require franchisees to receive use of the franchisor's marks. As explained
16   above, this is not true because the FTC has refused to substantively define or regulate
17   the franchise relationship. Because there is no substantive federal regulation of
18   franchising, this argument warrants no further consideration.

19       Second, Flowers contends that franchisors must control use of their marks or
20   else risk losing rights because of abandonment. This is precisely the type of
21   freewheeling search for tension that fails to establish the necessary level of conflict
22   to trigger preemption. *Whiting*, 563 U.S. at 607. Importantly, under the proper
23   preemption analysis, the Ninth Circuit rejected a similar argument, holding as a
24   matter of law that the Lanham Act did not preempt a minimum wage ordinance. *Int'l*
25   *Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 409-10 (9th Cir. 2015). The court
26   reasoned that the Lanham Act "does not discuss the regulation of wages or
27   employment conditions or establish that classifications based on trademark use are
28   impermissible." *Id.* at 409. The Ninth Circuit further noted that "[h]ere, we assess a

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  field of traditional state regulation, minimum wages to be paid to employees, and

2  the text of the Lanham Act does not indicate an intent to preempt such an ordinance."

3  *Id.* at 410. Because the objectives of the Lanham Act have nothing to do with

4  employment conditions or wages, Flowers cannot show how California's decision

5  to grant certain wages to workers controlled by a hiring entity stands as an obstacle

6  to the Lanham Act's goals. *Id.*

7      Still further, "control" does not mean the same thing under *Dynamex* Prong A

8  and the Lanham Act. Prong A asks whether the worker "is subject, either as a matter

9  of contractual right or in actual practice, to the type and degree of control a business

10  typically exercises over employees." *Dynamex*, 4 Cal. 5th 903 at 958. Controls

11  sufficient to avoid abandonment of marks under the Lanham Act, on the other hand,

12  can be rather informal and minimal so long as they avoid deceiving the public. *Hokto*

13  *Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013). Consistent

14  with this, in Plaintiff's MSJ regarding employment classification, Plaintiff argues

15  that Flowers controls distributors under Prong A and *Borello* based on several

16  sections of the Distributor Agreement that have nothing to do with trademark

17  maintenance. *See* Plaintiff's MSJ, 13-14 (arguing, among other things, that Sections

18  2, 5, 14, and 17 of the Distributor Agreement trigger Prong A control). Indeed,

19  Flowers separately addresses trademark controls and brand maintenance in Section

20  19 of the DA. This is not cited as control evidence for purposes of Prong A. *Id.*

21      In short, the Lanham Act's intended purpose of protecting consumers and fair

22  competition has nothing to do with employment classifications.  California is not

23  interfering with trademarks and competition by passing minimum wage laws.

24  Separately, the Lanham Act's minimum controls to maintain trademarks are not

25  synonymous with the control that employers typically hold over an employee under

26  Prong A, i.e. the two can coexist together, not as obstacles to one another.

**B.    Plaintiffs State Valid State Overtime Claims**

Courts broadly construe worker protections like overtime and interpret exemptions narrowly. *Alvarado v. Dart Container Corp. of California*, 411 P.3d 528, 539 (Cal. 2018). Despite this, Flowers erroneously asks the Court to apply a broader federal (FLSA) overtime exemption to Plaintiffs' *state* overtime claims. The Court should not apply this test, nor should it grant Flowers' motion even if applied.

*1.    Flowers Misstates the Overtime Standard under California Law, This Is Fatal to Its Requested Relief*

The Court should reject Flowers' invitation to apply a broader federal overtime exemption. As a general matter, California's protections for overtime work are broader than federal overtime protections. Likewise, federal law does not displace California law on this topic.  *Alvarado*, 4 Cal. 5th at 553. Specific to overtime exemptions, this is equally true. While federal law exempts overtime where the worker is "subject to" regulation by federal transportation authorities, California exempts only those actually "regulated by" federal transportation authorities. *Watkins v. Ameripride Servs.,* 375 F.3d 821, 830 (9th Cir. 2004) (Fletcher, concurring) ("Read literally, the scope of the exemption under [California law] appears to extend no farther than the actual regulation of driver hours. . . .").

