UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, an individual; TONY RUSSELL, an individual; REY PENA, an individual; JOSE PENA, an individual; JEFF BELANDER, an individual; and GUISEPPE ZIZZO, an individual,<br><br>                                    Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKING CO. OF CALIFORNIA, LLC, a California limited liability company; FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 100, inclusive,<br><br>                                    Defendants. | Case No.: 17-CV-2580 TWR (JLB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, (2) DENYING AS MOOT PLAINTIFFS' MOTION TO SEAL, (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION TO SEAL, AND (4) DIRECTING PARTIES TO FILE A JOINT STATUS REPORT**<br><br>(ECF No. 182, 191, 209) |

Presently before the Court is the Motion for Partial Summary Judgment ("MPSJ," ECF No. 182) filed by Defendants Flowers Foods, Inc. ("FF"); Flowers Baking Co. of California, LLC ("FBC California"); and Flowers Baking Co. of Henderson, LLC ("FBC Henderson"), as well as Plaintiffs Simon Goro, Tony Russell, Rey Pena, Jose Pena, Jeff Belander, and Guiseppe Zizzo's Opposition to ("MPSJ Opp'n," ECF No. 190) and

Defendants' Reply in Support of ("Reply," ECF No. 197) the Motion for Partial Summary Judgment. Also pending before the Court are Plaintiffs' Motion to Seal ("Pls.' Mot. to Seal," ECF No. 191) certain exhibits filed in support of their Opposition and Defendants' Renewed Motion to Seal ("Defs.' Renewed Mot. to Seal," ECF No. 209) certain documents filed in support of Mr. Russell's motion for partial summary judgment, which Plaintiffs oppose ("Sealing Opp'n," ECF No. 210). The Court held a hearing on Defendants' Motion for Partial Summary Judgment and Plaintiff's Motion to Seal on November 4, 2021. (*See* ECF No. 218.) Having carefully considered the Parties' arguments and evidence and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Partial Summary Judgment, **DENIES AS MOOT** Plaintiffs' Motion to Seal, and **GRANTS IN PART AND DENIES IN PART** Defendants' Renewed Motion to Seal.

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. Background

#### A. *Undisputed Material Facts*

"[FF] is the parent holding company of numerous operating subsidiaries." (ECF No. 216 ("Jt. Stmt.") ¶ 1.) "[FBC California] and its successors [FBC Henderson] . . . and Flowers Baking Co. of Modesto, LLC [("FBC Modesto")]. . . are wholly owned subsidiaries of [FF]." (*Id.* ¶ 2.) "Flowers Bakeries, LLC is the sole member of [FBC] California, [FBC] Henderson, and [FBC] Modesto." (*Id.*) "In turn, [FF] is the sole member of Flowers Bakeries, LLC." (*Id.*)

"Plaintiffs contracted with [FBC California] or its successor, [FBC Henderson]," (*id.* ¶ 3), which "is located in Henderson, Nevada." (*Id.* ¶ 4.) "Pursuant to Plaintiffs' Distributor Agreements ("DA"), they are not required to personally service their geographic territories, although they remain obligated to ensure service of their territories pursuant to the DA and its related attachments." (*Id.* ¶ 6.)

"Pursuant to the DA and the obligations it places on parties, Plaintiffs used vehicles they either leased or purchased at their own expense." (*Id.* ¶ 7.) "Plaintiffs typically use vehicles with a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds

to deliver products." (*Id.* ¶ 5.) "However, Plaintiffs also use their personal vehicles at times for services . . . [,] and these vehicles weigh less than 10,001 pounds." (*Id.* ¶ 5.)

### B.  Relevant Procedural Background

Plaintiffs initiated this action in the Superior Court of California, County of San Diego, on November 27, 2017. (*See generally* ECF No. 1-2.) Generally alleging that Defendants had misclassified them as independent contractors rather than employees, Plaintiffs asserted claims for (1) failure to compensate for all hours worked; (2) failure to pay overtime premium pay; (3) waiting-time penalties; (4) failure to provide accurate wage statements; (5) failure to provide meal periods; (6) unlawful deductions from wages; (7) failure to indemnify for necessary expenditures; and (8) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (*See generally id.*) After answering Plaintiffs' complaint, (*see generally* ECF No. 1-3), Defendants removed to this Court based on diversity jurisdiction. (*See generally* ECF No. 1.)

