**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, an individual; TONY RUSSELL, an individual; REY PENA, an individual; JOSE PENA, an individual; JEFF BELANDER, an individual; GIUSEPPE ZIZZO, an individual,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKING CO. OF CALIFORNIA, LLC, a California limited liability company; FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | Case No.: 3:17-cv-02580-JO-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF PAGA SETTLEMENT**<br><br>**Date**: March 1, 2023<br>**Time**: 9:30 a.m.<br>**Courtroom**: 4C<br><br>**Judge**: Hon. Jinsook Ohta<br>**Magistrate**: Hon. Jill L. Burkhardt<br><br>**Date of Removal**: December 28, 2017<br>**Trial Date**: Vacated |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR APPROVAL OF PAGA SETTLEMENT

# **TABLE OF CONTENTS**

I.      **INTRODUCTION** ...................................................................................1

II.     **BACKGROUND AND PROCEDURAL HISTORY OF THE
        PAGA CLAIM** ......................................................................................2

        A.     **The Parties** ...............................................................................2

        B.     **Plaintiffs Commence this Action, Including Satisfying
               all PAGA Pre-Suit Notice Requirements** .............................2

        C.     **Litigations Related to Plaintiffs' PAGA Claim** ...................3

        D.     **The Court Bifurcates Trial** ...................................................5

        E.     **On the Eve of Trial, the Parties Reach this Settlement
               with the Assistance of a Mediator** ........................................6

III.    **SUMMARY OF PROPOSED SETTLEMENT** ...................................6

        A.     **The PAGA Period and PAGA Group** ...................................6

        B.     **Gross Settlement Amount** .....................................................7

        C.     **Attorneys' Fees and Costs** .....................................................7

        D.     **Settlement Administration Costs** .........................................7

        E.     **PAGA Fund** .............................................................................7

        F.     **Computation of the PAGA Fund** ..........................................8

        G.     **Distribution of the PAGA Fund** ...........................................8

        H.     **Release** ......................................................................................9

IV.     **LEGAL STANDARD** .........................................................................10

V.      **THE PAGA SETTLEMENT SHOULD BE APPROVED** ..................11

        A.     **The PAGA Settlement Is Fair and Reasonable** ...............11

               1.     *The Strength of Plaintiffs' Case Versus Risk,
                      Expense, Complexity, and Expected Duration* .........12

2. *Amount of Settlement* ....................................................14

3. *Extent of Discovery Completed and Stage of Proceedings* ...............................................................16

4. *Experience and Views of Counsel* .............................................17

**B.** **Plaintiffs' Counsel are Entitled to Reasonable Attorneys' Fees and Costs** ...................................................17

**C.** **Notice of Settlement to the LWDA** ...................................19

**VI.** **CONCLUSION** ...........................................................................20

# TABLE OF AUTHORITIES

## CASES

*Aguirre v. Genesis Logistics*,
  2015 WL 3755239 (C.D. Cal. June 16, 2015)...................................................13

*Baumann v. Chase Inv. Servs. Corp.*,
  747 F.3d 1117 (9th Cir. 2014) ...........................................................................10

*Browning v. Yahoo! Inc.*,
  2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ..................................................14

*Cardenas v. McLane Foodservice, Inc.*,
  2011 WL 379413 (C.D. Cal. Jan. 31, 2011)......................................................12

*Carrington v. Starbucks Corp.*,
  30 Cal. App. 5th 504 (2018) .............................................................................13

*Chamberlain v. Baker Hughes, a GE Co., LLC*,
  2020 WL 4350207 (E.D. Cal. July 29, 2020)....................................................19

*Ching v. Siemens Indus., Inc.*,
  No. 11-CV-04838-MEJ,
  2014 WL 2926210 (N.D. Cal. June 27, 2014)...................................................18

*Elliott v. Rolling Frito-Lay Sales, LP*,
  No. SACV 11-01730 DOC,
  2014 WL 2761316 (C.D. Cal. June 12, 2014)....................................................18

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) .............................................................................18

*Fleming v. Covidien, Inc.*,
  Case No. 5:10-CV-01487 RGK(OPx),
  Dkt. No. 236 (C.D. Cal. Aug. 12, 2011).............................................................13

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
  253 F. Supp. 3d 1074 (C.D. Cal. 2017).............................................................10

*Guifu Li v. A Perfect Day Franchise, Inc.*,
  2012 WL 2236752 (N.D. Cal. June 15, 2012)...................................................13

*Gunther v. Alaska Airlines, Inc.*,
  72 Cal. App. 5th 334 (2021) .............................................................................14

*Hanlon v. Chrysler Corporation*,
  150 F.3d 1011 (9th Cir, 1998) ..................................................11, 18

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D. Cal. 2019)......................................16

*Hartley v. On My Own, Inc.*,
  2020 WL 5017608 (E.D. Cal. Aug. 25, 2020) ........................15, 19

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .....................................................18

*Manzo v. McDonald's Restaurants of California, Inc.*,
   2022 WL 4586236 (E.D. Cal. 2022) .........................................15

*Moniz v. Adecco USA, Inc.*,
  72 Cal.App.5th 56 (Cal. App. 2021).........................................10

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).............................................16

*O'Connor v. Uber Techs., Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016)................................11, 17

*Patel v. Nike Retail Services, Inc.*,
  2018 WL 2029061 (N.D. Cal. May 8, 2019)............................11

*Ramirez v. Benito Valley Farms, LLC*,
  16-cv-04708-LHK,
  2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) ........................17

*Rodriguez v. RCO Reforesting, Inc.*,
  2019 WL 331159 (E.D. Cal. Jan. 25, 2019) ............................11

