**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GORO, an individual; TONY RUSSELL, an individual; REY PENA, an individual; JOSE PENA, an individual; JEFF BELANDER, an individual; GIUSEPPE ZIZZO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKING CO. OF CALIFORNIA, LLC, a California limited liability company; FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:17-cv-02580-JO-JLB<br><br>**DECLARATION OF ALEX TOMASEVIC IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF PAGA SETTLEMENT**<br><br>**Date**: March 1, 2023<br>**Time**: 9:30 a.m.<br>**Courtroom**: 4C<br><br>**Judge**: Hon. Jinsook Ohta<br>**Magistrate**: Hon. Jill L. Burkhardt<br><br>**Date of Removal**: December 28, 2017<br>**Trial Date**: Vacated |

I, Alex Tomasevic, declare:

1. I am an attorney at law duly licensed to practice before all of the courts of the State of California; U.S. District Court for the Southern, Northern, Central, and Eastern Districts of California; the U.S. Court of Appeals for the Ninth Circuit; and the U.S. Supreme Court. I am a partner with the law firm of Nicholas & Tomasevic, LLP, counsel for record for Plaintiffs. I am familiar with the facts of this case and if called upon as a witness I could testify to the following facts based on my own personal knowledge. I make this declaration in support of Plaintiffs' Motion for Approval of PAGA Settlement.

## Firm Background and Experience

2. The following is a brief description of my and my firm's relevant professional background. Nicholas & Tomasevic, LLP ("N&T" or "Class Counsel") has extensive experience handling complex employment and consumer class, collective, and representative actions. This type of case has accounted for half or more of the work we perform for the last 16+ years. N&T has tried certified class actions to conclusion, PAGA actions to conclusion, and litigated many more class or representative actions through resolution, having recovered tens of millions of dollars for class members over the years.

3. N&T's experience includes successful representation of workers classified as "independent contractors." For example, N&T recently certified a class action and settled class and representative claims on behalf of mobile tool distributors classified as independent contractors. *See Fleming v. Matco Tools Corp.,* No. 19-CV-00463-WHO, 2021 WL 673445, at *1 (N.D. Cal. Feb. 21, 2021) (class certification order); *Fleming v. Matco Tools Corp.*, No. 19-CV-00463-WHO, at Dkt. No. 111 (order granting final approval of class and representative settlement). N&T also successfully represented a group of bakery distributors classified as independent contractors in *Ronnie Virissimo, et al. v. Voortman Cookies LTD*, AAA Case No. 01-19-0003-1385. Furthermore, N&T recently

certified class claims on behalf of individuals classified as independent contractors in *Salinas v. Cornwell Quality Tools Co.,* No. 519CV02275FLASPX, 2022 WL 16735823, at *1 (C.D. Cal. Oct. 17, 2022) and *Ludlow v. Flowers Foods, Inc.,* No. 18CV1190-JO-JLB, 2022 WL 2441295, at *1 (S.D. Cal. July 5, 2022).

4. Our firm's experience also extends to other types of complex wage per hour and consumer cases. N&T successfully litigated *Moyle v. Liberty Mutual* in 2018 recovering over $30 million in benefits against Liberty Mutual on behalf of Liberty Mutual employees in the United States District Court, Southern District of California. Also, in 2018, we helped recover over $25 million for consumers against Procter & Gamble for unfair competition and related claims related to their marketing and sale of certain dietary supplements. We also obtained court approval of a class action settlement in *Loera v. Akal*, a California Superior Court case involving wage/hour issues. This case settled after the first phase of trial and the employees were ultimately awarded about $10 million in damages.

5. We were also counsel of record, having briefed and appeared before the United States Supreme Court in the landmark 2011 case of *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, and have a lengthy history of fighting for employee and consumer rights, and against forced private arbitration, in the class action context, having litigated this landmark case and related cases.

6. We currently serve as lead class counsel or co-lead class counsel in several certified class actions, including employment cases, pending in the state and federal courts, such as the *Ludlow* and *Salinas* matters mentioned above, as well as *Knox v. Planet Fitness* (San Diego Superior Court) and *Garcia v. Cardinal Health* (same).  We are also currently serving as appointed class counsel for a class of over 100,000 Californians in *Munguia-Brown, et al. v. Equity Residential, et al.* (N.D. Cal Case No. 16-cv-01225).  I, and my colleagues at N&T, have been found to be adequate class counsel in every certified case that we have ever sought to be deemed as such – in more than 40 matters.