Plaintiffs are not exempt under California law.  Flowers presents no evidence that Plaintiffs are regulated by federal transportation agencies. In fact, no federal authority ever regulated Plaintiffs' vehicle operations.  Belander, Goro, J. Pena, R. Pena, Russell, and Zizzo Decs., ¶¶ 2-4[6]; *cf. Watkins*, 375 F.3d at 830-31 (Fletcher,

---

[6] Relevant DOT regulations: set maximum driving hours (daily and over several days) and impose rest break requirements (49 C.F.R. § 395.3); require certified record keeping procedures of hours and miles driven and record retention policies, along with compliance penalties (§ 395.8); and mandate that certain records reflecting hours and miles driven be provided to the motor carrier (§ 395.11).

1  concurring) (noting that the plaintiff's declaration regarding lack of DOT regulation

2  over his work could be evidence that he is not overtime exempt).[7]

3      2.   *Lack of Interstate Commerce Further Sinks Flowers Bid to Eliminate Overtime Liability*

4

5      Even applying the federal standard, Flowers is not entitled to summary

6  judgement on overtime claims. Employees over whom the Secretary of

7  Transportation has power under 49 U.S.C. section 31502 are exempt. See 29 U.S.C.

8  § 213(b)(1). This power depends on the "class" of the employer – i.e. is the employer

9  acting as a motor carrier or motor private carrier subject to regulation – and the

10  "class" of the employee's work – i.e. do the employee's activities directly affect the

11  operation of interstate commerce. See 29 C.F.R. § 782.2.

12      a.   **Flowers Depiction of Pull Up Days Eliminates Summary Judgement**

13

14      Flowers' position[8] that at least two days per week – the "pull up" days –

15  Plaintiffs do not engage in interstate commerce is at odds with its request for

16  summary judgement on overtime claims predicated on interstate carriage of goods.

17  *See* Flowers' MSJ at 14-15 (arguing pull up days are intrastate commerce) and at 11

18  (acknowledging overtime exemptions require interstate carriage). Courts addressing

19  workweeks involving some overtime exempt days and some non-exempt days have

20  refused to eliminate overtime for non-exempt days. *See e.g. Gomez v. Lincare, Inc.*,

21  173 Cal. App. 4th 508, 517-19 (2009), *as modified* (Apr. 28, 2009); and *Wamboldt*

22  *v. Safety-Kleen Sys., Inc.,* No. C 07-0884 PJH, 2008 WL 728884, at *9 (N.D. Cal.

23

24  ---

25  [7] Flowers Henderson's registration with the FMCSA for "motor carrier" status, confirms this has nothing to do with distributors like Plaintiffs. Ex. I, Rich Dep. Tr.,

26  114:7-115:23, 112:6-113:5, Ex. 5.

27  [8] Plaintiffs are not adopting Flowers' view of the interstate versus intrastate nature of the work performed on pull up days. Plaintiffs merely note that, as the party with the burden of proof at this Motion for Summary Judgment stage, Flowers cannot

28  prevail on overtime exemptions under the facts and theories it presents to the Court.