On March 22, 2018, Plaintiffs filed their first amended complaint, adding a ninth claim for enforcement of the California Private Attorney General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq.* (*See generally* ECF No. 17.) Defendants moved to dismiss Plaintiffs' PAGA cause of action on April 12, 2018, (*see* ECF No. 22), and also filed an answer to Plaintiffs' First Amended Complaint. (*See generally* ECF No. 23.) While their motion to dismiss was still pending, the Parties filed cross-motions for partial summary judgment on November 16, 2018. (*See generally* ECF Nos. 78, 81.) On January 8, 2019, the Honorable Janis L. Sammartino granted Defendants' motion to dismiss Plaintiffs' PAGA cause of action and denied as moot the pending motions for partial summary judgment. (*See generally* ECF No. 92.)

Plaintiffs filed their operative Second Amended Complaint on January 15, 2019, adding additional allegations to support their PAGA cause of action. (*See generally* No. 95.) On January 29, 2019, Defendants answered. (*See generally* ECF No. 98.)

Mr. Russell moved for partial summary judgment as to Defendants' first affirmative defense—*i.e.*, that Defendants were never his employers—on February 15, 2019. (*See*

*generally* ECF No. 99.)  Defendants filed their own motion for partial summary judgment as to six of Plaintiffs' causes of action on March 12, 2019.  (*See generally* ECF No. 104.) After Judge Sammartino took the cross-motions for partial summary judgment under submission, (*see generally* ECF No. 135), Defendants moved to stay this action pending resolution of the following issues: (1) whether the "ABC" test articulated in *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903 (2018), applies retroactively; and (2) whether the Federal Aviation and Administration Authorization Act ("F4A") preempts prong "B" of the ABC test.  (*See generally* ECF No. 141.)  On January 24, 2020, Judge Sammartino stayed this action pending the California Supreme Court's decision in *Vazquez v. Jan-Pro Franchising International, Inc.*, No. S258191 (Cal. filed Sept. 26, 2019), and denied without prejudice the Parties' cross-motions for partial summary judgment.  (*See generally* ECF No. 166.)

On September 25, 2020, this action was transferred to the undersigned.  (*See generally* ECF No. 167.)  After Plaintiffs informed the Court that the California Supreme Court had issued a decision in *Vazquez*, (*see generally* ECF No. 168), the Court lifted the stay, (*see generally* ECF No. 169), and requested a Joint Status Report from the Parties.  (*See generally* ECF No. 170.)

Before the ordered deadline for the Joint States Report, Mr. Russell again moved for summary judgment as to Defendants' first and thirty-second (F4A preemption) affirmative defenses.  (*See generally* ECF Nos. 171, 172.)  About a month later, Defendants filed the instant Motion for Partial Summary Judgment.  (*See generally* ECF No. 82.)

Following a hearing on Mr. Russell's motion for partial summary judgment on September 9, 2021, (*see* ECF Nos. 205, 207), the Court granted Mr. Russel's motion and dismissed Defendants' first and thirty-second affirmative defenses as to Mr. Russell.  (*See generally* ECF No. 206.)  Specifically, the Court concluded that (1) the ABC classification test applied to all of Mr. Russell's employment law claims because his claims for expense reimbursement and waiting time penalties related to the California Industrial Welfare Commission's ("IWC") wage orders, (*see id.* at 13–17); (2) neither the F4A nor the Federal

Trade Commission ("FTC") Franchise Rule or Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, preempted the application of the ABC test, (*see id.* at 17–21); and (3) Defendants failed to raise a genuine issue of material fact that Mr. Russell performed work that is outside the usual course of Defendants' business under Prong B of the ABC test. (*See id.* at 21–28.) In light of that ruling, the Court requested additional briefings from the Parties regarding the impact, if any, of that ruling on the instant Motion for Partial Summary Judgment. (*See* ECF No. 211; *see also* ECF No. 214 ("Pls.' Supp. Br."), ECF No. 215 ("Defs.' Supp. Br.").)

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *see also Anderson*, 477 U.S. at 248. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

## III. Analysis

Through the instant Motion for Partial Summary Judgment, Defendants seek summary adjudication in their favor as to Plaintiffs' overtime claims, meal and rest break claims, and PAGA claims.[1] (*See generally* ECF No. 189-7 ("Mem.") at 9–23.)