*Sakkab v. Luxottica Retail N.A., Inc.*,
  803 F.3d 425 (9th Cir. 2015) ....................................................10

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................18

*Van Lith v. iHeartMedia + Ent't, Inc.*,
  No. 1:16-CV-00066-SKO,
  2017 WL 4340337 (E.D. Cal. Sept. 29, 2017) ........................16

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 1906 (2022)......................................................................................13

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ...........................................................................15

*Wesson v. Staples Off. Superstore, LLC*,
    68 Cal. App. 5th 746 (Sept. 27, 2021) ..............................................................5

*Williams v. Superior Ct.*,
    3 Cal. 5th 531 (2017) .......................................................................................11

**STATUTES**

Cal. Lab. Code, § 226 ..........................................................................................12

Cal. Lab. Code, § 2699 ...........................................................3, 7, 10, 13, 17, 19

Cal. Lab. Code, § 2808 ..........................................................................................12

# I.    <u>INTRODUCTION</u>

Plaintiffs and Defendants (collectively the "Parties", defined below) have reached a settlement relating to Plaintiffs' representative Private Attorneys' General Act ("PAGA") claims in this independent contractor misclassification action.  The settlement is a product of arm's-length negotiations conducted by experienced counsel following years of litigation including extensive discovery and motion practice.  It was agreed upon following multi-day mediation effort with Retired Superior Court Judge, Herbert B. Hoffman which culminated in both parties accepting the mediator's proposal to settle all claims.  The PAGA settlement is fair and reasonable to Plaintiffs and their fellow aggrieved employees, and serves the purposes of PAGA and the Labor & Workforce Development Agency ("LWDA").  The PAGA Settlement and Release Agreement ("Settlement" or "SA") is attached as **Exhibit 1** to the supporting declaration of Alex Tomasevic ("Tomasevic Dec.").

The Settlement brings finality to the PAGA portion of this case[1] and avoids expending significant resources litigating these claims at trial with uncertain results.  As detailed below, all administrative requirements have been satisfied and the proposed PAGA settlement amount of $800,000 is fair, adequate, and reasonable under the circumstances. Indeed, this is a much better recovery per aggrieved worker than other cases involving allegedly misclassified workers.

Therefore, pursuant to Cal. Lab. Code § 2699(l)(2), Plaintiffs respectfully request the Court approve the Settlement, including Plaintiffs' counsel's request for reasonable attorneys' fees and costs under Cal. Lab. Code § 2699(g)(1).

---

[1] Plaintiffs also settled their individual claims against Defendants.  Declaration of Alex Tomasevic ("Tomasevic Dec."), ¶ 19.   If and when the PAGA Settlement is approved, this case will be dismissed, in its entirety, with prejudice. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR APPROVAL OF PAGA SETTLEMENT

## II.   BACKGROUND AND PROCEDURAL HISTORY OF THE PAGA CLAIM

### A.   The Parties

Plaintiffs allege that Defendants Flowers Foods, Inc., Flowers Baking Co. of California, and Flowers Baking Co. of Henderson, LLC (collectively "Defendants" or "Flowers" unless otherwise stated) operate a national baking company that markets, sells, and delivers bakery products to large retail customers through their direct-store-delivery ("DSD") business segment.   Plaintiffs further allege that Flowers uses a network of distributor "franchisees" to complete the delivery and merchandizing services for retail customers within their designated geographic territories. *See generally,* Second Amended Complaint ("SAC"), Dkt. No. 95.

Plaintiffs Simon Goro, Tony Russell, Rey Pena, Jose Pena, Jeff Belander, and Guiseppe Zizzo (collectively "Plaintiffs" unless otherwise stated) are a mix of current and former California distributors that each signed a Distributor Agreement ("DA") with Flowers Baking Co. of Henderson, LLC.  *Id.,* pp. 3-5.   For purposes of this Motion, "Distributors" means all persons who worked as distributors in California pursuant to a "Distributor Agreement" with Flowers Baking Co. of Henderson, LLC or Flowers Baking Co. of Modesto, LLC, that were classified as "independent contractors" at any time during the operative statutory PAGA period. Settlement, 3 (defining PAGA Settlement Members).

In California, over the operative statutory PAGA period, there were 447 Distributors that Plaintiffs allege are "aggrieved employees" under PAGA. *See* Settlement at Exhibit A (reflecting the PAGA group).

### B.   Plaintiffs Commence this Action, Including Satisfying all PAGA Pre-Suit Notice Requirements

On November 27, 2017, through counsel, Plaintiffs sent a 65-day PAGA notice letter to Flowers as well as the LWDA detailing the Labor Code sections Plaintiffs believe Defendants violated along with supporting facts.  Tomasevic Dec., ¶ 13, Ex.

3; and *see* Cal. Lab. Code, § 2699.3(a)(1)(A).  The LWDA confirmed receipt of the submission that same day.  *Id.,* ¶ 14, Ex. 4.  Plaintiffs obtained confirmation via certified mail that Flowers also received the letter.  *Id.*, ¶ 15, Exs. 5 (Flowers Baking 11/29/17) and 6 (Flowers Foods 12/4/17). The LWDA did not take any action based on the notice letter within the 65-day notice period or since.  *Id.*, ¶ 16.

Also on November 27, 2017, Plaintiffs filed an individual, non-class/representative complaint against Flowers in the Superior Court of California for the County of San Diego, Case No. 37-2017-00045288-CU-OE-CTL.  *See* Dkt. No. 1-2 (removed complaint).  Flowers removed the action to this Court on December 28, 2017.  *See* Dkt. No. 1.  On March 22, 2018, after waiting the requisite 65-days for the LWDA to respond or take action, Plaintiffs amended their complaint to add a representative PAGA claim.  *See* Dkt. No. 17.