7. Each partner from N&T responsible for litigating this case from inception through settlement is also well experienced in these types of matters. Craig Nicholas has been in practice as a class action and civil litigation attorney since 1995 and has been approved as class counsel in wage and hour matters in many actions throughout the State of California. Craig teaches seminars on how to depose expert witnesses and on trial techniques. He has been selected for inclusion in *SuperLawyers* magazine as one of the top attorneys in San Diego for 2008-2019. In 2009, *The San Diego Daily Transcript* identified Craig as one of the top 25 corporate litigators in San Diego County. He served on the Executive Board of Directors of the William Enright Chapter of the American Inns of Court. He was an Associate with the Louis Welsh Chapter of the American Inns of Court in 2001. He was also a former President and a member of the Board of Directors of the State Bar of California Young Lawyers Division.

8. I (Alex Tomasevic) graduated *cum laude* from the University of San Diego School of Law after which I was admitted to the California Bar in 2006. I was selected as a Thomson Reuters "Super Lawyer" from 2018-2023 in the field of Class Actions and Mass Torts. Previously, I received recognition as a Thomson Reuters "Rising Star" in the same field and was part of the San Diego Business Journal's "Best of the Bar." I have written and spoken on employment law and litigation, including on behalf of the San Diego Bar Association.

9. Shaun Markley has been practicing since 2013 and is a graduate of The Ohio State University's Moritz College of Law. While at Ohio State, Shaun was an Academic Merit Scholar and received the CALI Award for Excellence in Professional Responsibility. Since 2015, Shaun's practice has primarily focused on class and representative action litigation of wage per hour and other types of employment claims. He has been instrumental in securing several hard-fought, large class action settlements to recover wages and penalties on behalf of California

workers, in particular in the field of independent contractor misclassification. Shaun has litigated over a dozen such matters.

10. The above attorneys also closely follow legal developments in the misclassification and PAGA practice area. Based on this, N&T is amply able to evaluate the proposed settlement agreement on behalf of the PAGA group.

11. N&T's rates are reasonable and are routinely approved as such by other courts. N&T's rates reflected in Exhibit 2 range from $450 to $700 for attorneys and are $195 for paralegals. *See* **Exhibit 2**. These are 2022 rates which will increase going into this new year. In the local marketplace, courts routinely approve such rates as reasonable for experienced, plaintiff-side class counsel. *See*, *e.g.*, *Stuart v. Radioshack Corp.* (N.D. Cal. Aug. 9, 2010) 2010 WL 3155645, at *6 [approving an average rate of $708 in wage and hour class action]; *Spano v. Boeing Co.*, No. 06-CV-743-NJRDGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) [approving hourly rates of $460 to $998 for attorneys, $309 for paralegals, and $190 for legal assistants]; Laffey Matrix http://www.laffeymatrix.com/see.html (last visited December 2022) (setting forth rates between $508 to $997 for attorneys of similar experience levels). Several courts have found these same or very similar rates reasonable. *See e.g. Duran v. Obesity Research Institute, LLC*, Case No. 37-2013-00048664-CUBT-CTL (San Diego Superior Court) (March 6, 2020 Final Approval Order and Judgement finding these same rates for Class Counsel reasonable); *Hayes v. 7180 Sunset Blvd., Inc.*, Case No. BC597517 (Los Angeles Superior Court) (June 6, 2019 Order Granting Final Approval of Class Action Settlement based on reasonableness of attorneys fees, among other factors); *Zelaya v. Foot Locker Retail, Inc.*, Case No. 2017-1-CV-409812 (Santa Clara Superior Court) (April 5, 2019 Order Re: Motion for Final Approval of Class Action Settlement approving fee request of Class Counsel); *Fleming v. Matco Tools Corp.*, No. 19-CV-00463-WHO, at Dkt. No. 112 (order granting attorney fee motion). Furthermore, given my experience performing both hourly and contingent work for

over 16 years, I believe these rates are reasonable and in line with what other lawyers in the San Diego community charge for similar types of representation.

### This Litigation

12. I have been one of the partners at my firm chiefly responsible for litigating this case. As such I am familiar with the history of this litigation which I set out in part below.

13. On November 27, 2017, through counsel, Plaintiffs sent a 65-day PAGA notice letter to Flowers as well as the LWDA detailing the California Labor Code sections Plaintiffs believe Defendants violate along with supporting facts. A true and correct copy of this letter is attached as **Exhibit 3**.