1  Mar. 17, 2008). Thus, even if Flowers' convenient definition of where interstate
2  commerce starts and stops is taken as true, summary judgement is not appropriate.
3  **b.   Non-Pull Up Days Are Not Interstate Either**
4      Flowers did not meet its burden to "plainly and unmistakably" establish that
5  Plaintiffs operate in interstate commerce on non-pull up days. *Worthington v. Icicle*
6  *Seafoods, Inc.*, 774 F.2d 349, 352 (9th Cir.1984), *vacated in part on other grounds*,
7  475 U.S. 709 (1986) (addressing Flowers' burden of proof).
8      Interstate versus intrastate commerce must be determined by assessing the
9  "essential character of the commerce. . . ." *Veney v. John W. Clarke, Inc.*, 28 F. Supp.
10  3d 435, 443 (D. MD 2014) (*citing Atlantic Coast Line Ry. Co. v. Standard Oil Co.*
11  *of Kentucky*, 275 U.S. 257, 268 (1927)). "Whether transportation is interstate or
12  intrastate is determined by the essential character of the commerce, *manifested by*
13  *shipper's fixed and persisting transportation intent at the time of the shipment*[.]"
14  *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1468 (9th Cir. 1997) (quoting *Southern Pac.*
15  *Trans. Co. v. ICC*, 565 F.3d 615, 617 (9th Cir. 1977) (emphasis in original). *United*
16  *States v. Majure*, 162 F. Supp. 594, 601 (S.D. Miss. 1957) aptly summarizes this
17  subtle yet crucial component of shipper intent:

18
19  > The intent of the shipper is, of course, his present as distinguished from
20  > his ultimate intent. As a practical matter of business, any time a shipper
21  > moves products to a terminal his ultimate intent is that they be
>  distributed among various consumers at various consuming points. If
>  this is the only intention, the interstate journey ordinarily ends at the
>  terminal.

22  *See also Veney v. John W. Clark Inc.*, 28 F. Supp. 3d 435, 443 (D. Md. 2014)
23  ("[m]ere contemplation that property may be shipped from where it was delivered
24  does not amount to an original, persisting intention of a shipper that property is, in
25  fact, to be shipped to another place.").
26      Our Ninth Circuit summarizes the interstate-intrastate dichotomy similarly:
27  > [I]if a company places orders with an out-of-state vendor for delivery
28  > to **specified intrastate customers**, a temporary holding of the goods
>  within an intrastate warehouse for processing does not alter the

20                                    17-CV-02580-TWR-JLB
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

> interstate character of the transportation . . . . If, on the other hand, a company places orders with an out-of-state vendor, with delivery to the company's intrastate warehouse **for future delivery to customers yet to be identified**, the transportation chain culminating in delivery to the customer is considered intrastate in nature.

*Watkins v. Ameripride Servs.*, 375 F.3d 821, 826 (9th Cir. 2004) (emphasis added).

Similarly, in a two-shipper context, in assessing the intent of the first interstate shipper-seller, courts refuse to find sufficient fixed and persistent intent creating interstate commerce where, like here, that shipper-seller has no intent to transport the products farther than another company's storage facility and has no role in determining the ultimate destination of the products. *Progressive Cas. Ins. Co. v. Hoover*, 570 Pa. 423, 443–44, 809 A.2d 353, 365–66 (Pa. 2002); and *see Masson v. Ecolab, Inc.,* No. 04 CIV. 4488(MBM), 2005 WL 2000133, *6 (S.D.N.Y. Aug. 17, 2015) (no summary judgment where no customer identified at time of shipment).

Courts also find the "lack[] [of] any legal or institutional connection to the interstate movement of passengers or goods" as weighing against the practical continuity of movement in interstate commerce even where the services of an intrastate operator sometimes coincide with the end point of a previous interstate journey. *Packard v. Pittsburgh Transp. Co.,* 418 F.3d 246, 255 (3d Cir. 2005).

The following facts demonstrate a lack of the required "fixed and persisting intent" to ship the goods to a specific customer such that the transportation Plaintiffs carry out is not truly interstate:

1. Plaintiffs and other distributors assess need for various products at all locations within their route and then place total orders per product by tray with Flowers Henderson (p. 1:27-2:7, *supra*);

2. For products baked by out-of-state bakeries, Flowers Henderson relays a bulk order to the out-of-state bakery for production within the reciprocal baking network (p. 2:8-20, *supra*);

3. Out of state bakeries ship the products using a third-party transportation company to Flowers Henderson's Fontana, California distribution center without any knowledge of the products ultimate destination (distributor or retailer) and title passes to Flowers Henderson (p. 2:19-3:9, *supra*);