### A. *Overtime and Meal and Rest Break Claims*

Defendants contend that Plaintiffs' overtime claims must be dismissed as exempted by IWC Wage Order No. 1,[2] (*see* Mem. at 9–15), and that their meal and rest break claims

---

[1] Defendants also contend that Plaintiffs' reimbursement claims must be rejected to the extent they seek to recover expenses associated with vehicle purchases or rentals, (*see* Mem. at 17–18), and that the ABC test is preempted by the F4A, the FTC Rule, and the Lanham Act. (*See id.* at 23–28.) Plaintiffs concede that they are not seeking to recover expenses associated with the purchases or rentals of their vehicles, (*see* MPSJ Opp'n at 6 n.1; ECF No. 221 ("Tr.") at 51:6–10), and Defendants withdrew their franchise exemption argument at the hearing. (*See* Tr. at 50:18–22.) The Court also previously concluded that the ABC Test is not preempted by the F4A, the FTC Rule, or the Lanham Act. (*See* ECF No. 206 at 17–21.) The Court therefore considers only Defendants' challenges to Plaintiffs' overtime, meal and rest break, and PAGA claims.

[2] Pursuant to IWC Wage Order No. 1, employees whose hours of service are regulated by the United States Department of Transportation ("DOT") are exempt from California's overtime law. *See* Cal. Code Regs. § 11010(3)(A)(2) ("The provisions of this section are not applicable to employees whose hours of service [are regulated by] . . . The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers"). The DOT regulates the

are preempted by the hours-of-service regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA") in 2018. (*See id.* at 15–17.) To obtain summary adjudication in their favor on either of these claims, Defendants bear the burden of establishing that there is no genuine dispute of material fact that Plaintiffs transported property in interstate commerce. *See, e.g.*, *Watkins v. Ameripride Servs.*, 375 F.3d 821, 825 (9th Cir. 2004) (concluding that the plaintiff would "not [be] entitled to overtime pay in California" if he "was engaged in transporting property in interstate commerce"); California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers, 83 Fed. Reg. 67,470 (Dec. 28, 2018) (FMCSA determination that federal law preempts California's meal and rest break rules as applied to drivers operating property-carrying commercial motor vehicles in interstate commerce).

"To determine whether or not [Plaintiffs] w[ere] engaged in inter-state commerce, [the Court] must examine the character of the shipments [they were] charged with delivering, and the intent of the shippers as to the ultimate destination of the goods." *See Watkins*, 375 F.3d at 825 (citing *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1997)).[3] "The inter-state or intrastate character of the shipment is determined only after considering the entire panoply of 'facts and circumstances surrounding the transportation.'" *Id.* (quoting *Steiner*, 110 F.3d at 1469). "[T]ransportation within a single state is still considered in 'interstate commerce' if it forms part of a 'practical continuity of movement' across state lines from a point of origin to its final destination." *Sturm v. CB*

---

hours of service for drivers of commercial motor vehicles operating in interstate commerce. *See* 49 C.F.R. §§ 390.5 ("Commercial motor vehicle means any self-propelled . . . motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle . . . [h]as a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pound) or more, whichever is greater[.]"), 395.1 ("The rules in this part apply to all motor carriers and drivers[.]"), 395.3 (providing maximum driving time for property-carrying vehicles).

[3] The Ninth Circuit has recognized that, because "[t]he FLSA contains a similar exemption [to that found in the IWC Wage Order], . . . [f]ederal case law interpreting the FLSA exemption is . . . instructive in determining whether [a driver] was sufficiently engaged in interstate commerce to bring him within the scope of the Department of Transportation regulations." *See Watkins*, 375 F.3d at 825.

*Transp., Inc.*, 943 F. Supp. 2d 1102, 1113 (D. Idaho 2013) (quoting 29 C.F.R. § 782.7(b)(1)); *see also Watkins*, 375 F.3d at 825 ("[E]ven intrastate deliveries can be considered part of interstate commerce if the property in question was originally delivered from out-of-state and the intrastate route is merely part of the final phase of delivery." (citing *Steiner*, 110 F.3d at 1469)).