In the operative SAC, Plaintiffs' PAGA claims, and associated demand for civil penalties on behalf of all similarly aggrieved Flowers' distributors, are predicated on Flowers' alleged misclassification, which deprives Plaintiffs of rights and benefits of employees under California law including, but not limited to, wages for all hours worked, appropriate overtime wages, accurate wage statements (or applicable penalties for failing to provide wage statements), the ability to take legally compliant meal and rest breaks (or applicable penalties in lieu of providing breaks), reimbursement of business expenses, reimbursement for improper deductions from pay, and waiting time penalties for former distributor Plaintiffs.  *See generally,* Dkt. No. 95 (SAC) at pp. 16-19 (PAGA allegations).

### C.    Litigations Related to Plaintiffs' PAGA Claim

After Plaintiffs added a PAGA claim to their First Amended Complaint ("FAC") (*see* Dkt. No. 17), Flowers moved to dismiss Plaintiffs' PAGA cause of action on April 12, 2018 (*see* Dkt. No. 22) and also answered Plaintiffs' FAC asserting thirty-two affirmative defenses.  *See* Dkt. No. 23.  While Flowers' motion to dismiss was pending, the Parties filed cross-motions for partial summary judgment

on November 16, 2018.  *See* Dkt. Nos. 78, 81.  On January 8, 2019, the Hon. Janis L. Sammartino granted Flowers' motion to dismiss Plaintiffs' PAGA cause of action, without prejudice,[2] and denied as moot the pending motions for partial summary judgment.  *See generally,* Dkt. No. 92.

On January 15, 2019, Plaintiffs filed the operative SAC, adding supplemental allegations to support their PAGA cause of action.  *See* Dkt. No. 95 at pp. 16-19.  On January 29, 2019, Flowers answered, again asserting thirty-two affirmative defenses. *See* Dkt. No. 98.

On March 12, 2019, Flowers filed a motion for partial summary judgment as to six of Plaintiffs' causes of action, including the PAGA claim.  *See* Dkt. No. 104. After Judge Sammartino took the Parties' cross-motions for summary judgment under submission (*see* Dkt. No. 135), Flowers moved to stay this action pending resolution of the following issues: (1) whether *Dynamex's* "ABC" test applies retroactively; and (2) whether the Federal Aviation and Administration Authorization Act ("F4A") preempts prong "B" of the ABC test.  *See* Dkt. No. 141.  On January 24, 2020, Judge Sammartino stayed this action pending the California Supreme Court's decision in *Vazquez v. Jan-Pro Franchising International, Inc.,* No. S258191 (filed Sept. 26, 2019), and denied without prejudice the Parties' cross-motions for summary judgment.  *See* Dkt. No. 166.

On September 25, 2020, this action was transferred to the Honorable Todd W. Robinson.  *See* Dkt. No. 167.  After Plaintiffs informed the Court that the California Supreme Court had issued a decision in *Vazquez* (*see* Dkt. No. 168), the Court lifted

---

[2] Flowers' motion to dismiss was based on three arguments: "(1) Plaintiffs fail to define the group of allegedly 'aggrieved employees' in the [FAC]; (2) Plaintiffs fail to allege the undefined group of 'aggrieved employees' that suffered Labor Code violations; and (3) Plaintiffs did not show that they complied with the PAGA pre-filing administrative exhaustion requirements."  *See* Order Granting Motion to Dismiss with Leave to Amend, Dkt. No. 92, at 5 (summarizing arguments).  In response, Plaintiffs requested leave to amend arguing these alleged failings were easily curable. *Id.*  The Court agreed, granting Flowers' motion to dismiss but permitting Plaintiffs leave to amend, which they accomplished via the SAC. *Id.* at pp. 6-7; and *see* SAC.

the stay.  *See* Dkt. No. 169.  Thereafter, the Parties again re-filed cross-motions for partial summary judgment.  *See* Dkt. Nos. 171, *et seq.*, 182, *et seq.*

Flowers' operative MSJ argued that the Court should grant summary judgment on the PAGA claim because it was "unmanageable" as a matter of law. It also argued for partial summary judgment on this claim relating to failing to adequately provide notice regarding claims under Labor Code section 204. *See* Dkt. No. 182-1 at 18-23. Plaintiff opposed arguing that PAGA is not a class action and that there are no "manageability" requirements at all. They further argued that PAGA was manageable in any case. Dkt. No. 190, 24-29.

Judge Robinson held that courts may strike PAGA claims based on manageability disagreeing with Plaintiffs analysis to the contrary, although he recognized a split in authority on this complex issue. *See* Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment, Dkt. No. 222, 9-10 (*citing Wesson v. Staples Off. Superstore, LLC,* 68 Cal. App. 5th 746, 283 Cal. Rptr. 3d 846, 857 n.10, reh'g denied (Sept. 27, 2021).). However, the Court found that, at the summary judgment stage, it was "not yet persuaded that Plaintiffs' PAGA claims will be unmanageable at trial." *Id.* at 11. The Court left the door open to Defendants renewing these arguments as trial approaches. *Id.* at 12.

The Court struck the PAGA claim based on Labor Code section 204 finding Plaintiff failed to give adequate notice such that they could pursue this specific PAGA remedy. *Id.* at 12-13.