14. The LWDA confirmed receipt of the PAGA notice letter this same day. **Exhibit 4** reflects the LWDA's confirmation.

15. Plaintiffs also confirmed that Defendants received the PAGA notice letter as reflected in **Exhibits 5** and **6**.

16. The LWDA did not timely take action or otherwise respond to the PAGA notice other than confirming receipt.

17. Plaintiff's Motion for Approval of PAGA Settlement traces the procedural history of the PAGA-related litigation in this case in Section II(C)-(D).

### The PAGA Settlement

18. The PAGA Settlement and Release Agreement ("Settlement" or "SA"), attached in full as **Exhibit 1**, is the result of arm's-length negotiations involving experienced employment counsel who are well-versed in the applicable substantive law, PAGA litigation procedures, and the legal and factual issues of this particular case.

19. The parties attended a full-day mediation with Retired Superior Court Judge, Herbert B. Hoffman on October 7, 2022. No settlement was reached this day, but the parties accepted a mediator's proposal in the days following the first mediation session. This proposal resolved Plaintiffs' individual claims for damages

as well as the PAGA claim which Plaintiffs now ask the Court to approve. Negotiations on terms of the settlement continued for weeks thereafter with a second mediation session held on October 31, 2022 which successfully resolved outstanding issues.

20.   I believe this Settlement is fair, adequate, and reasonable. As reflected in the moving papers, while Plaintiffs believe they have strong claims for misclassification, they also recognize that a trier of fact may find that Distributors are bona fide independent contractors which would mean $0 in penalties. Furthermore, proceeding through judgment and possible appeal in this case is risky, expensive, complex, and may take years to accomplish.

21.   Plaintiffs intended to focus on three primary violations of law at the PAGA penalties phase of the case: failure to reimburse (§ 2808), willful misclassification (226.8), and failure to provide accurate wage statements (226, 226.3).

22.   For the three violations Plaintiffs intended to focus on at trial, Plaintiffs' expert report calculated maximum penalties in the amounts of:

- Cal. Lab. Code, § 2802 Reimbursements: $15,957,200.
- Cal. Lab. Code, § 226.8 Intentional Misclassification: $15,957,200.
- Cal. Lab. Code, §§ 226, 226.3 Wage Statements: $19,946,500.

This put potential PAGA penalties just over $50 million. These figures assumed that each individual PAGA violation could be recovered each pay period (i.e. that penalties could "stack"), that only the first pay period for each worker was an "initial" violation with all others being at the higher "subsequent" rate, and that there would be no discretionary reduction in the amounts. Absent stacking and taking penalties at only an "initial" violation rate, maximum exposure would be closer to $8 million.

23.   Given the stage of the case and the discovery undertaken, I believe my firm had all relevant data needed to evaluate the potential range of PAGA outcomes.

We were prepared to present PAGA penalties at trial via expert testimony no damages.

24. Throughout the course of this case, including in pretrial filings, I understand Defendants intended to present evidence that each of these penalties are not recoverable even if they misclassified Distributors. Specifically, Defendants contend their "margin" style of pay intends to cover expenses and that they did not act "willfully" or intentionally in misclassifying Distributors. While Plaintiffs planned to overcome these defenses, there is a chance the trier of fact would have awarded no penalties based on these defenses or that the trier of fact would have reduced penalties where the defenses had some merit. As set out in the moving papers, courts frequently exercise their powers to reduce the amount of PAGA penalties even where the underlying violations of the California Labor Code are adequately demonstrated at trial.

25. There is also a chance that the PAGA penalties phase of the case would not go forward at all given that the Court left open the possibility that these claims would be unmanageable for trial and dismissed as Flowers argued throughout this case. *See* Dkt. No. 222 at p. 12 (the Court holding that Flowers "may renew their argument [that Plaintiffs' PAGA claims are unmanageable] as this case approaches trial.").

26. Arbitration poses further risk in this case. California's *Iskanian* rule prohibiting pre-dispute arbitration agreements from mooting PAGA claims was recently overturned in *Viking River Cruises, Inc. v. Moriana,* 142 S. Ct. 1906, 1924 (2022). While the named Plaintiffs claims here were not subject to any arbitration provision, many of the PAGA group members have arbitration agreements with Defendants. Under *Viking River*, courts are grappling with PAGA standing and the scope thereof when arbitration agreements exist for some or all of the aggrieved employees. While there is a healthy split developing in the lower courts, some are dismissing PAGA causes of action based on arbitration agreements. *See e.g.*

*Johnson v. Lowe's Home Centers, LLC*, No. 221CV00087TLNJDP, 2022 WL 4387796, at *4 (E.D. Cal. Sept. 22, 2022). This moving dynamic creates risk for Plaintiffs' ability to recover under PAGA and the scope thereof.