4. Flowers Henderson divides up bulk or wholesale orders and uses a third-party transportation company to ship products to each local warehouse - again without any knowledge of the products' ultimate destination (distributor or retailer) (p. 3:6-9, *supra*);

5. A third-party company (ABM) breaks the wholesale order down per distributor at the local warehouses without specifying what end retailer will receive the product; Flowers asserts title passes to distributors only at this time (*see id.*);

6. Distributors drive to retail locations and determine the number and specific products to be placed on shelves for consumer purchase, the first instance in which a specific customer is identified (p. 3:9-14, *supra*);

7. Distributors may transfer products between one another and/or may never use a given product - again showing that there there was no original order from a particular distributor for a particular customer that was made specifically as part of the wholesale or bulk order (p. 3:15-20, *supra*).

In short, in this multi-shipper context, when the out of state wholesale orders come into California, at the Fontana warehouse, the following remain unidentified or unassigned: which local warehouse will receive the products, which distributor at the warehouse will receive the products, and which customer, if any, the distributor will ultimately give the product to. On several levels, this is the exact type of *intra*state transportation with "future delivery to customers yet to be identified" discussed in *Watkins*, 375 F.3d at 826. It is true, as Flowers notes, that each bakeries likely knows that the products they ship interstate are headed for some out-of-state sorting center, local warehouse, distributor, and then retail customer, but this is true every time a business ships any products out of state and it cannot forever keep the goods in the stream of interstate commerce. *Majure*, 162 F. Supp. at 601; *Veney*, 28 F. Supp. 3d at 443. The fact that the out-of-state bakeries fulfill bulk or wholesale orders from warehouses (as opposed to distributor or retailer-specific orders), deliver and pass title to Flowers Henderson, rather than directly to any distributor, further create triable issues as to any fixed and persisting intent beyond the distribution center or local warehouse, as does the lack of these entities' control over actual division (or even shipment) of the goods at the warehouse (accomplished by the splitter) and/or actual division of the goods by the distributor at various retail

1   locations. *See Hoover*, 570 Pa. 423, 443–44, *citing Atlantic Coast Line R.R. v.*

2   *Standard Oil Co*., 275 U.S. 257, 269 (1927). The "fungible" nature of the goods (e.g.

3   that they must be consumed quickly) cannot vest the shippers with the type of fixed

4   and persisting intent necessary for interstate transportation here as Flowers asserts.

5       Further, the distributors are completely uninvolved in the only transaction

6   involving interstate commerce – the wholesale purchase and reciprocal baking

7   agreement between the Flowers bakeries like Henderson and Modesto. *Cf. Packard*,

8   418 F.3d 246, 255.

9       Further still, in other contexts, Flowers readily concedes its distributors

10  operate *intrastate* only, *see* Flowers Opening Brief in the *Martins v. Flowers* matter,

11  available at ECF No. 171-41:

12      • Distributors carry out "a wide array of intrastate responsibilities; they
         are not interstate truck drivers." (at 4);

13      • "To the extent that Plaintiffs transport goods, they do so only within
         specifically defined regions." (at p. 37)

14

15      These additional facts also reveal why the cases cited by Flowers are of little

16  value. The journey of these goods does not merely make a convenient intermediate

17  stop in an otherwise seamless interstate journey. *See Walling v. Jacksonville Paper*

18  *Co.*, 317 U.S. 564, 567, 568 (1943). Nor do distributors place orders with an out-of-

19  state manufacturer who then specifically earmarks and ships those products to an out

20  of state warehouse for distributors to pick up for predetermined customers. *See*

21  *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993) (plaintiff orders

22  direct from an out-of-state vendor who ships to plaintiff specifically designated

23  products based on that order); *McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470,

24  472 (S.D.N.Y. 2000) (distributors order directly from out of state bakery and receive

25  direct delivery at a warehouse). Requisite interstate commerce is lacking.