Because the record is replete with genuinely disputed material facts, the Court **DENIES** Defendants' Motion for Partial Summary Judgment. The determination as to whether Plaintiffs are engaged in interstate commerce is a highly factual inquiry, *see Watkins*, 375 F.3d at 825 (citing *Steiner*, 110 F.3d at 1469), and the Parties purportedly could agree to only a handful of undisputed material facts, none of which is particularly pertinent to the interstate commerce determination. (*See generally* Jt. Stmt.) Critically, for example, the Parties dispute to whom the shipper (*i.e.*, the producing bakery) ultimately "intends" to deliver its products. (*Compare* ECF No. 182-59 ("Rich Decl.") ¶ 9 (end consumer), *with* ECF No. 190-2 ("Ex. A") 126:3–128:1, ECF No. 190-8 ("Ex. G") at 28:5–31:23 (FBC Henderson's Fontana, California distribution center, which is where title transfers from the producing bakery to the ordering bakery).) Further, Defendants' authorities are distinguishable because none of them involve subsidiaries or subsequent transfers of title en route to the end customer. *Cf. Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 671–72 (10th Cir. 1993) (employee delivery driver (1) ordered milk and cheese products from the defendant's Arkansas plant that were transported to a distribution center in Oklahoma for delivery to the defendant's Oklahoma customers, and (2) collected empty crates from the Oklahoma customers for transport back to the Arkansas plant); *Shew v. Southland Corp. (Cabell's Dairy Div.)*, 370 F.2d 376, 378 (5th Cir. 1966) ("The parties stipulated that transportation of such out-of-state items constituted transportation of goods in interstate commerce within the meaning of the Fair Labor Standards Act."); *Ruiz v. Affinity Logistics Corp.*, No. 05CV2125 R (CAB), 2006 WL 3712942, at *6 (S.D. Cal. Nov. 9, 2006) (the defendant, the plaintiff driver's employer, was contracted to deliver appliances for a national chain that ordered its appliances from manufacturers located

throughout the United States and that retained title of the appliances from the manufacturers through home delivery); *McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470, 473, 482–83 (S.D.N.Y. 2000) (uncontested facts showed that the New York plaintiffs and the defendant's New York customers called orders into the defendant's New Jersey bakery, which delivered the orders to the New York warehouse where the plaintiffs picked up the products for delivery). Finally, neither Party has addressed the factors enumerated by the Interstate Commerce Commission, *see Policy Statement—Motor Carrier Interstate Transportation—From Out-of-State Through Warehouses to Points in Same State*, 8 I.C.C.2d 470, 473 (I.C.C. Apr. 27, 1992), which—although not compulsory—other courts in this Circuit have found beneficial in evaluating the shipper's intent. *See, e.g.*, *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 WL 5179486, at *30 (N.D. Cal. Sept. 3, 2015); *Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2015 WL 1469752, at *5–8 (D. Ariz. Mar. 31, 2015); *Ruiz*, 2006 WL 3712942, at *4–7.

For all these reasons, Defendants have failed to carry their burden of establishing that there is no genuine dispute of material fact as to whether Plaintiffs' deliveries were part of a "practical continuity of movement" across state lines. Accordingly, the Court **DENIES** Defendants' Motion for Partial Summary Judgment. *See, e.g.*, *Villalpando*, 2015 WL 5179486, at *32.

### B. PAGA Claims

Defendants argue that Plaintiffs' PAGA claims as a whole must be dismissed because they are "unmanageable" in light of the multitude of individualized determinations that are required. (*See* Mem. at 18–22.) Defendants also contend that Plaintiffs' PAGA claims based on alleged violations of California Labor Code section 204 must be dismissed because that provision was not included in Plaintiffs' PAGA notice letter. (*See* Mem. at 19.)

#### 1. Manageability

Defendants challenge the "manageability" of Plaintiffs' PAGA claims. (*See generally* Mem. at 18–22.) Plaintiffs respond that there is no manageability requirement,

9

17-CV-2580 TWR (JLB)

(*see* MPSJ Opp'n at 24–25), and, in any event, their claims are manageable and should not be dismissed. (*See id.* at 26–29.)

As an initial matter, "[f]ederal district courts applying California law have split on whether courts possess inherent authority to strike PAGA claims as unmanageable." *Wesson v. Staples Off. Superstore, LLC*, 68 Cal. App. 5th 746, 283 Cal. Rptr. 3d 846, 857 n.10, *reh'g denied* (Sept. 27, 2021). "Cases finding courts lack inherent authority have generally concluded that a manageability requirement would be inconsistent with PAGA's purposes." *Id.* (citing *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 959 (C.D. Cal. 2015)). The California Court of Appeal for the Second District, however, recently "conclude[d] that courts have inherent authority to ensure that a PAGA claim will be manageable at trial—including the power to strike the claim, if necessary—and that this authority is not inconsistent with PAGA's procedures and objectives, or with applicable precedent." *See id.* at 857. Nonetheless, the Court of Appeal cautioned that courts "should not lightly strike even procedurally challenging claims." *See id.* at 862. This Court "must follow [*Wesson*] unless [the Court] finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007). Consequently, while there may not be a manageability *requirement*, the Court "*may* strike a [PAGA] claim that cannot be rendered manageable." *See Wesson*, 68 Cal. App. 5th at 859 (emphasis added).