### D.    The Court Bifurcates Trial

On January 3, 2022, this action was transferred to the Honorable Jinsook Ohta. *See* Dkt. No. 228.  Following a pretrial status conference on May 11, 2022 (*see* Dkt. No. 246), the Court ordered a bifurcated trial with the first phase limited to the issue of whether Prong "B" of the ABC test has been met for the named Plaintiffs.  *See* Dkt. No. 247.  Notably, the Court "defer[red] ruling on Plaintiffs' PAGA claims and will set a briefing schedule on the manageability issue upon conclusion of the

bifurcated trial on Prong B." *Id.* at p. 3.  The Court initially reserved the week of July 11, 2022 for a three-day phase one trial (*see id.* at p. 3), which was later continued, via the Parties' joint request (*see* Dkt. No. 259), to October 24, 2022.  *See* Dkt. No. 265.

### E.    On the Eve of Trial, the Parties Reach this Settlement with the Assistance of a Mediator

On October 7, 2022, after several years of litigation and extensive formal discovery and motion practice, the Parties agreed to engage in private mediation with Retired Superior Court Judge, Herbert B. Hoffman.  The Parties engaged in extensive negotiations at mediation, which involved substantial offers and counteroffers between the Parties, overseen by Judge Hoffman, for an entire day.  The mediation did not result in a settlement that day, but eventually Judge Hoffman made a "mediator's proposal." The Parties accepted Judge Hoffman's proposal several days later on October 11, 2022. The Parties continued to work on the specific terms of the settlement over many additional weeks with an extra half-day mediation with Judge Hoffman to bridge the gap on some remaining terms.  Tomasevic Dec., ¶ 19.  The Parties executed the PAGA Settlement Agreement on December 20, 2022. *See* Settlement.

## III.    SUMMARY OF PROPOSED SETTLEMENT

The material terms of the Settlement are summarized below, and are set forth in full in the Settlement attached as Exhibit 1 to the Tomasevic Declaration.

### A.    The PAGA Period and PAGA Group

The SA resolves PAGA claims from November 27, 2016 through October 11, 2022. SA at § 1. Covered "PAGA Settlement Members" means all persons who worked as distributors in California pursuant to a "Distributor Agreement" with Flowers Baking Co. of Henderson, LLC or Flowers Baking Co. of Modesto, LLC, that were classified as "independent contractors" at any time during the PAGA

Period. The 447 PAGA Settlement Members are listed on the spreadsheet attached to the Settlement as Exhibit 1.

### B.   Gross Settlement Amount

Flowers will pay a non-reversionary monetary settlement payment of $800,000 (the "Gross Settlement Amount" or "GSA"), inclusive of fees and costs.  The Gross Settlement Amount will be allocated to civil penalties, attorneys' fees and costs, settlement administration, and not to wages.  SA at §4. This is consistent with PAGA which permits recovery of certain penalties, but not underlying wages. *See* Cal. Lab. Code, § 2699(a) (permitting recovery in a PAGA action under "any provision of this code that provides for a civil penalty.").

### C.   Attorneys' Fees and Costs

Plaintiffs may ask the Court for up to 33% of the GSA as attorney's fees incurred in bringing this PAGA action, although, as set out below, Plaintiffs' counsel is only requesting 25% of the GSA ($200,000) as fees. Plaintiffs can also seek up to $20,000 in costs necessary to bring this PAGA action. If the Court approves an amount for attorneys' fees and costs that is less than the amounts requested, the Settlement Administrator will allocate the remainder to the PAGA Fund.  SA at § 4(c); and *see* Section V(B) (discussing why Plaintiffs' counsel are entitled to their reasonable fees and costs).

### D.   Settlement Administration Costs

The Settlement Administrator will receive a payment for administering the settlement, to be paid from the GSA, not to exceed $10,000, except for a showing of good cause for the Court to award more than this amount.  If the Court approves an amount for administration costs less than the amount requested, the Settlement Administrator will allocate the remainder to the PAGA Fund.  SA at §4(b).

### E.   PAGA Fund

The PAGA Fund is comprised of what is left over from the GSA ($800,000) after paying settlement administration costs (up to $10,000) and attorneys' fees

(Plaintiffs will seek $200,000) and costs (Plaintiffs may seek up to $20,000). If the Court approves the proposed Settlement without adjustment, the PAGA Fund will total $570,000. Seventy-five percent (75%) (~$427,500) will be sent to the LWDA and 25% (~$142,500) will be allocated to the PAGA Settlement Members. SA at § 4(d).

## F.    Computation of the PAGA Fund

The payments to PAGA Settlement Members will be based on the number of pay periods that each PAGA Settlement Member worked during the PAGA Period.[3] The value of a pay period will be calculated by dividing the 25% portion of the PAGA Fund paid to PAGA Settlement Members by the total number of pay periods for all PAGA Settlement Members during the PAGA Period. The resulting value will then be multiplied by the number of pay periods for each PAGA Settlement Member to calculate the individual PAGA payment ("Individual Payment"). SA at § 5(a).

## G.    Distribution of the PAGA Fund

Because this is a PAGA settlement and not a class action settlement, and because there is no claims procedure and no ability to "opt out," there will be no prior notice to the PAGA Settlement Members advising them of the Settlement. Within twenty (20) days of the Effective Date,[4] Flowers will transmit the PAGA Members' Information[5] to the Settlement Administrator. The Administrator will maintain the PAGA Members' Information in confidence and use it for no other purpose than the Settlement. Flowers will fully fund the GSA by transmitting funds to the

---

[3] "PAGA Period" means November 27, 2016 (i.e., one year prior to Plaintiff's 65-day PAGA notice letter) through October 11, 2022. *See* SA at § 1.