27. "Stacking" in the PAGA context creates further risk to Plaintiffs' ability to fully recover the penalties sought in this action. As set out in the moving papers, several courts have held that a PAGA plaintiff cannot recover for multiple violations in a single pay period. This would mean, for example, that Plaintiffs may recover for failure to reimburse in a workweek, but they could not also recover for a wage statement violation that same week. This would risk reducing PAGA penalties to roughly one third of the amounts sought given the three PAGA theories pursued by Plaintiffs here.

28. Whether Plaintiffs could recover the "initial" or "subsequent" penalty amount is also debated here. Flowers has never been held liable for PAGA penalties in the past which means that it is not liable for any "subsequent" violation amount for any pay periods at issue. This would cut PAGA exposure in half given the "subsequent" amount is two times larger than the initial violation amount. *See* Cal. Lab. Code, § 2699(f).

29. In evaluating the PAGA settlement here, we reviewed and considered closely other awards reached after trial and other settlements reached in analogous contexts. In two notable cases against companies accused of misclassifying their distribution workforce, DoorDash and Uber both paid less than $13 per aggrieved worker to resolve similar claims against them. The DoorDash settlement provided for $12.5 million to PAGA claims covering more than 970,000 aggrieved workers. The Final Approval Order in the DoorDash matter setting out these figures is attached as **Exhibit 7**. Paragraphs 11 and 16 set forth the amount allocated to PAGA penalties and the number of aggrieved workers respectively.

30. Uber paid $7,500,000 to resolve PAGA claims pursued by approximately 1.5 million drivers. The Order Granting Approval of PAGA

Settlement and Judgment Thereon is attached as **Exhibit 8**. The moving papers in support of this order which list the 1.5 million approximate workers is attached as **Exhibit 9** (*see* p. 8 for worker information).

31. The plan of allocation of the Settlement to PAGA members is fair and reasonable. Settlement, § 5(a). It is based on the same methodology that creates liability in the first instance: pay periods (or workweeks) in which alleged violations took place. This is the standard way to apportion damages in situations involving group recovery like class or representative actions.

32. The administrative costs are also fair and reasonable. Counsel for the parties obtained several bids from various settlement administrators and ILYM Group, Inc.'s was the least expensive.

33. The parties have also agreed that uncashed checks will *not* revert back to Defendants. Instead, they will be distributed to a *cy pres* charitable organization, Refugee Net. My firm and the Plaintiffs have no financial interest and stand to gain no benefit from this election.

34. Prior to filing the instant Motion for Approval of PAGA Settlement, my office submitted the Settlement to the LWDA.

### **Attorney's Fees and Costs Incurred to Date**

35. While this case involved both the individual claims of the six named Plaintiffs in addition to the representative PAGA cause of action, in an effort to permit the Court to do a loadstar cross-check if it so desires, I summarize here the attorney's fees that went into litigating the PAGA aspects of this case over the last five years. Attached as **Exhibit 2** is an estimated breakdown, by time keeper and activity, of all the hours my firm put into the PAGA aspect of this case. I discussed these estimates with several members of our litigation team and we all believe the estimates are reasonable and conservative based on our work on this matter over the years. All in all, my firm dedicated well over 500 hours of time to litigate the

PAGA aspect of this case. Based on our hourly rates, this amounts to a loadstar of over $250,000 which exceeds the $200,000 that we seek in attorney's fees.

36. Plaintiffs also incurred just over $35,000 in costs in prosecuting this hybrid individual and PAGA action. I am attaching as **Exhibit 10** a copy of our internal costs report relating to costs incurred in this matter reflecting this amount. While many costs, like deposition transcripts, expert costs, and other filing fees, cannot be cleanly or easily broken out between PAGA and individual claims, I believe allocating one third of the costs to the PAGA component of this case is fair and reasonable. This is so based on my perception of the amount of relative efforts and work that went into the various components of the case as it unfolded over the last five years. The largest such expense relates to deposition transcripts and expert fees, both of which went towards development of both individual and PAGA claims. Plaintiffs request that the Court award one-third of their incurred costs from the PAGA settlement, or $11,666.67.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 6, 2023, in San Diego, California.

By: _/s/ Alex Tomasevic_
Alex Tomasevic

Declarant/Attorneys for Plaintiffs