26      Still further, the conclusory statements in the Rich declaration fail to prove

27  that the intent of the out-of-state bakeries plainly and unmistakably brings Plaintiffs'

28  intrastate activity within the stream of interstate commerce. *See Saldibar v. Delray*

1  *One, Inc.*, No. 07-80608-CIV, 2008 WL 755265, at *4 (S.D. Fla. Feb. 20, 2008)
2  ("general averments" insufficient to show shipments intended for a specific out of
3  state destination); *Mazzarella*, 823 F.3d at 793.

4      **C.**     **There are triable PAGA Claims**

5      The Ninth Circuit, the California Supreme Court, and this District all agree
6  that PAGA actions are *not* Rule 23 class actions. Therefore, there is no
7  "manageability" requirement for PAGA. Even if there were, Plaintiffs satisfy it.

8      *1.*    *Rule 23 Does Not Apply to PAGA Claims*

9      The manageability inquiry Flowers speaks of comes from Rule 23(b)(3)(D)'s
10  statement that courts consider "the likely difficulties in managing a class action"
11  before certifying a case that seeks damages. *Eisen v. Carlisle and Jacquelin*, 417
12  U.S. 156, 164 (1974). But PAGA cases are not class actions. Rather, PAGA permits
13  an aggrieved employee to recover set civil penalties under the Labor Code as a
14  private attorneys general. Cal. Lab. Code § 2699(a), (c); and *see Arias v. Superior*
15  *Court*, 46 Cal. 4th 969, 986-87 (Cal. 2009) (PAGA actions are a substitute for actions
16  brought by California's government). Otherwise framed, PAGA is a *qui tam* action
17  designed to benefit the public and relieve overburdened government agencies.
18  *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 382 (Cal. 2014).

19      The California Supreme Court and the Ninth Circuit confirm the difference
20  between class actions and PAGA actions. *See, e.g., Arias*, 46 Cal. 4th at 982-84 (state
21  class procedures do not apply); *Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425,
22  435 (9th Cir. 2015) (contrasting PAGA and Rule 23 actions); *Baumann v. Chase Inv.*
23  *Servs. Corp.,* 747 F.3d 1117, 1121-1123 (9th Cir. 2014) ("Rule 23 and PAGA are
24  more dissimilar than alike."); and *see Alcantar v. Hobart Serv.,* No. ED CV 11-1600
25  PSG, 2013 WL 146323, at *2-3 (C.D. Cal. Jan. 14, 2013) (summarizing cases).

26

27

28

2.      *There is No Other Basis for a "Manageability" Requirement. And Adding One Would Thwart PAGA's Purpose.*

Importantly, the Labor Code provisions that codify PAGA contain no manageability element whatsoever. Cal. Labor Code, § 2699. Again, PAGA is *not* a class action and certification of a class is not a prerequisite to a successful PAGA case. *Sakkab,* 803 F.3d at 429; *see also Williams v. Superior Court.,* 3 Cal. 5th 531, 559 (2017) (demonstrating how PAGA penalties are easier to obtain than class recovery of wages). As such, most courts, including those in this District, hold that there is no "manageability" requirement for PAGA. *See Rincon v. W. Coast Tomato Growers, LLC*, 13-CV-02473 W (KSC), 2016 WL 11620827, at *10 (S.D. Cal. July 11, 2016) (Whelan, J.) (". . . this Court agrees with those district courts that have refused to impose the [manageability] requirement as inconsistent with the purpose of the act."); *Jordan v. NCI Grp., Inc*., No. EDCV161701JVSSPX, 2017 WL 1821122, at *5 (C.D. Cal. Mar. 22, 2017) (summarizing additional cases). Judge Whelan, in *Rincon,* also cited *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 958-60 (C.D. Cal. 2015). In *Zackaria*, the court correctly found manageability imposes a barrier that the state law agency does not face when it litigates cases, and as such "the fact that proving [plaintiff's] claim may be difficult or even somewhat burdensome for himself and for defendant does not mean that he cannot bring it at all." *Zackaria* at 959.[9]