The Court therefore proceeds to analyze the manageability of Plaintiffs' PAGA claims. It is Defendants who bear the burden of establishing that Plaintiffs' PAGA claims will be unmanageable at trial. *See, e.g.*, *Mays v. Wal-Mart Stores, Inc.*, No. CV 18-02318-AB (KKX), 2018 WL 6264992, at *9 (C.D. Cal. Nov. 1, 2018) ("[Although] the Court acknowledges that there might be circumstances under which it would be inappropriate to allow a PAGA claim to proceed on a representative basis, [the defendant] has not yet established that is the case here."). Defendants raise the following concerns as to the manageability of Plaintiffs' PAGA claims: (1) the expense reimbursement claims will require individualized inquiries into whether expenses were incurred and their

reasonableness, (*see* Mot. at 21); (2) the unlawful deduction claims will require individualized inquiries into whether the deductions were authorized in writing, (*see id.*); (3) the meal and rest break claims will require individualized inquiries—on a daily basis—into whether enough hours were worked to require a break (or breaks) and whether the authorized break (or breaks) were taken, (*see id.*); and (4) the overtime claims also will require individualized inquiries into the number of hours worked on a daily basis.[4] (*See id.*)

At this stage, the Court is not yet persuaded that Plaintiffs' PAGA claims will be unmanageable at trial. First, Defendants have not challenged all of Plaintiffs' PAGA claims. For example, Plaintiffs' PAGA claims also seek penalties for Defendants' (1) deductions from Plaintiffs' pay for certain fees, (*see* SAC ¶ 72(e)); (2) failure to provide all wages due upon termination under sections 201 through 203 of the California Labor Code, (*see* SAC ¶ 72(f)); and (3) failure to provide accurate wage statements pursuant to section 206 of the California Labor Code. (*See* SAC ¶ 72(g).) Defendants therefore appear to concede that certain of Plaintiffs' PAGA claims are manageable. *See, e.g.*, *Brown v. Am. Airlines, Inc.*, No. CV 10-8431-AG (PJWX), 2015 WL 6735217, at *4 (C.D. Cal. Oct. 5, 2015) (granting in part motion to strike as to PAGA claims based on overtime violations for "manageability issues" but denying in part motion as to PAGA claims based on inaccurate wage statements).

---

[4] Defendants also contend that the PAGA claims are unmanageable because two multifactorial tests—the ABC test and the *Borello* test—are required to determine whether Plaintiffs were properly classified as independent contractors, (*see* Mem. at 19–21); however, the Court already has determined that the ABC test applies to all of Mr. Russell's labor law claims and that Defendants failed to rebut the presumption that Mr. Russell is an employee under Prong B. (*See* ECF No. 206 at 21–28.) Accordingly, no individualized inquiries should be necessary as to the classification issue for the remaining Plaintiffs and PAGA group members. To the extent that Defendants contend that *Borello* applies to Plaintiffs' PAGA claims because they "are necessarily based on a statute," (*see* Defs.' Supp. Br. at 2), this a question of first impression that the Court declines to address on the Parties' limited briefing at this time. In any event, there is an argument that the PAGA claims, like Plaintiffs' UCL claims, are derivative, *see, e.g.*, *Varsam v. Lab'y Corp. of Am.*, 120 F. Supp. 3d 1173, 1180 (S.D. Cal. 2015), and, therefore, that the ABC test applies. (*See* ECF No. 206 at 16–17.) Defendants therefore fail to establish at this juncture that the PAGA claims are unmanageable based on analysis of the classification issue.

Second, while the Parties have identified approximately 400 distributors working for FBC Henderson and FBC Modesto, (*see* ECF Nos. 220-1, 220-2), it is unclear how many of these distributors may ultimately be part of the PAGA Representative Action Group. Even assuming that individualized determinations are required as to certain of Plaintiffs' PAGA claims, the number of individualized inquiries—and, therefore, their manageability—is necessarily dependent on the number of employees in the PAGA Representative Action Group.