[4] "Effective Date" means the date when both of the following have occurred: (i) the Court issues an order granting approval of the Settlement, and the Action is dismissed with prejudice, and (ii) the Court's order approving the Settlement becomes Final. "Final" is defined in the SA and depends on whether or not objections to the Settlement are received. *See* SA at §1.

[5] "PAGA Members' Information" means PAGA Settlement Member identifying information in Flowers' possession, including for each PAGA Settlement Member: *(i)* full name; *(ii)* last known mailing address; *(iii)* social security number; and *(iv)* number of Pay Periods during the "PAGA Period." *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF PAGA SETTLEMENT

Administrator no later than thirty (30) days after the Effective Date.  Within twenty (20) days after Flowers has fully funded the GSA, the Settlement Administrator will calculate and distribute payments to the PAGA Settlement Members and to the LWDA.  SA at § 5(b).

Payments to PAGA Settlement Members will be made by check via U.S. Mail, postage prepaid, to their last known addresses.  Prior to the initial mailing to PAGA Settlement Members, the Settlement Administrator will conduct a search of the National Change of Address ("NCOA") database to update PAGA Settlement Members' mailing addresses, if necessary.  The Administrator will skip-trace and re-mail all returned, undeliverable mail within seven days of receiving notice that the mailing was undeliverable.  SA at § 5(b).

The Administrator will maintain a list of postmarked dates for the initial mailing of payments to the PAGA Settlement Members, and a list of PAGA Settlement Members who have not cashed the checks.  All checks disbursed under the terms of this Agreement will remain valid and negotiable for 180 days from the date of their execution.  The Administrator will promptly send a replacement check to any PAGA Settlement Member whose original check was lost or misplaced, as requested by the PAGA Settlement Member prior to the void date.  After 180 days, any uncashed checks will be void.  The value of these uncashed checks will be paid, by the Administrator to Refugee Net, a 501(c)(3) *cy pres* charitable organization, for the benefit of child services.  SA at § 5(b).

## H.    Release

Upon the Effective Date, and subject to Flowers funding the GSA, Plaintiffs, as representatives of the State of California and on behalf of the LWDA and the PAGA Settlement Members, will fully and finally release the Released Parties[6] from

---

[6] "Released Parties" means (a) Flowers Baking Co. of Henderson, LLC; (b) Flowers Foods, Inc.; (c) Flowers Bakeries, LLC; (d) Flowers Baking Co. of California, LLC; (e) Flowers Baking Co. of Modesto, LLC and (f) all of Flowers' current or former parent companies, subsidiary companies, and/or related, affiliated, or predecessor companies, partnerships, and/or joint ventures, and, with respect to each of them, all

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

all claims for PAGA penalties during the PAGA Period that were alleged, or that could have been alleged based on the facts alleged in, the PAGA Notice and this action (the "Released PAGA Claims").  SA at § 6(a).[7]

## IV.   LEGAL STANDARD

PAGA provides that "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part."  Cal. Lab. Code, § 2699(l)(2).  It further provides that "[t]he proposed settlement shall be submitted to the [LWDA] at the same time that it is submitted to the court."[8]  *Id.*  Theses statues regarding PAGA approval are "surprisingly short on specifics." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.,* 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017).

On the one-hand, we know PAGA is not a class action. *Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (contrasting PAGA and Rule 23 actions); *Baumann v. Chase Inv. Servs. Corp*., 747 F.3d 1117, 1121-1123 (9th Cir. 2014) ("Rule 23 and PAGA are more dissimilar than alike."). Despite this, as the PAGA approval standard comes into focus, it appears to have class action-like components for approval. As a recent state-level appellate court explains, the plain language of PAGA is consistent with "a standard requiring the trial court to determine independently whether a PAGA settlement is fair and reasonable. . . ." *Moniz v. Adecco USA, Inc.*, 72 Cal.App.5th 56, 76 (Cal. App. 2021). Relevant factors include the "strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation. . . , the extent of discovery completed and the stage of the proceedings, [and] the experience and views of counsel. . . ." *Id.*

---

of its past, present, and future employees, officers, partners, principals, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting by, through, under, or in concert with any of the persons or entities listed in this subsection, and their successors.  Said parties shall be referred to collectively herein as the "Released Parties." SA at § 1.

[7] This release is based on the Los Angeles Superior Court's Model PAGA Settlement Agreement, available at: https://www.lacourt.org/forms/pdf/LACIV298.pdf.

[8] Plaintiffs have satisfied this requirement.  *See* Section V(C).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

Consistently, the California Supreme Court likewise instructs that a court's review of a PAGA settlement is to "ensur[e] that any negotiated resolution is fair to those affected." *Williams v. Superior Ct.,* 3 Cal. 5th 531, 549 (2017).

In line with the above, district courts in this Circuit often apply some aspects of the relevant class-approval factors identified in *Hanlon v. Chrysler Corporation,* 150 F.3d 1011, 1026 (9th Cir, 1998), to evaluate the fairness of a proposed PAGA settlement. *See Rodriguez v. RCO Reforesting, Inc.,* 2019 WL 331159, at *4 (E.D. Cal. Jan. 25, 2019) (collecting cases). The *Hanlon* factors that may apply to a PAGA settlement include: (i) the strength of plaintiff's case; (ii) the risk, expense, complexity, and likely duration of further litigation; (iii) the amount offered in settlement; (iv) the extent of discovery completed and stage of proceedings; and (v) the expertise and views of counsel. *See Patel v. Nike Retail Services, Inc.,* 2018 WL 2029061, at *2 (N.D. Cal. May 8, 2019) (citing *Hanlon,* 150 F.3d at 1026). These class action-light, *Hanlon* factor to evaluate a PAGA settlement should be interpreted "in light of PAGA's public policy goals" of "benefitting the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Patel,* 2018 WL 2029061, at *2 (citing *O'Connor v. Uber Techs., Inc.,* 201 F. Supp. 3d 1110, 1132-33 (N.D. Cal. 2016)).