---

[9] *See Valadez v. CSX Intermodal Terminals, Inc.*, 298 F. Supp. 3d 1254, 1266 (N.D. Cal. 2018) (rejecting a defendant's bid to dismiss as unmanageable "independent contractor" drivers' PAGA claims under guidance from class action jurisprudence). Here and in its original (pre-stay) motion, Flowers refused to propose a test for "manageability." As a threshold matter, if Flowers cannot even articulate an appropriate test, it cannot meet its lofty burden to show that there is no material dispute that the claims are unmanageable as a matter of law. In its pre-stay Reply, ECF No. 121, Flowers did try to say that an "unmanageable" case is one where "numerous individualized determinations" would be required to prove liability. ECF No. 121 at p. 8, fn. 5. But Flowers is conflating the "commonality" or "predominance" prongs of Rule 23 with the "manageability" prong. *Cf. Heredia v. Eddie Bauer LLC*, 16-CV-06236-BLF, 2020 WL 1492710, at *4 (N.D. Cal. Mar. 27, 2020) (rejecting the same claim and noting that "imposing a manageability requirement [on PAGA] based on individualized inquiries would be strikingly

*3.    In any event, this case is manageable*

In any case, Flowers cannot meet its burden to prove that there are no triable issues.  PAGA is by its very nature simpler than a state-law wage and hour class action, rendering it more manageable.  *Cf.  Alcantar*, 2013 WL 146323, at *4 (C.D. Cal Jan. 14, 2013) ("'the individualized assessment necessary in a PAGA action would come nowhere close to the individualized and fact-intensive restitution calculations necessary under the UCL'" (citation omitted)).

Again, damages are not at issue.  Rather, Plaintiffs here only ask for a common civil penalty according to a common formula: generally, $100 for each employee per pay period for the initial violation and $200 for each subsequent violation. Cal. Lab. Code § 2699(f).   In short, PAGA "imposes penalties based on the total number of employees that have been affected by an employer's Labor Code violations" each per pay period. *Huff*, 23 Cal. App. 5th at 759. While this may be a "blunt instrument" for determining penalties for violating the Labor Code, California's Legislature intended this result. *Id.*

Nor are liability issues under PAGA hard to manage.  First, Plaintiffs do not have the burden to prove that they were improperly classified; they are presumed employees.  *See Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 916-917 (Cal. 2018), *reh'g denied* (June 20, 2018) (affirming certification of a class of alleged "independent contractor" delivery drivers). Flowers must disprove *each* prong of *Dynamex* to prevail.  *Id.*[10] Each factor readily lends itself to group treatment under

_____

similar to the predominance inquiry under Rule 23.") (internal quotation marks omitted).  Again, manageability – when appropriately applied to class actions – is limited to practical issues like damages distribution. *Eisen*, 417 U.S. at 164; *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1304 (9th Cir. 1990) (manageability issues include "the potential difficulties in notifying class members of the suit, calculation of individual damages, and distribution of damages."). Flowers has never identified any such issues, let alone insurmountable ones.
[10] Flowers argues that two different tests potentially apply in this case: *Dynamex* and a multi-factor test from *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations,* 48 Cal.3d 341 (1989).   Flowers is wrong.   *Dynamex* - in a similar driver misclassification test - underlined replaced the multi-factor *Borello* test with the "ABC" test. *Dynamex,* 4 Cal.5th at 956-58. Indeed, the Ninth Circuit recently confirmed that

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    PAGA.  Two of the three prongs: "B" and "C," for example, have little to do with

2    the individual distributors.  Instead, these factors ask about either Flowers' business

3    model or common industry practice.  This renders Flowers' pages long effort to

4    highlight purported differences between distributors meaningless. *See* Summary of

5    the Evidence, ECF No. 182-53.