Third, it is not clear that all of the issues Defendants identify will require the Court to engage in individualized inquiries. As for the classification of Plaintiffs, whether the ABC test or *Borello* test applies is a pure question of law, and the application of the proper test may involve minimal individual determinations if the Court reaches the same conclusion as it did with respect to Mr. Russell. (*See* ECF No. 206 at 21–28; *cf. generally* Defs.' Supp. Br.) Some of the other "issues" Defendants raise—such as the expenses the Distributors claim to have incurred and whether the Distributors authorized the allegedly illegal deductions in writing, (*see* Mem. at 21)—should have been "resolved by the parties during the discovery process." *See Mays*, 2018 WL 6264992, at *8. Accordingly, "the parties can resolve [some, if not] most[,] of the [purportedly] individual inquiries without court intervention." *See id.*

Ultimately, the Court concludes that Defendants have failed to meet their burden of establishing that Plaintiffs' PAGA claims are unmanageable for trial at this stage in the litigation. Defendants may renew their argument as this case approaches trial. *See, e.g.*, *Ortiz v. Amazon.com LLC*, No. 17-CV-03820-JSW, 2020 WL 5232592, at *2 (N.D. Cal. Sept. 2, 2020) ("[T]he Court . . . concludes it is appropriate to require Plaintiff to offer a trial plan before making a ruling about whether it should exercise its inherent authority and strike the PAGA claim as unmanageable.").

    2.    *PAGA Claims Based on Violations of Section 204*

Before commencing a PAGA action, "[t]he aggrieved employee or representative shall give written notice . . . by certified mail to the employer of the specific provisions of

this code alleged to have been violated, including the facts and theories to support the alleged violation." *See* Cal. Lab. Code § 2699.3(a)(1)(A).  A plaintiff cannot assert a PAGA claim under a provision that is not included in the PAGA notice.  *See, e.g.*, *Hernandez v. Houdini, Inc.*, No. SACV161825DOCJCGX, 2017 WL 8223987, at *11 (C.D. Cal. Mar. 21, 2017); *Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1047 (C.D. Cal. 2016).

It is undisputed that Plaintiffs' PAGA notice letter did not invoke California Labor Code section 204, (*see generally* ECF No. 182-25), and Plaintiffs do not oppose dismissal of their PAGA claims based on violations of that provision. (*See generally* MPSJ Opp'n; Tr. at 5:5–17.)  The Court therefore **GRANTS IN PART** Defendants' Motion for Partial Summary Judgment and **DISMISSES** Plaintiffs' PAGA claims to the extent they are premised on violations of section 204.

**MOTIONS TO SEAL**

**I.    Legal Standard**

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  "[T]he presumption of access is not rebutted where documents which are the subject of a protective order are filed with the court as attachments to summary judgment motions' and . . . 'to retain any protected status for documents attached to a summary judgment motion, the proponent must meet the compelling reasons standard and not the lesser good cause determination." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1177 (9th Cir. 2006) (internal quotation marks omitted) (quoting *Foltz*, 331 F.3d at 1135). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)) (citing *Valley Broadcasting Co. v. U.S. Dist. Ct. for Dist. Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986)).  "The mere fact that the

production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz,* 331 F.3d at 1136).

## II. Analysis

### A. Plaintiffs' Motion to Seal

Plaintiffs sought to file under seal two exhibits—Exhibits C and D in support of their Opposition, which are "class member lists"—produced by Defendants and designated "CONFIDENTIAL" pursuant to the then-operative Protective Order entered in this action, ECF No. 19. (*See* Mot. to Seal at 1; ECF No. 191-1 ("Markley Decl.") ¶¶ 4–5.) At the hearing, the Court expressed concern with the public disclosure of certain information, including the PAGA participants' names and contact information. (*See* Tr. at 16:8–15; *see also Gunderson v. Alta Devices, Inc.*, No. 19-CV-08017-BLF, 2021 WL 4461569, at *4 (N.D. Cal. Sept. 29, 2021) (granting motion to seal "exhibits that contain personally identifying information of Class members"); *Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354 WHA, 2020 WL 6020593, at *8 (N.D. Cal. Oct. 12, 2020) (noting that putative class members' "contact information and addresses [should] be redacted")). The Parties therefore agreed to file a redacted version of the exhibits, which Plaintiffs filed on November 12, 2021. (*See generally* ECF No. 220.) Accordingly, the Court **DENIES AS MOOT** Plaintiffs' Motion to Seal (ECF No. 191).

### B. Defendants' Renewed Motion to Seal

In support of his Motion for Partial Summary Judgment, Mr. Russell previously lodged under seal twenty-two documents designated by Defendants as "CONFIDENTIAL" under the Stipulated Protective Order in this action. (*See generally* ECF No. 172.) Because no showing had been made that there existed compelling reasons to file those documents under seal, the Court denied without prejudice the motion and allowed Defendants to file a renewed motion. (*See* ECF No. 206 at 28–29.)

Presently before the Court is Defendants' Renewed Motion to Seal, which was filed pursuant to the Court's September 21, 2021 Order and which Mr. Russell opposes in part.