## V.    THE PAGA SETTLEMENT SHOULD BE APPROVED

The PAGA settlement here is fair, adequate, and reasonable under the relevant considerations. The requested administrative, attorney fee and costs figures are also well-supported.

### A.    The PAGA Settlement Is Fair and Reasonable

Under *Moniz* and the weight of district court authorities discussed above, the Court should approve this PAGA settlement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

1. *The Strength of Plaintiffs' Case Versus Risk, Expense, Complexity, and Expected Duration*

Plaintiffs believe this is a strong case for misclassification liability, but proceeding through judgment and possible appeal in a PAGA case is risky, expensive, complex, and may take years to accomplish.

To recover PAGA penalties, Plaintiffs "would be required to prove at trial each of the underlying Labor Code violations." *See e.g. Cardenas v. McLane Foodservice, Inc.,* 2011 WL 379413, at *3 (C.D. Cal. Jan. 31, 2011) ("Given the statutory language [of PAGA], a plaintiff cannot recover on behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant."). In a misclassification case like this one, the first step in that process involves showing that the allegedly aggrieved workers were in fact employees under California law subject to the protections of our state's labor laws. Plaintiffs believe they would have accomplished this at the first phase of the bifurcated trial scheduled in this matter, especially in light of the successful motion for partial summary judgment on this issue by Plaintiff Russell, but it is not without risk.

After proving Flowers misclassifies its Distributors like Plaintiffs, they would then need to demonstrate the underlying Labor Code violations giving rise to PAGA penalties at a later stage of the trial. This is where the case is riskier and more complex. To even present the PAGA case at trial, Plaintiffs would first have to overcome the manageability hurdle left open at the MSJ-phase of the case. *See* Dkt. No. 222 at p. 12 (the Court holding that Flowers "may renew their argument [that Plaintiffs' PAGA claims are unmanageable] as this case approaches trial."). Plaintiffs again believe they would have overcome such a challenge and they intended to focus on violations of the law that necessarily occur each week for each Distributor so that calculating penalties would be relatively simple. Tomasevic Dec., ¶ 21. These claims include failure to reimburse (§ 2808), willful misclassification (§ 226.8), and wage statements (§§ 226, 226.3). *Id.* But Flowers also has defenses to each of these claims,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

namely that its "margin" style of pay intends to cover expenses and that it did not act "willfully" or intentionally in misclassifying its Distributors, a finding necessary to both willful misclassification as well as wage statement penalties. *Id.*

Flowers also has arbitration agreements with some aggrieved workers and arbitration in the PAGA context is an evolving topic which may cut against recovery of some penalties. *See e.g. Viking River Cruises, Inc. v. Moriana,* 142 S. Ct. 1906, 1924 (2022) (overruling in part California's *Iskanian* rule which prohibited arbitration of certain aspects of PAGA).

Still further, PAGA gives a fact-finder wide discretion to fix the amount of penalties, e.g. to award far less than the maximum amount under the law.  *See* Cal. Lab. Code, § 2699(e).  The fact-finder may do so if at any point it finds the penalties to be "unjust," or "oppressive" under the circumstances.  *Id.*  For example, in *Carrington v. Starbucks Corp*., 30 Cal. App. 5th 504, 519 (2018), the appellate court upheld the trial court's decision to issue only 10% ($5 out of $50) of the maximum penalty amount at issue in that case. *See also Fleming v. Covidien, Inc.*, Case No. 5:10-CV-01487 RGK(OPx), Dkt. No. 236 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalty to 18% of total proven liability).

Further still, Plaintiffs' PAGA theory rests in part on holding Defendants for multiple violations per pay period (i.e. seeks multiple penalties for a single pay period for both deficient wage statements and failing to reimburse). Some courts do not permit "stacking" or duplication of PAGA penalties which would undercut most of the exposure Plaintiffs seek in this case. *See, e.g., Guifu Li v. A Perfect Day Franchise, Inc*., 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (not allowing duplicate PAGA penalties for a single pay period); *Aguirre v. Genesis Logistics*, 2015 WL 3755239, at *3 (C.D. Cal. June 16, 2015) (same).

Along the same lines, Plaintiffs also planned to seek "initial" penalties under PAGA for only the first pay period in which the violation occurred and the higher "subsequent" penalty rate for recurring violations. *See* Cal. Lab. Code, § 2699(f)

(discussing "initial" versus "subsequent" violations and the respective amounts of penalties owed). While Plaintiffs believe Flowers was sufficiently on notice of the labor practices giving rise to this case such that "subsequent" penalties are appropriate, there is case law finding that "civil penalty for 'subsequent violation[s]' does not apply unless [plaintiff] presents evidence that the Labor Commission or a court notified [employer] that it was in violation of the Labor Code," which has not occurred here. *See Gunther v. Alaska Airlines, Inc*., 72 Cal. App. 5th 334, 287 (2021); and *Amaral v. Cintas Corp.,* 163 Cal. App. 4th 1157, 1209 (2008) (interpreting similarly worded penalty provision and finding that only $50 "initial violation" could be imposed because the employer had not been notified by the Labor Commissioner or a court "that it is violating a Labor Code provision").