6         Specifically, Prong "B" requires Flowers to prove that delivery drivers do

7    work that is outside the scope of Flowers' actual business.  *See Dynamex*, 4 Cal.5th

8    at 916-17.  "[T]his inquiry can be conducted through a common-sense observation

9    of the nature of the businesses." *Vazquez,*  986 F.3d at 1117.  Similarly, Prong "C"

10   of the "ABC Test" requires Flowers to demonstrate that workers are "customarily

11   engaged" in an independent business.   *See Dynamex*, 4 Cal.5th at 916-17. The

12   custom in the industry, though, does not change from driver to driver.  I.e., the

13   industry evidence presented at trial – whether that is for the "baking industry" or

14   some broader "food" industry - will be the same for Plaintiff Simon Goro as for

15   *every* distributor.[11]  Moreover, Prong "C" requires Flowers to prove that  a contractor

16   must have "independently" chosen to be self-employed rather than do it because the

17   company or its form contract required that structure. *Dynamex* at 962. Such elements

18   can readily be decided on a common basis for all distributors.

19

20   _____

     *Dynamex* applies retroactively, i.e. it covers the entire liability period against
21   Flowers here. *Vazquez v. Jan-Pro Fran. Intl., Inc.*, 986 F.3d 1106, 1117 (9th Cir.
     2021).  In any event, the two tests overlap and the test does not change the result.
22   For example, Flowers bears the burden of persuasion under either test.  *See Naryan
     v. EGL, Inc.,* 616 F.3d 895, 901 (9th Cir. 2010).  Also, "control" is an important
23   factor in either test.  *Cf. Borello*, 48 Cal. 3d at 350. So is whether – just like with
     *Dynamex* Prongs B and C- "the work is a part of the regular business of the
24   principal;" and whether the worker can be seen as someone customarily "engaged in
     a distinct occupation or business." *Id.* at 351.  The evidence will be the same under
25   either test and similarly manageable.

26   [11] Indeed, Flowers' own motion proves the manageability of this prong.  Flowers
     executive Chuck Rich tries to describe the alleged "long history" of the distributor
27   "model" in the "food-distribution industry."  Declaration of Chuck Rich, ¶ 5 (ECF
     No.  104-27).   Rich argues that the industry has customarily relied on an
28   "independent distributor" model. *Id.*  Plaintiffs dispute this, but the point is that this
     industry evidence will be the same for every distributor.

1      Finally, Prong "A," which requires Flowers to prove a lack of "control or
2 direction" over distributors, is also manageable.  *See Dynamex*, 4 Cal.5th at 916-17.
3 There is no question that Flowers made a single and uniform policy decision to
4 classify every Distributor as an "independent contractor."  Central to evaluating the
5 legality of this one policy decision that applies to every distributor, of course, is the
6 written take-it-or-leave-it Distributor Agreement that every Distributor signed and
7 the associated power to control that it gives Flowers.  The document is central
8 because it outlines Flowers *right to* control, which is the key inquiry, not the *actual*
9 control.  See *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988 (9th
10 Cir. 2014); *Valadez v. CSX Intermodal Terminals, Inc.* (N.D. Cal. 2018) 298
11 F.Supp.3d 1254, 1267 (rejecting the same "manageability" argument for another
12 group of alleged "independent contractor" drivers working for CSX).   Notably,
13 every distributor signs the same document.  ECF No. 99-27 (Rich Dep. Tr.) at pp.
14 160:15-161:20; ECF No. 99-14.  In short, it is easy to manage a group trial when the
15 key documents are shared by everyone.  *Accord Fleming v. Matco Tools Corp.*, 19-
16 CV-00463-WHO, 2021 WL 673445, at *9 (N.D. Cal. Feb. 21, 2021) (another
17 distributor misclassification case where "The DAs, which the parties agree are
18 common to class, are likely to resolve whether [employer] retained sufficient
19 "control" over the distributors such that they should be considered employees.").