1    In their Renewed Motion to Seal, Defendants concede that the following documents may
2    be filed publicly in their entirety: Exhibits D, F, L, W, X, Y, Z, AA, BB, CC, DD, EE, JJ,
3    and NN, (*see* Defs.' Renewed Mot. to Seal at 1–2), but request that "the documents'
4    confidentiality designations under the protective order . . . remain in force and effect." (*See*
5    *id.* at 3.) As for the remaining exhibits, Defendants urge that Exhibits I, M, and N be sealed
6    in their entirety because they contain "internal financial information," as do those portions
7    of Exhibit EE (13:17–19:25, 34:1–41:25, 55:1–59:25, 72:1–74:14, and 110:1–111:12) and
8    Mr. Russell's memorandum (3:19–20, 5:3–5, 5:12–14, 5:17–19, page 5 n.4, 6:2–5,
9    6:12–14, 618–19, 6:20–21, 624–7:3, 11:23–25, and 14:10–12) discussing those exhibits.
10   (*See* Defs.' Renewed Mot. to Seal at 4–6.) Defendants also argue that Exhibits J, O, and
11   T, as "external accounting reports," must be sealed in their entirety, along with page 64
12   line 6 through 65 line 25 of Exhibit EE and page 5 at lines 6 through 8 and page 6 at lines
13   6 through 8 of Mr. Russell's memorandum, (*see* Defs.' Renewed Mot. to Seal at 6–7), and
14   that Exhibits H and K, as "supplier and product agreements," must also be sealed in their
15   entirety. (*See* Defs.' Renewed Mot. to Seal at 7–8.)
16       Mr. Russell does not object to the public filing of Exhibits D, F, L, W, X, Y, Z, AA,
17   BB, CC, DD, JJ, and NN, or to the filing under seal of Exhibits H, J, K, O, T, and Exhibit
18   EE at page 5 at lines 6 through 8 and page 6 at lines 6 through 8. (*See* Sealing Opp'n; ECF
19   No. 212 ("Sealing Reply") at 1 n.1.) Mr. Russell does object, however, to the continuing
20   confidentiality designation under the Protective Order of any documents filed publicly, (*see*
21   Sealing Opp'n at 5–6), and to the sealing of Exhibits I, M, and N and those portions of
22   Exhibit EE and Mr. Russell's memorandum discussing them. (*See id.* at 3–5.) Specifically,
23   Mr. Russell contends that Exhibits I, M, and N have already been publicly filed in *Bruers*
24   *v. Flowers Foods, Inc.*, Case No. 8:18-CV-1442 JLS (ADS) (C.D. Cal. filed July 10, 2019),
25   ECF No. 65. (*See* Sealing Opp'n at 4; *see also* ECF No. 210-1 ("Markley Decl.") Ex. 2.)
26   Defendants counter that, "[t]he fact some (but not all) of these documents were ordered
27   filed over objection in a different matter does not change the binding nature of the
28   Protective Order and Federal authority on the present issue." (*See* Sealing Reply at 2.)

The Court finds that Defendants already have filed publicly in *Bruers* pages 1 through 6 of Exhibit I; Exhibit M in its entirety; and page 18 line 1 through page 19 line 25, page 38 line 1 through page 41 line 25, and page 72 line 1 through page 74 line 14 of Exhibit EE.[5] As to these exhibits, "however confidential [they] may have been beforehand, subsequent to publication [they] w[ere] confidential no longer." *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). Whether "[t]he genie is out of the bottle," *see id.*, or "the cat is out of the bag." *See id.* at 144 n.11, "[t]he information is publicly available on the [Central District] docket, which generally moots any later attempt to seal the documents from public view." *See Al Otro Lado, Inc. v. Wolf*, No. 17CV2366-BAS(KSC), 2020 WL 2097598, at *5 (S.D. Cal. May 1) (citing *Kamakana*, 447 F.3d at 1184; *Constand v. Cosby*, 833 F.3d 405, 410 (3d Cir. 2016); *Gambale*, 377 F.3d at 144), *adopted*, 2020 WL 5422784 (S.D. Cal. Sept. 10, 2020); *see also Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) ("Th[e] relief [Defendants seek] is no longer available because the [exhibits] are now available to the public."); *WAG Acquisition, LLC v. Flying Crocodile, Inc.*, No. 2:19-CV-1278-BJR, 2021 WL 2778578, at *10 (W.D. Wash. July 2, 2021) ("A request to seal information that was publicly disclosed involves 'an inherent logical dilemma' in that 'information that has already entered the public domain cannot in any meaningful way be later removed from the public domain.'" (quoting *Victory Sports & Entm't LLC v. Pedraza*, No. 2:19-cv-00826-APG-NJK, 2019 WL 2578767, at *2 (D. Nev. June 24, 2019))). The Court therefore **DENIES** Defendants' Renewed Motion to Seal as to pages 1 through 6 of Exhibit I; the entirety of Exhibit M; and page 18 line 1 through page 19 line 25, page 38 line 1 through page 41 line 25, and page 72 line 1 through page 74 line 14 of Exhibit EE.