Plaintiffs must consider the above risks and uncertainties when valuing PAGA settlement ranges and possible outcomes. These kinds of legal uncertainties favor approval of a settlement.  *See, e.g., Browning v. Yahoo! Inc.,* 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement – particularly those which go to fundamental legal issues – favor approval.")

### 2.   Amount of Settlement

The GSA further supports approving this PAGA settlement. As an initial matter, this sum was only reached after both parties accepted a mediator's proposal following a full-day mediation on the eve of trial. *See* Section II(E), *supra*. This reflects Plaintiffs' efforts to maximize recovery and obtain the strongest award possible.

Further still, the per-worker value of the settlement is substantially higher than in other approved independent contractor misclassification settlements against larger Defendants like Doordash and Uber. Here, there are 447 Distributors who will receive PAGA payments under the settlement. That is a value of $1,789.71 per Distributor based on the GSA. In a PAGA-only case, Uber paid just over $5 per aggrieved worker. Tomasevic Dec., ¶ 30, Exs. 8 (Uber final PAGA settlement order)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

and 9 (Uber motion to approve PAGA settlement) . In another driver misclassification case, as part of a hybrid settlement of class and PAGA claims, DoorDash agreed to pay $12,500,000 towards PAGA which would go to roughly 973,345 drivers who provided services to DoorDash in California. *See* Tomasevic Dec., ¶ 29, Ex. 7 (Final Approval Order and Judgment in *Marko v. DoorDash, Inc.*) at ¶¶ 11, 16 (reflecting amounts paid to settle PAGA and the number of individuals that would receive the PAGA distribution). This is a value of only $12.84/PAGA group member.

Finally, while the recovery is relatively small compared to the vast PAGA exposure in this case, that does not make it unreasonable. In this context, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved had plaintiffs prevailed at trial." *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 246 (2001). Here, Plaintiffs intended to seek just over $50 million in PAGA penalties at trial. Tomasevic Dec., ¶ 22. However, as touched upon above, this figure represents "stacked" penalties for multiple violations per pay period and it reflects the maximum amount of the "subsequent" violation rate which Plaintiffs may not obtain. And it assumes the Court would not discretionarily reduce the amount at all, which could happen. See *id.*; and *see* Section V(A)(i), *supra* (discussing these risks). If we assume no stacking and only initial violation rates under Plaintiffs' strongest claim for failing to provide reimbursements, exposure would be just over $8,000,000 before discretionary reductions. Tomasevic Dec., ¶ 22. The GSA reflects 10% of that amount and approximately 1.6% of the maximum exposure value of $50 million.

Courts routinely approve PAGA settlements in this range of recovery to potential exposure. *See Manzo v. McDonald's Restaurants of California, Inc.,* 2022 WL 4586236, at *7 (E.D. Cal. 2022) (PAGA penalty of less than 1% of the potential verdict value); *Hartley v. On My Own, Inc.,* 2020 WL 5017608, at *4 (E.D. Cal. Aug. 25, 2020) (PAGA penalty of 3.47% of verdict value, resulting in average payment per employee of $61); *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959,

972-74 (N.D. Cal. 2019) (citing cases reflecting approval of settlements with PAGA penalties at 0.2% to 1.1% of the verdict value).

Given the risks of proceeding with this action, and the discretion afforded under PAGA, the Court should find the PAGA settlement amount here is a fair, reasonable, and adequate compromise under the circumstances.

### 3.   Extent of Discovery Completed and Stage of Proceedings

"As to the factors pertaining to the extent of discovery completed and the stage of proceedings, '[a] settlement following sufficient discovery and genuine arms-length negotiation is <u>presumed</u> fair.'" *Van Lith v. iHeartMedia + Ent't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 4340337, at *12 (E.D. Cal. Sept. 29, 2017) (citation omitted) (emphasis added).  "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties have arrived a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citation omitted).

This case was settled after nearly five years since filing and within weeks of trial.[9]  The parties exchanged multiple sets of written discovery and voluminous documents, and completed nearly a dozen party and expert depositions, among other forms of discovery.  Through this robust exchange, Plaintiffs obtained relevant data from Flowers, including the number of putative aggrieved employees and pay periods at issue, to estimate potential penalties over the PAGA period.  Plaintiffs' counsel, who (as discussed below) are experienced employment class and PAGA litigators, represent that this data was sufficient to allow them to conduct a full damages analysis.  Tomasevic Dec., ¶ 23.  Indeed, Plaintiffs were ready to prove damages at trial via expert testimony based on the data they obtained. *Id*. at ¶ 23.

---

[9] Indeed, the Parties had submitted all pre-trial filings prior to reaching this Settlement.  *See* Dkt. Nos. 235-264.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

Given the extent of discovery completed and the end stage of proceedings, the Court should find this factor weighs in favor of approval of the Settlement, which is a studied compromise after a vigorous prosecution by both sides.

### 4.    Experience and Views of Counsel

The Parties are represented by competent, experienced and sophisticated counsel who endorse this Settlement.  Plaintiffs' counsel, Nicholas & Tomasevic, LLP, have substantial class and PAGA litigation experience, having tried several to verdict, and are fully aware of the legal and factual issues in this case.  Tomasevic Dec., ¶¶ 2-11.  When, as here, counsel are experienced PAGA litigators, their "view of the possible results and risks from this type of litigation [PAGA] is entitled to great weight."  *Ramirez v. Benito Valley Farms, LLC,* 16-cv-04708-LHK, 2017 WL 3670794, at *5 (N.D. Cal. Aug. 25, 2017).  Further, the experience and views of the Parties' counsel, support a presumption of fairness as well as a finding that the settlement is adequate and reasonable.  *See Wershba,* 91 Cal. App. 4th at 245.  This factor favors approval.