20      Notably, as Flowers itself acknowledges, this is not the only misclassification
21 case by distributors against Flowers.  Many cases have been brought, for example,
22 under the Fair Labor Standards Act, which allows an employee to bring a collective
23 action when workers are "similarly situated." 29 U.S.C. § 216 (b). District Courts
24 across the country have found that these Flowers drivers are similarly situated and
25 can maintain collective actions.[12]

26 _____
[12] *See, e.g., Rehberg v. Flowers Foods, Inc.*, No. 3:12-cv-00596-MOC-DSC
27 (W.D.N.C. Mar. 22, 2013), ECF No. 38 (granting Flowers Delivery Employees in
North Carolina conditional certification under the same DA); *Noll v. Flowers Foods,*
28 *Inc.*, No. 1:15-cv-00493-JAW (D. Me. Jan. 20, 2017), ECF No. 81 (granting

1    Flowers, of course, focuses just on the two cases where class certification was

2    denied after full briefing of formal Rule 23 motions for class certification. *See*

3    Flowers Oppo. at 27:2-13. Again, Rule 23 does not apply to PAGA. Also, those

4    cases were decided under the obsolete *Borello* standard and not the simplified test

5    for misclassification later articulated in *Dynamex*. *See Martinez v. Flower Foods,*

6    *Inc.*, CV 15-5112 RGK (EX), 2016 WL 10746664, at *3 (C.D. Cal. Feb. 1, 2016);

7    *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 479 (N.D. Cal. 2017) (but

8    nonetheless finding that common issues predominate in the case, stating that "the

9    right to control is subject to common proof under the Distributor Agreement.").[13]

10    Finally, while *Soares* (and Flowers) cited the fact that some drivers may not

11    have driven their own routes, this does not actually defeat manageability of this

12    PAGA case. We know through Flowers' own submission, for example, that Flowers

13    can identify the few who may not have run their own territories. Decl. of Tyler

14    Schoenewald, ¶ 21 (ECF 104-2) (identifying eight distributors). If the court decides

15    that manageability is both an element and a concern, then we can carve those eight

16    distributors out of the group. There is no basis here for summarily adjudicating

17    PAGA based on a phantom "manageability" requirement.

18  **V.    CONCLUSION**

19    The Court should deny Flowers' efforts to escape the full reach of California

20    law that comes with willfully misclassifying workers in this state. In light of the

21    "considerable significance" misclassification has on "workers, businesses, and the

22    public generally," full and faithful application of California's labor laws must attach

23

24  conditional certification for the same workers under the same DA in Maine); *Neff v.*
    *Flowers Foods, Inc.*, No. 5:15-cv-0025-GWC (D. Vt. Nov. 7, 2016), ECF No. 56

25  (granting motion for conditional certification for the same workers under the same
    DA in Vermont, New Hampshire, Massachusetts, Connecticut, Rhode Island, and
    New York); *Richard v. Flower Foods, Inc.*, No. 6:15-cv-02557-SMH-CBW (W.D.

26  La. Nov. 28, 2016), ECF No. 136 (granting conditional certification for FLSA claims
    by Delivery Employees working in Louisiana and surrounding states).

27
  [13] Indeed, in a more recent sister case by distributors against Flowers, the District

28  Court certified the misclassification claims under Rule 23. *Carr v. Flowers Foods,*
    *Inc.*, CV 15-6391, 2019 WL 2027299, at *1 (E.D. Pa. May 7, 2019).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  here. *See Dynamex*, 4 Cal. 5th at 912.  These workers are entitled to their day in

2  court and Flowers' motion should be denied in full.

3

4  Respectfully submitted:

5  DATED:   April 14, 2021                    **NICHOLAS & TOMASEVIC, LLP**

6                                   By:   */s/ Shaun Markley*
                                         Craig M. Nicholas (SBN 178444)
7                                        Alex Tomasevic (SBN 245598)
                                         Shaun Markley (SBN 291785)
8                                        225 Broadway, 19th Floor
                                         San Diego, California 92101
9                                        Tel: (619) 325-0492
                                         Fax: (619) 325-0496
10                                       Email: cnicholas@nicholaslaw.org
                                         Email: atomasevic@nicholaslaw.org
11                                       Email: smarkley@nicholaslaw.org

12                                       Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28