Further, because the purpose of the Protective Order is to protect "confidential . . . information . . . from public disclosure" and "extends only to the limited information or

---

[5] Although Mr. Russell did not append those portions of Vandy Davis' deposition that were publicly filed in *Bruer*, the Court may take judicial notice of the docket and filings in that action. *See, e.g.*, *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER." (citing Fed. R. Evid. 201(b); *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004))).

items that are entitled to confidential treatment under the applicable legal principles[,]" (*see, e.g.*, ECF No. 19 ¶ 1), the protections of the Protective Order do not apply to those documents that have already been disclosed to the public on the docket of *Bruger* or to those documents that "Defendants now agree can be filed publicly," *i.e.*, Exhibits D, F, L, W, X, Y, Z, AA, BB, CC, DD, JJ, and NN. (*See* Defs.' Renewed Mot. to Seal at 1–2.) Accordingly, the Court **DENIES** Defendants' Motion to Seal to the extent it seeks to maintain the confidentiality designations of publicly filed exhibits under the Protective Order in this action.

Having reviewed pages 7 through 10 of Exhibit I; Exhibits H, J, K, N, O, T, and EE in their entirety; and Mr. Russell's memorandum, the Court concludes that Defendants have met their burden as to filing pages 7 through 10 of Exhibit I and Exhibits H, J, K, O, N, and T under seal in their entirety. The Court therefore **GRANTS** Defendants' Renewed Motion to Seal as to those specific documents. Although there exist compelling reasons to file under seal these underlying exhibits, the Court concludes that the quotations from, references to, and discussions of these exhibits in Mr. Davis's Deposition (Exhibit EE) and Mr. Russell's memorandum may be filed publicly. The Court therefore **DENIES** Defendants' request to file under seal excerpts from Mr. Russell's memorandum and Mr. Davis's Deposition (Exhibit EE). Accordingly, Mr. Russell **SHALL FILE PUBLICLY** his memorandum; a version of Exhibit I redacting pages 7 through 10; and Exhibits D, F, L, W, X, Y, Z, AA, BB, CC, DD, EE, JJ, and NN in their entirety. The Clerk of Court **SHALL FILE UNDER SEAL** in their entirety Exhibits H, I, J, K, O, and T, which were previously lodged under seal at ECF Nos. 219-2, 219-3, 219-4, 219-5, 219-8, and 219-9.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Partial Summary Judgment (ECF No. 182). Specifically, the Court **GRANTS** Defendants' Motion as to Plaintiffs' PAGA claims premised on violations of section 204 of the California Labor Code but **DENIES** the remainder of Defendants' Motion. The Parties **SHALL FILE** a Joint Status Report within <u>one (1) week</u> of the

electronic docketing of this Order addressing the status of this litigation and proposing a schedule of pretrial dates and deadlines.

The Court also **DENIES AS MOOT** Plaintiffs' Motion to Seal (ECF No. 191), and **GRANTS IN PART AND DENIES IN PART** Defendants' Renewed Motion to Seal (ECF No. 209). As discussed above, *see supra* pages 14–17, within three (3) days of the electronic docketing of this Order, Mr. Russell **SHALL FILE PUBLICLY** an unredacted version of his memorandum (ECF No. 173-23); a version of Exhibit I (ECF No. 173-4) redacting pages 7 through 10; and Exhibits D, F, L, W, X, Y, Z, AA, BB, CC, DD, EE, JJ, and NN in their entirety (ECF Nos. 173-1–2, 173-7, 173-12–22). The Clerk of Court **SHALL FILE UNDER SEAL** in their entirety Exhibits H, I, J, K, O, and T, which were previously lodged under seal at ECF Nos. 173-3/219-2, 173-4/219-3, 173-5/219-4, 173-6/219-5, 173-10/219-8, and 173-11/219-9, respectively.

**IT IS SO ORDERED.**

Dated: December 3, 2021

_____
Honorable Todd W. Robinson
United States District Judge