*            *            *            *            *

Taken as a whole, the relevant approval factors demonstrate that the settlement is fair and reasonable under PAGA's policy goals.  *See O'Connor,* 201 F. Supp. 3d at 1132-33.  The Parties reached settlement on the PAGA claims only after arms-length negotiations aided by an expert mediator, and through extensive investigation of the underlying facts and law.  Furthermore, the percentage of trial exposure to recovery is well in line with settlements approved by other courts and the per-employee value of this settlement is much higher than other analogous independent contractor misclassification PAGA settlements.

## B.    Plaintiffs' Counsel are Entitled to Reasonable Attorneys' Fees and Costs

PAGA provides for the recovery of attorneys' fees and costs.  Cal. Lab. Code § 2699(g)(1).  However, the PAGA statute does not provide a specific standard for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

evaluating attorneys' fees in connection with a settlement of PAGA claims. *Id.* Here, the Settlement calls for up to 33% of the GSA to go towards attorney's fees in addition to $20,000 in costs. *See* Section III(C). Plaintiffs seek only 25% of the GSA ($200,000) in fees in addition to the $20,000 in costs permitted under the settlement. This is consistent with the Ninth Circuit's "'benchmark' fee award [which] is 25%." *See Fischel v. Equitable Life Assurance Soc'y of U.S.,* 307 F.3d 997, 1006 (9th Cir. 2002).

In calculating the reasonable attorney's fees, district courts have discretion to choose between a lodestar method or a "percentage method." *Hanlon*, 150 F.3d at 1029. Where, as here, a fund has been created, an award of fees on percentage basis is the norm. "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.*" In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (describing "significant benefits to the percentage approach"). As the Ninth Circuit has recognized, "since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the [district] court need not inquire into the reasonableness of the fees at even the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton v. Boeing Co.,* 327 F.3d 938, 966 (9th Cir. 2003). An award of 25 percent of the common fund is "presumptively reasonable." *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) (*citing In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 942).

While the above authorities mainly address class action settlements, courts routinely apply the same analysis in a PAGA settlement context (much like the evaluation of the overall settlement as shown above). *See, e.g. Chamberlain v. Baker*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT

*Hughes, a GE Co., LLC,* 2020 WL 4350207 (E.D. Cal. July 29, 2020) and *Hartley v. On My Own, Inc.,* 2020 WL 5017608 (E.D. Cal. Aug. 25, 2020).

The requested attorney's fees of $200,000 here is the "benchmark" and is presumptively reasonable. While the Court need not engage in a lodestar cross-check, this amount is also readily supported by doing so. While this case had various components, Plaintiffs endeavor to isolate and explain the reasonable attorneys fees that went into prosecution of this PAGA case over the last 5 years. Tomasevic Dec., ¶ 35. As reflected in the Tomasevic Declaration and its attachments, Plaintiffs lodestar relating to the PAGA cause of action is well over $250,000 meaning Plaintiffs seek a "negative multiplier" to arrive at the $200,000 that they request here. This is more than reasonable.

Furthermore, in this case, Plaintiffs incurred just over $35,000 in costs in prosecuting this hybrid individual and PAGA action. *See* Tomasevic Dec., ¶ 36, Ex. 10. Plaintiffs request that the Court award one-third of these incurred costs, or $11,666.67, to Plaintiffs for their efforts in securing this PAGA settlement. *See* Cal. Lab. Code § 2699(g)(1) (permitting recovery of costs in a PAGA action). Costs were not and could not practically have been tracked separately for PAGA and non-PAGA claims (i.e. the various deposition and expert costs went towards both aspects of the case), however, Plaintiffs' counsel believe attributing one-third of the costs to PAGA is fair and reasonable. Tomasevic Dec., ¶ 36.

C.    **Notice of Settlement to the LWDA**

Pursuant to Cal. Lab. Code, § 2699(l)(2), in conjunction with this Motion, Plaintiffs will submit a copy of the proposed Settlement to the LWDA through their online portal.  Tomasevic Dec., ¶ 34.  Plaintiffs' counsel will thereafter submit a supplemental declaration to inform the Court that the Settlement has been submitted to the LWDA and providing the receipt of submission that is received after submitting the proposed Settlement to the LWDA through the online portal.  *Id.*

1

## VI.   <u>CONCLUSION</u>

2         For the foregoing reasons, the proposed Settlement achieves PAGA's public

3   policy objectives and is fair, adequate, and reasonable.  Plaintiffs respectfully request

4   the Court approve the Settlement, enter the Final Order submitted herewith, and order

5   that Judgment be entered according to the terms of the Settlement and dismiss this

6   Action with prejudice in its entirety.

7

8   Respectfully submitted:

9   Dated:  January 6, 2023                           **NICHOLAS & TOMASEVIC, LLP**

10

11                                            By:     <u>/s/  Shaun Markley</u>
                                                      Craig M. Nicholas (SBN 178444)
12                                                    Alex Tomasevic (SBN 245598)
                                                      Shaun Markley (SBN 291785)
13                                                    225 Broadway, 19th Floor
                                                      San Diego, California 92101
14                                                    Tel: (619) 325-0492
                                                      Fax: (619) 325-0496
15                                                    Email: cnicholas@nicholaslaw.org
                                                      Email: atomasevic@nicholaslaw.org
16                                                    Email: smarkley@nicholaslaw.org

17                                                    Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF PAGA SETTLEMENT